08-CV-01846-CMP

United States
Western District of Washington

_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

DEC 2 9 2008   DJ

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
_____ DEPUTY

Lance P. McDermott
        Plaintiff,

vs.

John P. Potter, Postmaster
General, United States Postal
Service

        Defendant

Case No.:

CV8 1846 JCC

Civil Action pursuant to Title
VII of the Civil Rights Act of
1964, 42 U.S.C. section 1983
and section 2000e.  The Age
Discrimination in Employment
Act of 1967, 29 U.S.C. section
621, 633a, and the
Whistleblower Protection Act of
1989, 31 U.S.C. section 3730 (h)

28 December 2008

Noted for consideration on 16
January 2009

## Declaration

The form of this personal action is *Trespass* for unlawful injury discrimination to my person and retaliation in violation of my Protected Activity rights.  Count 1 – Officials and Agents of the United States Postal Service discriminated against me in regard to conditions of employment, training and promotion. Count 2 – Officials and Agents of the United States Postal Service retaliated against me for my participation in protected activities.

## Jurisdiction over the Person

1  Pursuant to the Postal Service Accountability Act of 2006

2  incorporated in Title 39 section 409 Congress has removed the

3  immunity of the United States Postal Service from suit and gave

4  jurisdiction to the Federal Courts.

5                    Subject Matter Jurisdiction

6  I am asserting my claim created by federal law pursuant to 28

7  U.S.C.A. section 1331 that there are Federal Questions about my

8  Federal Employer to be answered by the Federal Court.

9                   Jurisdiction to Render Judgment

10  This action is brought pursuant to Title VII of the Civil

11  Rights Act of 1964 for employment discrimination.   Jurisdiction

12  is conferred on the Court by 42 U.S.C. Section 1983 and section

13  2000e-5.   Equitable and other relief is sought under 42 U.S.C.

14  Section 2000e-5(g).   Whistleblower Protection Act of 1989 for

15  employment retaliation.

16                      Scope of Jurisdiction

17  The scope of the Court's jurisdiction is within the

18  Constitution Article III section 2 and Congressional Statutes

19  named in this pleading.

20                           Standing

21  Notice of Intent to Sue, 8 January 2007 (exhibit 15), EEOC

22  Decision, Right to File Civil Action, 2 October 2008 (exhibit 19)

23  EEOC Decision, Right to File Civil Action, 10 November 2008

24  (exhibit 80) and Notice of Intent to Sue, 22 November 2008

25  (exhibit 87).

1

2   EEOC NOTICE Number 915.002 – "Standing is generally interpreted
    broadly under employment discrimination laws to achieve the

3   statutory goal of equal employment opportunity.  Hackett v.
    McGuire Bros., Inc., 445 F.2d 442, 3 EPD Par. 8,276 (3d Cir.

4   1971)("[t]he national public policy reflected . . . in Title VII
    . . . may not be frustrated by the development of overly

5   technical judicial doctrines of standing or election of
    remedies").  6  Cf. McKennon v. Nashville Banner Publishing Co.,

6   115 S.Ct. 879, 885, 65 EPD Par. 43,368 (1995) (regarding the
    ADEA: "[t]he disclosure through litigation of incidents or

7   practices which violate national policies respecting
    nondiscrimination in the work force is itself important, for the

8   occurrence of violations may disclose patterns of noncompliance
    resulting from a misappreciation of the Act's operation or

9   entrenched resistance to its commands, either of which can be of
    industry wide significance")."

10

11                           Background

12     My original Equal Employment Opportunity complaints:

13  EEO Complaint with 3 exhibits (exhibit 1) filed 4 January 2006:

14    1. Age – I was given a 2005 Maintenance Grinch Award during a

15       Management held staff meeting and 18 cents on 23 December

16       2005 two days before Christmas (exhibit 38).

17  EEO Complaint with 3 exhibits (exhibit 2) filed 5 April 2006

18    2. Sex – Management did not post on the official bulletin

19       board in the P&DC facility the Supervisor Job Vacancy

20       Announcement the required 15 days and denied me the

21       opportunity to apply for a higher level position (exhibit

22       25).

23

24     I attended mediation on 15 May 2006 that resulted in no

25  agreement, (exhibit 28).

1   The two complaints were combined into one EEOC case #1E-981-

2   0018-06.  I received the Notice of Right to File and pre-

3   investigation response dated 16 March 2006, (exhibit 22).

4   I received a Transmittal of Investigative File and Acknowledge

5   letter, 1E-981-0018-06, dated 4 April 2006, (exhibit 74).

6   Equal Employment Opportunity Contract Investigator Mary

7   Rogers started the formal investigation into my claims on 25 May

8   2006, (exhibit 5).

9   I received a Partial Acceptance letter from the EEO

10  Compliance and Appeals dated 9 May 2006, (exhibit 30).

11  I received a Revised Partial Acceptance letter form EEO

12  Compliance dated 10 May 2006, (exhibit 31).

13  I sent a letter to EEOC on 22 May 2006, to try and correct

14  the errors in the Acceptance letter in regards to sex/age

15  allegations (exhibit 32).

16  I received a letter from the EEO contract investigator asking

17  for an affidavit regarding the sex/age issue (exhibit 58)

18  The formal investigation was completed on 13 July 2006,

19  (exhibit 6) producing a 2.5" thick report with hundreds of pages.

20  I filled out a Request for Hearing form on 3 August 2006,

21  (exhibit 33).

22  I received a letter dated, 25 September 2006, from the

23  Administrative Judge ordering the Postal Service to produce the

24  complaint file, (exhibit 34).

25

1    I received a letter dated, 28 September 2006, from the EEO

2 Services revealing that the file was sent on 14 August 2006,

3 (exhibit 35).

4    I received an Acknowledgment and Order from EEOC

5 Administrative Judge Steven R. Gaffin dated 13 November 2006,

6 (exhibit 7).

7    I received an acknowledgment letter from USPS Law Department

8 Attorney Richard C. Mosher and Notice of Deposition for 4

9 December 2006, both dated 17 November 2006, (less than 20 days

10 notice requirement) (exhibits 8).

11    I filed a Motion for Protection from the Deposition on 24

12 November 2006, (within 10 days) (exhibit 9) with the

13 Administrative Judge and contract Attorney.  I sent a request for

14 a settlement meeting and discovery documents to the Attorney on

15 24 November 2006, (exhibit 57).

16    I received a recorded phone message from Attorney Mosher that

17 "I'm already in Seattle" on 30 November 2006, @ 1:21pm on my home

18 phone.  I received a recorded phone call from Judge Gaffin that

19 said "pretty routine" on 30 November 2006 @ 1:33pm.  I received a

20 recorded phone call from Attorney Mosher that said "since you

21 never called me back" on 1 December 2006, (exhibits 10).

22    I called Judge Gaffin back on 1 December 2006, and complained

23 about the ex parte communications.  The Judge tried to call the

24 Attorney for a conference call.  I asked the judge if he had

25 already made a decision on the Motion for Protection and he said

1  yes.  I told him that the conference call was not necessary and
2  he left a message with the Attorney.  He orally denied my Motion.
3      I received an Order Denying the Motion for Protection dated 1
4  December 2006, (exhibit 11).  III Analysis and Order:  - "I find
5  that the complainant failed to certify that he conferred with the
6  opposing party to attempt to resolve the discovery dispute.
7  Accordingly, IT IS ORDERED that complainant's motion for a
8  protective order IS DENIED."  1.  I did send a letter within the
9  10 days required and the Certificate of Service.  2.  The
10 Attorney did not contact me until he was already in Seattle.  3.
11 There is no EEOC Administrative or FRCP rule for me to make any
12 other "certified" contact.

13

14      I attended the deposition on 4 December 2006, (exhibit 12).
15     I received the Agency's Response to my request dated 24
16 November 2006 for Discovery documents on, 22 December 2006, (28
17 days later) that said "The Agency objects to producing documents
18 for job vacancies that Complainant never applied for… which can
19 have no possible relevance in this case except for pure
20 harassment of management officials," (exhibit 13).
21     I received the Agency's First Set of interrogatories on 28
22 December 2006, (exhibit 14).
23     I filed a Notice of Intent to Sue and Allegations of Process
24 Discrimination, because the Postal Service had taken over 180
25 days to process my complaint with the Equal Employment

1 Opportunity Commission (EEOC) with 13 exhibits on 8 January 2007,

2 (exhibit 15) within the 10 day response limit.

3

4 EEO Complaint with 5 exhibits (exhibit 3) filed on 3 May 2007:

5     3. Age – During a morning meeting a fellow employee directed

6     foul, abusive and threatening language and gestures at me

7     (exhibit 38).

8     4. Age – The Supervisor did nothing and the other employee

9     was allowed to go to a training class the next week that was

10     cancelled for me (exhibit 38).

11     5.   Retaliation – For EEO activity case #551-2006-00173X,

12     Jan 06 (exhibit 38).

13

14     I attended mediation on 24 May 2007 with no agreement for EEO

15 case #1E-981-0037-07, (exhibit 27).

16     I received a Notice of Final Interview for case #1E-981-0037-

17 07 dated 27 July 2007, (exhibit 38).

18     I received a letter dated 23 November 2007, from National EEO

19 Compliance & Appeals Programs, subject:  Employee Rights and

20 Remedies under Antidiscrimination Laws, with a copy of

21 Publication 133, What You Need to Know about EEO, (exhibit 37).

22     On 27 February 2008 I was told by a fellow employee about a

23 Tool & Parts Supervisor's job vacancy announcement had been

24 posted on the PostalPEOPLE EAS Vacancy website that was not

25 posted on the Official Bulletin Board.  I noticed that it closed

1  that day on the 27th of February 2008 and I filled out my 991

2  application (exhibit 23).  I went to the Riverton Post Office

3  after work (2:30pm) and placed it in the mailbox out front to be

4  postmarked for the 27th of February, the closing day of the

5  vacancy announcement.  I received an undated letter from Human

6  Resources contract Shared Service Center that the application was

7  postmarked after the closing date, (exhibit 24).

8

9  EEO Complaint with 1 exhibit (exhibit 4) filed on 29 March 2008:

10      6.  Sex - Karen Black was given preferential treatment when

11          given training and assigned to a temporary higher level EAS

12          (supervisor) position in Tools & Parts (exhibit 25).

13      7. Sex - Management did not post the job vacancy

14          announcement on the employee bulletin boards in all

15          facilities in the recruitment area as required by 39 CFR

16          243.2(a), handbook EL 312.223 & 321.2, Handbook EL-350.3,

17          and ELM 612.231 & 334.33 the job vacancy announcement

18          (exhibit 25).

19      8.  Sex - I mailed my 991 before the closing of the position

20          (exhibit 23).  The undated letter I received (exhibit 24)

21          stated that the 991 was not received before the posting

22          was closed.

23      9.  Sex - Karen Black was given assistance and preferential

24          treatment by management before being selected for the

25

1   Supervisor (permanent) position in Tool & Parts (exhibit
2   25).

3   10.  Retaliation - Prior EEO activity case number 1E-981-
4   0018, Aug 06, and 1E-981-0037, Apr 08 (exhibit 4).

5

6   Effective April 1, 2008, all EAS job vacancy announcements are
7   to be posted on eCareer (Exhibit 55, pg 3).

8   I had Mediation on 4 April 2008 with no agreement for case
9   #1E-981-0022-08, (exhibit 26).

10  I received a Notice of Right to File and pre-investigation
11  inquiry response dated 10 April 2008, for case #1E-981-0022-08,
12  (exhibit 25).

13  I received Notice of Right to File EEO case # 1E-981-0044-08
14  dated 2 Jun 08, (exhibit 54).

15  I received Dismissal of Formal EEO Complaint 1E-981-0044-08,
16  18 Jun 08, with the EEO Dispute Resolution Specialist's Inquiry
17  report (exhibit 55).

18  I received Acknowledgement of Complaint dated 23 June 2008,
19  (Exhibit 29).  The two new EEO complaints were combined into case
20  #1E-981-0044-08 by the contract EEO Investigative Services.

21  I received a Motion for a Decision without a Hearing by the
22  Administrative Judge from the new Attorney Michael R. Tita dated
23  11 June 2008 for EEOC agency #1E-981-0018-06 for the closed
24  administrative complaint (exhibit 16)

25

1    I filed a Motion for a Decision with the Administrative Judge

2 for 1E-981-0018-06 on 24 June 2008, (exhibit 17).

3    I received a Decision by the Administrative Judge without a

4 Hearing for 1E-981-0018-06 dated 1 July 2008, (exhibit 52).

5    I also filed a Petition for Remedy with the EEO Commission on

6 24 June 2008 for #1E-981-0018-06, (exhibit 18).

7    I received acknowledgement from the EEOC dated 7 July 2008

8 and request for statement in support of the Petition of 1E-981-

9 0018-06, (exhibit 60).

10    I received an Agency's Brief in for #1E-981-0018-06

11 Opposition and Motion to dismiss dated 14 July 2007(?), (exhibit

12 36).

13    I filed an Appeal with 31 exhibits for EEO #1E-981-0018-06

14 with the EEO Commission on 23 July 2008, (exhibit 53).

15    I filed a Supporting Statement with 15 exhibits for #1E-981-

16 0018-06 on 23 July 2008, (exhibit 64).

17    I filed an Appeal of the Administrative Judge's decision with

18 8 exhibits for EEO #1E-981-0044-08 with the EEO Commission on 23

19 July 2008, (exhibit 56).

20    I received an Agency's Response to Complainant's Appeal of

21 Decision by an Administrative Judge without a Hearing, #1E-981-

22 0018-06, dated 4 Aug 08, (exhibit 78).

23    I filed a Statement in Opposition for EEO # 1E-981-0018-06

24 and 1E-981-0044-08 on 13 August 2008 with the EEOC Office of

25 Federal Operations (exhibit 21).

1    I filed a Statement in Opposition to Agency's Response for

2    #1E-981-0018-06/1E-981-0044-08 with two exhibits on 13 August

3    2008 (exhibit 65).

4    I filed a Motion in Opposition to agency's Motion to Dismiss

5    #1E-981-0018-06 on 23 July 2008, (exhibit 66).

6    I received an Agency's Response for my Appeal and Supporting

7    Statement from the Attorney dated 4 August 2008, (exhibit 68).

8    I received Acknowledge and Request for Supporting Statement

9    for the Appeal of #1E-981-0044-08 from the EEOC dated 19 August

10   2008, (exhibit 61).

11   I sent a Supporting Statement for 1E981001806 and 1E981004408

12   to the EEOC on 2 September 2008, (exhibit 67).

13   I received a Motion to Strike Supporting Statements for EEO

14   #1E-981-0018-06 dated 5 September 2008, (exhibit 62).

15   I sent a Motion to Combine Complaints #1E981004408 and

16   #1E981001806 dated 11 September 2008, (exhibit 63).

17   I received a copy of a letter from the EEO Services Analyst

18   29 September 2008 for #1E-981-0044-08 to Director of EEOC Office

19   of Federal Operations stating "On appeal, Complainant provides no

20   substantive evidence that would persuade the commission to

21   disturb the Agency's July 14, 2008, decision," (exhibit 20).

22   I received a Decision from the EEO Commission for the Appeal

23   of the Administrative Judge's 14 July 2008 Decision for #1E-981-

24   0018-06 on 2 October 2008, (exhibit 19).  "Complainant has not

25   presented any material facts in dispute and he does not argue

1  that the AJ made improper credibility determinations… Moreover,
2  complainant offers only conjecture…"

3      I received a Decision and Notice of Right to Sue from the EEO
4  Commission Office of Federal Operations for appeal of #1E-981-
5  0044-08 dated 10 November 2008 (exhibit 80). "The Commission
6  finds that the agency has mischaracterized complaint's claim."

7      I received a Copy of EEOC's Compliance Letter to the Agency
8  dated 13 November 2008 (exhibit 106) to direct "your agency to
9  accept the complainant's complaint for processing."

10      I received an Acknowledge and Acceptance of Remanded Claim
11  from the EEO Investigative Service Office for EEO #1E-0044-08,
12  dated 14 November 2008 (exhibit 86). "In or around April 2008,
13  Complainant was excluded from consideration…"

14      I sent a letter back to the EEO Investigative Service of
15  Disagreement and Notice of Intent to Sue, 22 November 2008
16  (exhibit 87).

17      I received a response letter from the National EEO
18  Investigation Services Office 1 December 2008 (exhibit 170). -
19  "With regard to EEO Case #1E-981-0044-08, you alleged that the
20  agency mischaracterized the issue outlined in the agency's
21  Acknowledgement and Acceptance of Remanded Claim notice dated
22  November 14, 2008. However, the issue was framed in the same
23  manner in which OFO framed it in their November 10, 2008
24  decision." The EEOC Decision 10 November 2008 (exhibit 80) - "…
25  Whether or not complainant was not selected because his

1 application was submitted late and whether or not vacancy
2 announcements are made to employees goes to the merits of his
3 claim, which cannot be resolved without an investigation."
4 Again, the contracted National EEO Investigation Service Office
5 is mischaracterizing my original complaints (exhibits 1-4) and
6 the EEOC's Decision (exhibit 80). The Contract EEO investigator
7 is "framing" my EEO complaints to one issue that they will
8 pretext.

9     I received a letter from the National EEO Investigation
10 Service Office dated 5 December 2008 (exhibit 172) assigning
11 Linda Falcao the Contract EEO Investigator for my closed by the
12 Notice-of-Intent-to-Sue EEO administrative Complaint.

13     Received 13 affidavit questions from the contract EEO
14 Investigator dated 9 December 2008 (exhibit 173).

15

16     In Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d. 438,
17 445 (2d Cir.1980) - "The litigant opposing summary judgment,
18 therefore 'may not rest upon mere conclusory allegations or
19 denials' as a vehicle for obtaining trial… Rather, he must bring
20 to the district court's attention some affirmative indication
21 that his version of relevant events is not fanciful."

22

23                 My version of relevant events:

24                    Discrimination

25 GRINCH AWARD:

1. I was given a 2005 Maintenance Grinch Award during a staff

   meeting and 18 cents (exhibit 1) two days before Christmas

   Title 5 section 2302 Prohibited Personnel Practices

   (2)(A)(ix) - awards.

EEO Partial Acceptance (exhibit 30) 1E-981-0018-06 issue 1;
"The issue in this case centers on whether the allegation framed
by you sufficiently claims injury as a result of a discriminatory
practice… There is no evidence … you suffer any measurable
harm…" HARM – I spoke out (protected speech) about some
employees receiving awards and others not. In retaliation fellow
employees during a management meeting gave me a "Grinch Award".
Retaliation + Discrimination = Harm, by my math.

. Administrative Judge's Decision (exhibit 52, pg 2) "McDermott
previously sought EEO counseling on December 23, 2005, asserting
that his co-workers humiliated him by giving him a mock "Grinch
Award" for $0.18, rather than the expected annual award for
$500." I filed an EEO complaint and not "sought EEO counseling".
I did not expect an "annual award". I had complained that only
Electronic Technicians (ETs) were receiving the $500 performance
awards not "annual". The ETs gave me the "mock" Grinch Award
(exhibit 1 exhibit) with the supervisor's approval and the 18
cents at a meeting of all maintenance employees. At the time I
was receiving $50 a month performance for an "award" for my
Delivery Barcode Sorting (DBCS) machines that were performing in
the top five (out of 26).

1    Agency's Response to Complainant's Appeal of Decision by an

2   Administrative Judge without a Hearing, #1E-981-0018-06, dated 4

3   Aug 08, (exhibit 78) -."The Grinch award was given by the

4   Complainant's co-workers and related only to his disposition and

5   has no tangential relationship with his age."

6   MD 110, chapter 7, V.A.3. - Black's Law Dictionary 330 (6th ed.
    1990) - "Contumacious behavior or disruptive conduct may include
7   any unprofessional or disrespectful behavior; degrading,
    insulting, or threatening verbal remarks or conduct; the use of
8   profanity; or conduct engaged in…"

9
    US Court of Appeals for the Sixth Circuit. USPS v. National
10  Association of Letter Carriers, No. 02-5050, Opinion - "The Joint
    Statement provided: 'there is no excuse for and will be no
11  tolerance of violence or threats of violence by anyone at any
    level of the Postal Service; and … there is no excuse for and
12  will be no tolerance of harassment, intimidation, threats, or
    bullying by anyone.' Postal employees who do not treat other
13  with dignity and respect 'will not be rewarded or promoted.
    Those whose unacceptable behavior continues will be removed from
14  their positions.' A national-level arbitration decision found
    the Joint Statement was a contractually enforceable agreement
15  (the Snow Award)." (National Arbitration Panel case # Q90N-4F-C
    94024977/94024038, 2 Apr 96)
16
    Poster 159, Workplace Harassment, Know Your Rights! Take
17  Responsibility! Workplace Harassment is against the Law - "Under
    federal antidiscrimination laws, harassment is defined as
18  unwelcome verbal or physical conduct that demeans or shows
    hostility or aversion toward an individual or group of
19  individuals. Employees will be subject to disciplinary action,
    up to and including removal, for engaging in harassing behavior
20  such as, but not limited to: Making offensive or derogatory
    comments, nicknames, or slurs. - Behavior that creates a
21  sustained hostile or abusive work environment so severe or
    pervasive that it unreasonably interferes with or changes the
22  conditions of one's employment… Any manager or supervisor who
    receives a complaint must act to stop any inappropriate behavior,
23  ensure that a prompt and through investigation is conducted, and
    ensure that harassing or inappropriate conduct does not recur -
24  even if the behavior does not rise to the legal definition of
    harassment… In addition, employees can seek relief through the
25  EEO complaint process…" (exhibit 51)

1    The Joint Statement on Violence and Behavior in the Workplace
2  (exhibit 72) says "dignity, respect, and fairness are basic human
3  rights".

4

5  (First) FAILURE TO NOTIFY ME OF (in time) PROMOTION OPPORTUNITY:
6    2. As noted by the Investigative Summary for EEO # 1E-981-
7       0018-06 (exhibit 45, pg 5/20) that Management informed me
8       about a Supervisor Job Vacancy Announcement on Feb 2,
9       2006, that closed on Feb 3, 2006, (pg6/20). Management
10      did not post the Supervisor Job Vacancy Announcement on
11      the official bulletin board in the P&DC facility the
12      required 15 days and denied me the opportunity to apply
13      for a higher level position (exhibit 2) Title 5 section
14      2302 Prohibited Personnel Practices (2)(A)(ii) – a
15      promotion.

16

17  INTIMIDATION:

18    3.  I was cussed at by a fellow employee in a staff meeting
19  (exhibit 3) and Management did nothing.  Seattle District
20  Memorandum FY2006 (exhibit 51) requires that a Workplace Incident
21  Report be file and it was not.

22    PERMANENT POSTING ALL EMPLOYEE BULLETIN BOARDS – "Acts of
23  intimidation, threats or assaults by or upon Postal employee will
24  not be tolerated and will be sufficient grounds for removal."
25  (exhibit 51)

1

2 TRAINING:

3     4.   The employee was allowed to attend a school for
4 maintenance training that I was denied (exhibit 3 exhibits) Title
5 5 section 2302 Prohibited Personnel Practices (2)(A)(ix) -
6 training.

7

8 (Second) FAILURE TO NOTIFY ME OF PROMOTION OPPORTUNITY:

9     5.   My second failure to notify Complaint (exhibit 4) that an
10 employee was improperly non-competitively assigned to a higher
11 level supervisor position was combined with the Complaint that
12 she was promoted permanently without posting the Job Vacancy
13 Announcement on the Bulletin Board in the Kent Priority Mail
14 Annex (PMA) facility Title 5 section 2302 Prohibited Personnel
15 Practices (2)(A)(ii) - a promotion.  It was not posted on the
16 Seattle District website or in a book in the office.  Management
17 did not inform me in a meeting.  I was told by a fellow employee
18 that it was on the PostalPEOPLE website.  With a short 1 day
19 notice I placed my 991 application form in the mailbox at
20 Riverton Post Office the closing day and it was rejected as un-
21 timely (exhibit 24).

22     The second Complaint had the same facts as the first one for
23 not posting the vacancy announcement, plus additional supporting
24 facts, and was rejected for processing by the Postal Service EEO
25 processing contractor.  Since this Appeal is not based on the

1     Decision without a Hearing the Standard of Review is based on the

2     facts of the Complaint. The fact that the employee was placed in

3     a higher level position without using a required register (EL

4     312. 4 Registers and district policy, exhibit 69) or roster would

5     show that Management is not following the policies of the Postal

6     Service. The Postal Service has not assigned a District Human

7     Resource Coordinator for control (accountability) of temporary

8     higher-level (204B) assignments as required (exhibit 71, ASP).

9

10     Postal Service OIG Audit Report – Associate Supervisor Program in
the Great Lakes Area LH-AR-02-005, 30 September 2002, "… the
requirements used to determine program suitability were not
11     equitably applied to all applicants… We also unable to determine
the cost of the Associate Supervisor program because Postal
12     Service management did not have a budget nor did they track
expenditures for the program… oversight had not been provided…
13     For example, 33 of the 102 application packages we reviewed in
these districts did not contain information related to at least
14     one of the suitability requirements… review committees did not
keep records to support decisions… district coordinators did not
15     maintain organized official candidate selection files… district
coordinators did not fully understand what their responsibilities
16     were…"

17       The facts are the same as the other Appeal. I was not

18     informed of a job opportunity (posting) and thus denied me the

19     opportunity to apply. The fact also remains that I did apply for

20     the position and was rejected as un-timely without the Postal

21     Service even producing the postmarked envelope.

22

23                DISCRIMINATION DISCUSSION:

24

25                   Formal Investigation

Title 29 section 1614.702 Definitions – © "The term investigation refers to the step of the federal sector EEO process described in 29 CFR 1614.108…  it commences when the complaint is filed and ceases when the complainant is given notice under section 1614.108(f) of the right to request a hearing…"

MD 110 chapter 3, Fact Finding – "Fact Finding is the use of an impartial expert (or group) selected by the parties, by the agency, or by an individual with authority to appoint a fact finder, in order to determine what the "facts" are in a dispute."

PS Form 2565, page 2 Instructions H.  "If your written complaint is accepted, it will be assigned to an EEO complaints investigator who will provide you with an opportunity to present all facts that you believe resulted in the alleged discrimination.  The EEO complaints investigator will conduct a thorough review of the circumstances under which the alleged discrimination occurred."

EEO Investigative Summary, 13 July 2006 (exhibit 45, pg 1) – "Investigator's Note:  Complainant states in his affidavit that although the acceptance letter states that the purview is age, he clearly indicated in his Information for Pre-Complaint Counseling that the discrimination factor is sex (male) and that he is claiming discrimination based on sex only.  Thus, only the purview of sex (male) will be addressed in the investigation report.)

AJ Decision (exhibit 52, pg 3) – "McDermott contacted the EEO counselor a second time on April 5, 2006, regarding the failure to select, this time alleging only gender discrimination (and not age)."  "The agency investigated the complaint in June and July 2006.  McDermott clarified the scope of his discrimination complaint with the EEO investigator whereby gender was the only basis of discrimination he was alleging."

1    Agency's Response (exhibit 68, pg 1) — "On 21 April 2006
2  Complainant filed the formal complaint alleging age
3  discrimination when he received a 2005 Maintenance Grinch Award.
4  During the course of the administration of the case, a second
5  issue was added; whether the Complainant was discriminated
6  against on the basis of sex (male) when he was not selected for a
7  Maintenance Supervision position."

8    Acknowledgement, 14 November 2008 (exhibit 86) — "The
9  complainant alleged discrimination based on Sex (Male), Age (49
10  years old) and Retaliation (Prior EEO Activity)…"  I sent a
11  letter (exhibit 32) because the Investigator did not get it right
12  (exhibits 6, 58) that I filed the Grinch Award complaint as AGE
13  (exhibit 1) and Linda Mainor's improper promotion as SEX (exhibit
14  2).  The Partial Acceptance, April 1, 2006, Type of
15  Discrimination:  Age (DOB 4/15/59).  As part of the 3 hour and
16  123 page deposition the contract Attorney asked "when were you
17  born".  Why didn't the Investigator, Attorney or Administrative
18  Judge reviewing the original complaints (exhibits 1-4) and Formal
19  Investigation Summary (exhibit 45) get it right?

20

21    When I was given Notice of Hearing the Formal EEO
22  investigation was not stopped (29 CFR 1614.108) and in fact, the
23  Attorney took the position that he had the right to conduct the
24  investigation over.

25

1   Deposition (exhibit 12) page 57 "THE COURT:  What do you mean

2   that the Postal Service did not conduct the affidavit?  MR.

3   MOSHER:  that's not discovery by the Postal Service, in other

4   words, the EEOC.  THE COURT:  Not the EEOC – MR. MOSHER:  The

5   investigator.  It's not the Postal Service now.  It's – and in

6   this case I'm not sure, but it's a contracted agency that

7   conducts the official report of investigation, but it's not the

8   Postal Service conducting its discovery in this case… He's

9   already added things in a few cases that are different than an

10   EEO investigation – I'm sorry, the contracted investigation."

11       Page 58 of the deposition THE COURT:  "… And some of it may

12   be repetitive, but it's under a different set of circumstances.

13   One is an investigator, one is now the legal representative, and

14   generally, those questions are allowable.  It's, you know, his

15   strategy on how to ask questions."   Affidavit A of the Decision

16   By Administrative Judge Without A Hearing (exhibit 52) is the EEO

17   Counselor's Report of Investigation (summary exhibit 45) that the

18   Administrative Judge was suppose to base his De Nova decision on.

19   Postal Service Form PS 2430 EEO Investigation Report – "Access to

20   and usage of, this EEO complaint file is RESTRICTED… (2)

21   government officials who must have access to the files…"  Both

22   the Judge and Attorney took the position that it was not the

23   Postal Service's official investigation.  Why did the

24   Administrative Judge change the process from an administrative

25   one to the higher level of "legal" process with "legal"

1 representative? "I have an independent right today to ask you

2 the same questions the EEO investigator asked you…" (exhibit 12,

3 pg 28). The Attorney had "independent rights" and I had none.    3

4 hour and 10 minute deposition with 123 pages of questions and

5 answers and not one used in making the Judge's decision without a

6 Hearing.

7

8    In the EEO Complaint 29 March 2008 (exhibit 4) I complained

9 that I had mailed in my application as required (exhibit 84)

10 postmarked on time but the agency sent me a letter that it was

11 late (exhibit 24). That Claim/fact was dropped from my Notice of

12 Right to File 10 April 2008 (exhibit 25) from the EEO ADR

13 Specialist. Also it was left out of the EEO Partial Acceptance 1

14 April 2006 (exhibit 30), Revised Partial Acceptance (exhibit 31)

15 letters. Then it was taken out of the Notice of Final Interview

16 27 July 2007 (exhibit 38). It was then place back in the Notice

17 of Right to File, 2 June 2008 (exhibit 54) – "You explained that

18 you sent in a 991 for the position before the closing date and

19 than received a letter indicating your 991 was not received

20 before the posting closed." Then changing the complaint file in

21 the Dismissal of Formal EEO Complaint, 18 June 2008 (exhibit 55)

22 to "Management delayed posting a vacancy announcement on the

23 official bulletin board, resulting in Complainant submitting his

24 991 past the deadline, and thus not eligible for consideration."

25 Changing it again to "… has not established a plausible nexus

between the agency and the late submission of his PS Form 991"

(exhibit 20) 29 September 2008.

EEOC Decision 10 Nov 08, (exhibit 80) states: "… the agency

has mischaracterized complaint's claim."   I believe that "The

Agency" – Supervisors, Managers, Contract EEO Investigator,

Contract Attorney, and Contract Administrative Judge all

"mischaracterized" and changed my claims.


Bias Investigation

Title 29 section 1614.102 (2) "Provide for the prompt, fair and
impartial processing of complaints in accordance with this part
and instructions contained in the Commission's Management
Directives."  (5)   "Assuring that individual complaints are
fairly and thoroughly investigated and the final action is taken
in a timely manner in accordance with this part."  1614.104(b) "…
to process complaints in a timely manner, to develop adequate
factual records…"

MD 110 chapter 5, III Agencies Must Avoid Fragmenting EEO
Complaints – "Fragmentation, or breaking up, of a complainant's
legal claim during the EEO complaint processing has been a
significant problem in the federal sector.  For complaints,
fragmented processing can compromise their ability to present an
integrated and coherent claim…  The fragmentation of EEO claims
must be prevented at all levels of the complaint process…
Fragmentation often occurs at the point where the agency
identifies and defines the complainant's claim, most commonly
during the counseling and investigative stages…  Fragmentation
often results from a failure to distinguish between the claim the
complainant is raising and the evidence (factual information)
s/he is offering in support of that claim."

EEOC Final Rule RIN 3046–AA74, 29 CFR 1614 – "… Counselors
further perform the very valuable function of assisting
complainants to accurately define the matters about which they
wish to complain… the number of complaints that allege unfair
processing, …"

Title 5 section 556 Hearings; presiding employees; powers and
duties; burden of proof; evidence; record as basis of decision.

1  (b)   "… The functions of presiding employees and of employees
   participating in decisions in accordance with section 557 of this
2  title shall be conducted in accordance with section 557 of this
   title shall be conducted in a impartial manner."

3  So why is it my fault that my complaints were made – failed

4  to "established a plausible nexus" (exhibit 20) by the EEO

5  Investigator, "complete ignorance of EEOC regulations" (exhibit

6  36) and "bald assertions and preposterous legal theories"

7  (exhibit 68, pg 13) by the Law Department, "mere speculations"

8  (Exhibit 52, pg 6) by the Administrative Judge and "offers only

9  conjecture" (exhibit 19, pg 2) and "no evidence" (exhibit 30, pg

10  3) by the EEO Commission?

11  The EEO Investigator failed to provide a fair and impartial

12  report or even to provide all the documents required in the Job

13  Vacancy Announcement package (exhibit 78) such as the Review

14  Committee score sheets.

15

16  Posting on the Official Bulletin Board

17  39 CFR part 243 – Conduct of Offices, 243.2 Quarters.   (a)
   Employee bulletin boards – "Bulletin boards may be placed in
   workrooms and employee lunchrooms for displaying notices as
18  prescribed in the manual and Management Labor Organization
   Agreements." Investigative Summary page 15/20 exhibit 20 (exhibit
19  45).   Agency's Response to Complainant's Appeal (exhibit 68, pg
   12).
20

21  Employee and Labor Relation Manual (ELM) 666.15 Improper
   Employment and Placement Practices – "Deceitfully or willfully
22  obstructing or improving the prospects of any person competing
   for a position by granting a preference or advantage not
   authorized by law, rule, or regulation (including defining the
23  scope or manner of competition or the requirements for a
   position), or by influencing anyone to withdraw from competition
24  for a position, is prohibited."

25

Collective Bargaining Agreement Article 33 Promotions, 33.02
Procedures A. – "When an opportunity for promotion exists in a
Center, an announcement shall be posted on official bulletin
boards soliciting applications."

Handbook EL-312.123 – "District managers implement national
policy and procedures within their districts… District managers
ensure that special emphasis employment programs are administered
appropriately."  223.11 Internal Advertising; a. – "Post
examination announcements and other recruitment materials in the
lobbies and on employee bulletin boards in postal facilities in
the recruitment area."  734.1 Vacancy Announcement – "The vacancy
announcement must be posted throughout thee area of
consideration, for not less than 15 calendar days for applicants
to prepare Forms 991." Investigative Summary page 15/20 exhibit
18 (exhibit 45).  EEO Investigation Affidavit #7 (exhibit 46).
Agency's Response to Complainant's Appeal (exhibit 68, pg 12).

Employee Labor Relations Manual (ELM) 612 Information Media,
612.1 Responsibility; – "Supervisors inform their employees on
all official matters affecting them through printed material of
bulletin boards."  612.231 – "Bulletin boards serve as a means of
providing to employees information of interest, such as that
required by law of regulation, official management information,
and items of general interest." B.  Official Management Use.
"Items that should be dated and removed when outdated include
notices about:  (1) Job opportunities." Investigative Summary
page 12/20 exhibit 17 (exhibit 45).  Agency's Response to
Complainant's Appeal (exhibit 68, pg 10).

Handbook EL-350.320 "however, offices must provide the
appropriate application information to applicants when the
automated system is used for posting Initial Level Supervisor
positions…"  Investigative Summary page 14/20 exhibit 19 (exhibit
45).

USPS Organization, Complement & Job Bid Management in a Shared
Services Environment 2006 Migration Plan on page 41 – Human
Capital Enterprise, using the JBM (Job Bid Management) Module –
"The Posting is displayed locally" (exhibit 39).

USPS PostalPEOPLE Human Capital Enterprise System District –
Field Manual, Job Bid Management Process Guide version 2006 on
page 10 – Automated Bid Cluster:  "Physically post bid Vacancy
Notice (Posting) as received" (exhibit 40).

USPS Phase 2 – Job Bid Management – BC Automated, Bid Cluster
Information Automated Process, Posting and Bidding – "Physically
post Vacancy Notice (Posting) upon receipt" (exhibit 41).

1   Postal Bulletin PB 22066, 27 Dec 01, Equal Employment and
    Affirmative Employment Policy Statement – "All executives,
2   managers, and supervisors share in the responsibility for
    successfully implementing and managing EEO and affirmative
3   employment in the Postal Service."   (exhibit 43)

4   GAO Report GAO/GGD-98-200R Postal Service – Women and Minority
    EAS Promotions; "… Under Postal Service EAS Selection Policies
5   issued in 1993 and updated in January 1995, copies of promotion
    vacancy announcements are to be provided to all postal
6   installations in areas of consideration for posting on employee
    bulletin boards…  Further, we could not determine whether the
7   vacancy announcements were posted in all required locations."
    Also in 2005 Finance Manager Angelo Wider report that "Procedures
8   from direct report groups are not being followed to properly post
    vacancies."   (exhibits 59)

9
10      Other Official Notices must be placed on the bulletin boards

11   (exhibits 44).

12      I filed both EEOs because Management did not post, on the

13   official bulletin board, the Supervisor Job Vacancy Announcement

14   for the required 15 days.

15      EEO Investigative Affidavit (witness) for EEO #1E-981-0018-06

16   from Wayne A. Witzel Jr, Manager, Maintenance Seattle P&DC

17   (exhibit 46) states "The requirement for the posting of vacancy

18   announcements does not say it must be on the official bulletin

19   boards."

20      Dispute Resolution Specialist's Inquiry (exhibit 55, pg 3)

21   "HR Generalist Dainne Savas responded on 06/26/08 that the HR

22   Policy Manual does not state Management must post EAS positions

23   on bulletin boards,…  She explained everyone will be required to

24   search and apply for a vacancy, via the internet, using eCareer,

25   and that this information has been disseminated to all

1  employees."  The real policy states post on PostalPEOPLE not
2  eCareer (exhibit 70 #8).  The Postal Service has not changed
3  policy to force employees without Postal computer (ACE) access or
4  email accounts like me to be denied promotion.  This in itself
5  would be unlawful discrimination of employees without an ACE
6  computer/email account or computer access.  The Policy is to
7  email ACE computer user accounts the vacancy (exhibit 70 #8).  I
8  have an ACE account but have been denied email account (exhibit
9  82) making it impossible to receive or to apply for a job via the
10 internet.  Maintenance Manager Wayne Witzel Affidavit (exhibit
11 46) stated that the vacancy was posted on the "Seattle District
12 web site page".  This would violate Title 5 section 2302 (b)(4) –
13 "deceive or willfully obstruct any person with respect to such
14 person's right to compete for employment."

15

16 **Please post attached poster on all Employee Bulletin Boards.**
   **eCareer to Replace EAS Selection process** "… eCareer is the new
17 selection process that will be used beginning **April 1st** and is
   part of the new Human Capital Enterprise System."  (exhibit 77)

18     USPS In the Loop – April-May 2007 newsletter about
19 PostalPEOPLE Ready for National Rollout in May 26 to some areas
20 with Western Area "rollout" some time later in 2007 (exhibit 42).
21 My first EEO complaint of non-posting was in 2006 before the
22 "new" procedures.

23     "HR Generalist Dainne Savas responded on, 06/26/08, Effective
24 April 1, 2008 all EAS jobs will be posted on eCareer."  (exhibit
25 55, pg 3)  My first EAS promotion EEO Complaint was filed in

1  March 2006 and my second EAS promotion Complaint was filed for a
2  Job Vacancy that was in March of 2008, both before the
3  "effective" date of the "policy" change.

4  Letter to EEO Office of Federal Operations from Marissa Haley
5  EEO Services Analyst dated 29 Sep 08 – "(Since VAMS (Vacancy
6  Announcement Management System) was implemented, local management
7  officials were no longer obligated to post EAS vacancies on
8  bulletin boards." (exhibit 20)   The "fact" remains that
9  Management did have the legal "obligation" pursuant to 39 CFR 243
10  to post the job vacancy announcement on the Bulletin Board for 15
11  days that has not been changed by Congress.

12  Notice of Right to file 1E-981-0022-08 (exhibit 25) – "… You
13  also allege that the 204B announcements for maintenance were not
14  posted as required…  Maintenance Manager Deboard said that the
15  204B program was posted on the official maintenance bulletin
16  board and other employee saw it and applied."  So Management is
17  posting selected vacancies on the bulletin boards, but not "all".

18  The posting for the 204-B Development Program (exhibit 88)
19  was posted in the Seattle P&DC but not in all facilities within
20  the 50 mile commute.  The Maintenance Special Posting requires
21  that all employees get a letter from their Supervisor stating
22  that the supervisor "will support and allow" the employee to be
23  assigned as a 204-B Supervisor in Training program.  An
24  Application Package with the employee's form 991 and letter from
25  their supervisor was to be sent directly to Robert DeBoard,

1  Maintenance Manager, and not to the District Human Resource

2  (exhibit 23) as normal.  This would be a violation of Title 5

3  section 2302 (b)(2), and ELM 666 Prohibited Personnel Practices,

4  666.15 Improper Recommendations – "Soliciting or considering any

5  recommendation or statement, oral or written, with respect to any

6  individual who requests or is under consideration for any

7  personnel action is prohibited…"  Title 5 section 2302 (6) –

8  "grant any preference or advantage not authorized by law, rule,

9  or regulation to any employee or applicant for employment

10  (including defining the scope or manner of competition or the

11  requirements for any position) for the purpose of improving or

12  injuring the prospects of any particular person for employment."

13  Mr. DeBoard violated the law several times when he added to the

14  requirements (supervisor letter) and than hand-picks the

15  employees he wants on the entry level Supervisor Training 204B

16  maintenance program like Linda Mainor, Tom French, Al Berube,

17  Johnny Ocampo, and Karen Black.  With Al Berube back when Mr.

18  DeBoard was In-Plant Support low-level management position pick

19  Al and gave him several weeks of higher level training (exhibit

20  76c, d) before Al was promoted into an In-Plant Support EAS

21  (management) job.  Recently Mr. DeBoard was promoted to

22  Maintenance Manger without any experience (supervisor or labor)

23  in Maintenance.  As Manager Maintenance Operations Mr. DeBoard

24  picked Johnny Ocampo for 204B training (fill-in supervisor) with

25  a letter from his supervisor and than non-competitively gave

1  Johnny a Maintenance Supervisor position.  But I cannot complain

2  (according to the Postal Service) because "sex" was not involved.

3

4      Still the fact (time) also remains as noted by the

5  Investigative Summary for EEO # 1E-981-0018-06 (exhibit 45, pg

6  5/20) that Management informed me about a Supervisor Job Vacancy

7  Announcement on Feb 2, 2006, that closed on Feb 3, 2006,

8  (pg6/20).

9      Administrative Judge Decision (exhibit 52, pg3) - "McDermott

10 alleged that the Postal Service failed to properly place of post

11 the opening at various bulletin boards within the facility."

12 Notice of Right to Sue 10 April 2008 (exhibit 25) - "You also

13 allege that a vacancy announcement for EAS supervisory position

14 was not posted on the Official Bulletin Board…"  I alleged that

15 the Management failed to properly post the job vacancy

16 announcement on the official bulletin board by the front entryway

17 marked with "Job Opportunities" (exhibits 2 and 4) and not

18 "various bulletin boards within the facility".  I alleged that

19 Management failed to post the Job Vacancy Announcement on the

20 Postal Service PostalPEOPLE website as required.  The Job Vacancy

21 Announcement for Linda Mainor's promotion was posted on the

22 Seattle District's web site.  The fact is that Management after

23 saying that they posted it on the Seattle District Website and do

24 not have to post it on the official bulletin board (exhibit 20,

25 46), is now posting job on the official bulletin board at the

1   Processing and Distribution Center (P&DC) and on the PostalPEOPLE
2   website.

3       EEOC Decision 10 November 2008 (exhibit 80, pg 2) — "… and
4   where and how vacancy announcements are made to employees goes to
5   the merits of his claim, which cannot be resolved without an
6   investigation."   The re-opened contract EEO Investigation 9
7   December 2008 is not even looking at "the merits of his claim"
8   (exhibit 173).   This wrong-path second investigation two years
9   late causes me to look to the Federal Court for a fair
10  investigative discovery process and hearing.

11      Management is not posting the job announcements on the
12  bulletin board at the Priority Mail Center (PMA), where I have
13  transferred to escape, which has created more complaints of
14  discrimination from me (1E-981-0044-08).

15

16                  Posting on the PostalPEOPLE website

17      1 April 2008, after both of my EEO complaints the EAS
18  selection process was change to a computer based process.

19      Manager's Overview — EAS Selection Process activity (exhibit
20  70) #8 was changed to — "Post vacancies every two weeks;
21  PostalPEOPLE Web site — Send email link to vacancy announcements
22  to all ACE enabled users in all districts #9 Make copies and
23  distribute to installations… #10 make vacancy announcements
24  available to employees."

25

1  Interim EAS Selection Process Guide, February 20, 2007 – Update
3.3, Receive, Determine Eligibility & Process Applications, APPLY
2  (Applicant) – "All internal EAS vacancy announcements are posted
on the PostalPEOPLE website at
3  http://blue.usps.gov/hrisp/hce/easvacancy.htm."

4      Affidavit of Wayne Witzel (exhibit 46, #8) – "The position
5  was open on 01/19/06 and was announced several different ways,
6  through stand up talks, vacancy posting book in the Control
7  Center, and the Seattle District web page."
8      Investigative Summary 1E-981-0018-06 (exhibit 45, pg6/20) –
9  "Me. Witzel states that jobs are posted as follows:  on the
10  Seattle District web site; in the vacancy posting book at the
11  control Center…"
12      Deposition (exhibit 12) Page 35 "Did you look on the district
13  job site? …Did you look at the district job board or job site? …
14  Well, isn't the district job site postings – aren't those on the
15  computer? … The District of Seattle has their own web page; is
16  that correct?"  Page 92 "… couldn't you have accessed the job
17  vacancy on the district website on several computers?"
18

19      Seattle District Policy, 2 September 2007 (exhibit 85) – "You
20  must search and apply for all EAS positions via the internet in
21  eCareer."  Search the whole internet?  Apply only through the
22  internet?  This local policy of posting on eCareer would not be
23  inline with national policy of posting on PostalPEOPLE.
24

25

1    Poster – eCareer to Replace EAS Selection Process, 1 April

2  2008 (exhibit 77) – "It is changing the way we apply and review

3  applications for EAS positions." PostalPEOPLE, HOW TO APPLY,

4  Applicant Responsibilities: – "… All employees may apply

5  electronically by email or by stamped mail." PostalPEOPLE, EAS

6  and ASP Selection Process – "Submission of electronic, faxed, and

7  hard copy applications." (exhibits 84) Local Policy to only use

8  the internet is not in-line with the National Policy of fax and

9  hardcopy submissions.

10

11    The Vacancy Announcement number 06-0014, 1-19-06 to 2-03-06

12  (exhibit 23) states to mail the application for the open EAS

13  position to: "US Postal Service, Attn:  Manager, Human

14  Resources, PO Box 90402, Seattle, WA 98109-9994." This (both EEO

15  complaints) job vacancy announcement was before the new eCareer

16  2008 policy was made to send all application to contracted Shared

17  Services in S.C..

18

19    Decision by an Administrative Judge without a Hearing, 1 July

20              2008, Case #1E-981-0018-06 (exhibit 52)

21    III. SUMMARY OF DECISION: "The complainant failed to show

22  that he applied for the position and therefore failed to

23  establish a *prima facie* case of discrimination." The complaint

24  was that Management failed to notify me of the Supervisor

25  position so I could apply for the position. This finding is

1  different than the EEO Investigator's that I did meet the

2  threshold level of discrimination to Investigate.

3      (exhibit 52) "Furthermore, to the extent necessary, the

4  Postal Service provided legitimate nondiscriminatory explanations

5  for its action.  The Postal Service established that it posted

6  the opening at its website and in a logbook available to all

7  employees.  Eight employees (male and female) applied for the

8  promotion.  Management interviewed the top three applicants and

9  selected one based solely on the merits."

10     **A.**  The Postal Service did not provide any explanation that I

11  did not contest and provide supporting documents to disprove.

12     **B.**  The Postal Service according to Wayne Watzel's affidavit

13  (exhibit 46 #6), in the investigation file, posted the job

14  opening on the Seattle District's website.  Managers are required

15  by Manager's Overview EAS Selection Process #8 to post the job

16  opening on the PostalPEOPLE website (exhibit 70).

17     **C.**  The Job Vacancy Announcement is required to be posted on

18  the Official Employee Bulletin Board (39 CFR section 243.2(a),

19  Handbook EL-312.223.11, ELM 612.231, ASM 338.411, and PS Form

20  1716.  Management placed the announcement in a 3-ring binder

21  behind the counter in Control Center Office that no employee knew

22  about.

23     PostalPEOPLE website Leadership Development FAQs - How can I

24  get into management? - "Watch your bulletin board for local

25  announcements inviting applicants" (exhibit 44).  I presented

1 other evidence that other employees did not see the announcement
2 (exhibit 2, exhibits).

3    **D.**   Showing that eight employees out of 12,000 Seattle
4 District employees applied for the position means that eight
5 employees were given preferential treatment (i.e. a copy).

6    **E.**   Management is required to interview all employees who
7 apply and not just the "top three". The "Top Three" rule (EL-
8 312.623) is for hiring from a Register (EL-312.4, exhibit 69).
9 No registers are used in the Seattle District (exhibit 69) as
10 required.

11    **F.**   The Human Resource Information System EAS Promotion
12 Report in the investigation file shows that four employees were
13 interviewed for the position - Brunwick, Herter, Krinke, and
14 Mainor (exhibit 73). Selecting Manager's Checklist (exhibit 70)
15 requires the Manager to "conduct a personal interview of each
16 applicant…" or his appointed Review Committee. The Review
17 Committee did not interview any applicant and the Selecting
18 Official, Wayne Witzel, interviewed 4 of the 8 to apply (EEO
19 Investigation exhibit 6)(exhibit 73) promoting Linda Mainor.   In
20 comparison Wayne Witzel interviewed as Selecting Official 4 out
21 of 4 applicants for another Maintenance Supervisor position (EEO
22 Investigation exhibit 10) (exhibit 75) promoting Tom French. Also
23 compared to a Operation Supervisor interview by Selecting
24 Official, Richard Loar, who interviewed 4 out of 4 applicants
25 (exhibit 76) promoting Al Berube. The Memorandum for the

1  Selecting Official for Linda's promotion (exhibit 73) is signed
2  by Mark Hemphill and Jeffery Carter as "Selecting Official" and
3  Wayne Witzel signed as Reviewing Official, with Plant Manager
4  Harold Matz Concurring Official 10 March 2006.    Linda's
5  promotion letter (exhibit 73) is signed by Wayne Witzel,
6  Selecting Official, 16 March 2006.  Mr. Beamon's non-selection
7  letter (exhibit 73) is signed by Don Schumacher, Review Committee
8  Chairman, 24 February 2006.  Tom French's promotion documents
9  (exhibit 75) are also signed improperly by two Selecting
10 Officials, 28 July 2005.  Al Berube's promotion documents Memo
11 for Selecting Official, selecting and non-selecting letters are
12 all properly signed by the Selecting Official Richard Loar, 20
13 July 2005 who interviewed all eligible applicants and signed by
14 the Concurring Official Harold Matz.

15     Agency's Response to Complainant's Appeal of Decision by an
16 Administrative Judge without a Hearing, #1E-981-0018-06, dated 4
17 Aug 08, (exhibit 68) - page 2 - "With regards to the posting of
18 the Maintenance Supervisory position, again there is no
19 relationship, even assuming the Complainant's allegations as
20 true, that the failure to post the opening on the employee
21 bulletin board was related to the Complainant's sex."  It was a
22 genuine fact brought out in the Formal EEO Investigative Summary
23 (exhibit 45) that the vacancy was not posted on the employee
24 bulletin boards and in fact the Selecting Official (exhibit 46)
25 stated that he was not "aware" of any rule that said "must".

First Notice of Intent to Sue

Title 42 section 1983 "… or causes to be subjected, any citizen
of the United States or other person within the jurisdiction
thereof to the deprivation of any rights, privileges, or
immunities secured by the Constitution and laws, shall be liable
to the party injured in an action at law…"

Despite sending the Notice of Intent to Sue dated 8 January
2007 to the EEOC and receiving acknowledgment back that the EEOC
was stopping the administrative process the Administrative Judge
has made a Decision By Administrative Judge Without A Hearing,
dated July 1, 2008, (exhibit 52).

Title 29 section 1601.28(3) "Issuance of a Notice of Right to
Sue shall terminate further proceeding of any charge…"  I dispute
the right and authority of the contract EEOC Administrative Judge
to render a Decision when the administrative process was
terminated by the EEOC January 2007 (exhibit 15).  I present the
2008 Administrative Judge's Decision in an Appeal to the EEOC
(exhibit 53) and other exhibits for the EEOC hearing showing how
the Ex Parte communication and other discrimination during the
processing of my complaint tainted the Decision.  The EEOC
Decision (exhibit 19) 2 October 2008 incorrectly states; "… he
does not argue that the AJ made improper credibility
determinations."  I did argue that the AJ made improper decisions
based on no statement of undisputed facts and ex parte
communications.

1  I filed Notice of Intent to Sue and Allegations of Process
2  Discrimination 8 Jan 07 (exhibit 15) with several "arguments" and
3  supporting evidence.  EEOC Decision (exhibit 80) 10 November 2008
4  states; "If the complainant files a civil action, the
5  administrative processing of the complaint, including any
6  petition for enforcement, will be terminated.  See 29 CFR
7  1614.409."

8  I thought the abusive administrative process was stopped
9  January 2007 (exhibit 15) and the first Agency's Motion for a
10 Decision without a Hearing filed in 2007 was muted.  I thought
11 that I had 2 years to file in Federal Court.  One and a half
12 years later it was re-started by the Agency's Attorney, June 2008
13 (exhibit 16) Motion for a Decision without a Hearing.  Either of
14 the Motions for a Decision without a Hearing contained the
15 required Statement of Undisputed Facts.

16 I received an EEOC Appeal Decision 10 November 2008 (exhibit
17 80) – "The Commission finds that the agency has mischaracterized
18 complaint's claim… However, if you wish to file a civil action,
19 you have the right to file such action… Filing a civil action
20 will terminate the administrative processing of your complaint."

21 I received an Acknowledgement from EEO Investigative Office
22 14 November 2008 (exhibit 86) and found that again the EEO
23 Investigative Office was "mischaracterizing" my EEO Complaints
24 (exhibits 1-4).

25

1    I sent a Disagreement and Notice of Intent to Sue to the EEOC
2   and the EEO Investigative Office 22 November 2008 (exhibit 87)
3   because they have failed before and I believe will again fail to
4   conduct a fair investigation and develop all the facts.

5    I received a letter from EEO Investigative Office 1 December
6   2008 (exhibit 170) - "Your statement and this response will be
7   made part of the record and included in the investigative
8   files(s)."

9    I received a letter from the EEO Investigative Office 5
10  December 2008 (exhibit 172) - "The investigator will contact you
11  regarding the investigation of the referenced complaint."

12    I received a letter form the EEO Investigative Office 9
13  December 2008 (exhibit 173) - "The enclosed affidavit questions
14  must be answered so that I may continue with your EEO
15  investigation."    13 questions that I already gave in affidavit
16  May 2006, with 22 questions (exhibit 5).

17    Again contract EEO Investigative Office and soon the contract
18  Law Department will continue the biased administrative processing
19  of my "terminated" EEO Complaint in defiance of EEOC Regulations
20  and the law.

21

22                            Evidence

23  Title 29 section 458.77 Rights of Parties - "Any party shall have
    the right to ... documentary evidence shall be submitted and a copy
24  furnished to each of the other parties.  Stipulations of fact may
    be introduced in evidence with respect to any issue."
25

*Summary of Pleading - 39*

PS Form 2565, page 2 Instructions, K.   "The AJ will notify you and the Postal Service of the right to seek discovery prior to the hearing to develop evidence reasonably on matters relevant to the issues raised in the complaint(s) to be heard."

Handbook for Administrative Judges, page 25, 5. Exhibits – "Parties are permitted to introduce documents as exhibits that are relevant and material to their case…  The report of investigation is already part of the record and need not be introduced as an exhibit.   7. If necessary and appropriate, the AJ may permit the parties to present rebuttal evidence"

My request for Discovery Documents for evidence (exhibit 57) was met with "The Agency objects to producing documents for job vacancies that Complainant never applied for on the grounds they are not relevant or calculated to lead to discoverable evidence… The Agency further questions the good faith of Complainant in making this request because he asked for the training records of the selecting official and the District Manager, which can have no possible relevance in this case except for pure harassment of Management Officials."   (exhibit 13)

My request for documents (exhibit 57) was for the forms/documents left out of the complete job vacancy file required by EL 312-736.1 (exhibit 78) by the formal contract EEO Investigator that would further prove my case.   The request for the training records of Management involved in the promotions was to show that they have not taken the required course (Affidavit exhibit 46, #8) Personnel Selection Method course 21553-00. Decision by an AJ without a Hearing, 1 Jul 08, (exhibit 52, pg 4) – "Nonetheless, all of complainant's pleadings and documents have been reviewed for purposes of this *Decision Without a Hearing…*

1  (page 5) This means the complainant must present a body of
2  evidence… (page 6) Speculation or conclusory allegations are not
3  enough … a plaintiff's mere speculations are insufficient… (page
4  7) Here, McDermott has not established a prima facie case of
5  discrimination on the basis of gender because he filed to apply
6  for the open position… the Postal Service nonetheless came
7  forward both during the investigation of this case and in its
8  pleadings to bring its evidence on these allegations into the
9  record… (page 9) The evidence shows there is no nexus between
10  anything that management has done in this case and complainant's
11  sex." So to the Administrative Judge I presented pleadings and
12  "documents", the Postal Service presented pleadings and
13  "evidence". The contract EEO Investigator established that I
14  presented enough evidence to meet the threshold to open the
15  investigation which I thought established prima facie facts that
16  discrimination may have occurred to warrant a formal
17  investigation. Why would the Administrative Judge change the
18  facts/evidence established by the formal investigation?

19  Investigative Summary (exhibit 45) page 20, Record Evidence
20  (Compensatory Damages): "Complainant did not provide any
21  documents or other evidence regarding his entitlement to
22  compensatory damages. No documents or other evidence was
23  presented or discovered regarding the Complainant's entitlement
24  to compensatory damages." I did give evidence and documents. I
25  was not asked for or given a chance to provide evidence for

1   "entitlement to compensatory damages"!   The Investigator only

2   later found that I did not provide the evidence to "entitlement"

3   and not the Administrative Judge's "prima facie" evidence.

4       I included the statement on Appeal to the EEOC (exhibit 65,

5   pg 1) - "AFFIRMATIVE  - Pursuant to MD 110, chapter 9, VI. A. 3.

6   (1614.404(b)) - I affirm that I was denied the right and was not

7   able to present evidence during the investigation or the hearing

8   process and wish to supplement the record."

9       The Agency's Response to Appeal, 4 Aug 08, (exhibit 68) -

10  CONCLUSION - "The Complainant has not come forth with any

11  evidence, other than his bald assertions and preposterous legal

12  theories that either the allegation was discriminatory or that he

13  was subjected to an inequitable administrative process."

14      EEOC Decision 2 Oct 08 (exhibit 19) - "Moreover, complainant

15  offers only conjecture that the agency's explanation is a pretext

16  for intentional discrimination;".  My material evidence was made

17  into "conjecture" by the EEOC and "bald assertions" by the

18  Agency.

19      My complaints and submissions - Exhibit 1 with 3 exhibits,

20  Exhibit 2 with 3 exhibits, Exhibit 3 with 6 exhibits, Exhibit 4

21  With 1 exhibit, Exhibit 15 with 13 exhibits, Exhibit 21 with 2

22  exhibits, Exhibit 53 with 31 exhibits, Exhibit 56 with 8

23  exhibits, Exhibit 64 with 15 exhibits, and Exhibit 65 with 2

24  exhibits (84 total).  Besides the formal investigation report the

25  Agency submitted zero exhibits.

1  Agency's Response (exhibit 68, pg 3) — "The Agency hereby

2  moves OFO to strike all of the Complainant's exhibits…"  Page 6 —

3  "The Complaint has not provided any evidence …" Page 13 — "The

4  Complainant has not come forth with any evidence, …"

5

6  The Court found in Roger Jeseritz v. PM John Potter, No. 01-

7  1490, 2 March 2002 that the Appellant had to "point to evidence

8  in the record sufficient to raise a genuine issue for trial."

9  EEOC Decision 10 Nov 08 (exhibit 80) "'aggrieved employee' as

10 one who suffers a present harm of loss with respect to a term,

11 condition or privilege of employment for which there is a

12 remedy."  I was "harmed" and there is a remedy how can the AJ

13 determine there is "no nexus"?

14 Title 5 section 556(d) — "…  Any oral or documentary evidence may
   be received, but the agency as a matter of policy shall provide
   for the exclusion of irrelevant, immaterial, or unduly
15 repetitious evidence.  A sanction may not be imposed or rule or
   order issued except on consideration of the whole record or those
16 parts thereof cited by a party and supported by and in accordance
   with the reliable, probative, and substantial evidence.   The
17 agency may, to the extent consistent with the interests of
   justice and the policy of the underlying statutes administered by
18 the agency, consider a violation of section 557(d) of this title
   is sufficient grounds to a decision adverse to a party who has
19 knowingly committed a violation or knowingly caused a violation.
   A party is entitled to present his case … and to conduct cross-
20 examination as may be required for a full and true disclosure of
   the facts."

21

22 My right to present evidence was violated by the Agency and

23 the Administrative Judge.

24
                           Ex Parte Communications
25

Title 5 section 557 (d)(1)(A)   – "No interested person outside
the agency shall make or knowingly cause to be made to any member
of the body comprising the agency, administrative law judge, or
other employee who is or may reasonably be expected to be
involved in the decisional process of the proceeding, an ex parte
communication relevant to the merits of the proceeding;".   The
Standard of Review for violations of Ethical Conduct is from the
view point of (12) – "… violated shall be determined from the
perspective of a reasonable person with knowledge of the relevant
facts."

Handbook for Administrative Judges, D. Spin-off Complaints –
"'Spin off' complaints are complainants that allege
dissatisfaction with the of previously filed complaint …  if the
Administrative Judge is presented with an allegation of improper
processing involving the complaint currently before him/her, the
Administrative Judge should determine whether the complainant
proved that the allegation has merit…"

Handbook for Administrative Judges, II Settlement Conferences B;
– "… the Administrative judge of record can only engage in ex
parte communications regarding settlement with the express
consent of the parties."   The Judge's Acknowledgement and Order
(exhibit 7) says "it is inappropriate for the parties to engage
in ex parte (one-sided) communication with the Administrative
Judge."

     Merriam-Webster's Collegiate Dictionary, eleventh edition, Ex
Parte – "1. On or from one side or party only – used in legal
proceedings.   2. From a one-sided or partisan point of view."

     AJ Decision (exhibit 52, pg 6) – … plaintiff's mere

speculations…" EEOC Decision (exhibit 19, pg2)   "… complainant

offers only conjecture that the agency's explanation is a pretext

for intentional discrimination…"   I clearly showed that ex parte

communication, threats, harassment, intimidation, and several

other violations of due process during the processing of my

Complaint.

     Agency's Brief (exhibit 36) Page 1 – "Complainant, in his

brief, does not address the subject matter of his complaint but

rather alleges that the actions of the Administrative Judge and

1  the Agency in the processing of the hearing request were
2  discriminatory."  The subject matter of this added Complaint is
3  "discrimination during the processing of my complaint" and is
4  clearly addressed.  I allege that actions by the EEO
5  Investigator, Attorney, Administrative Judge and Postal Service
6  Officials violated my Right of Due Process for a fair hearing.
7        Agency's Brief (exhibit 36) Page 2 - "The Complainant
8  demonstrates a clear lack of understanding of the administrative
9  processing of complaints and sets forth non-sensical arguments
10 regarding the administrative process."  I admit that I do not
11 understand why the Federal and Postal Service regulations were
12 not followed.  Every argument used by the Postal Service to
13 justify its positions themselves non-sensical (without reason)
14 and not based in Federal Policies or Regulations.
15       Take "regarding the Administrative process".  Deposition
16 (exhibit 12, pg 58) THE COURT:  - "… And some of it may be
17 repetitive, but it's under a different set of circumstances.  One
18 is an investigator, one is now the legal representative, and
19 generally, those questions are allowable."  Deposition (exhibit
20 12, pg 62) COURT - "You might consider still looking for legal
21 help in your case, Mr. McDermott…"  I do not have an
22 understanding of at what point did the "administrative" process
23 turn into a "legal" process that I needed legal representation
24 and help with?
25

1    There is plenty of evidence supporting that I was treated
2   differently in my complaints.   There is evidence of Ex Parte
3   communication between the Postal Service Attorney and the
4   Administrative Judge.   The Judge's statement on the order Denying
5   Complainant's Motion for a Protection Order of "the agency
6   representative called me on November 30, 2006" clearly shows Ex
7   Parte communications.   The Judge left a message at home for me
8   for me to call him (exhibit 10) when I was at work.   Both the
9   Attorney and the Administrative Judge knew my days off and had my
10  work phone number.   I called the Judge back – that was ex parte
11  communications, but he had already made a decision base on the
12  call from the Attorney (ex parte) and not my written Motion for
13  Protection.

14     The order denying my Motion for Protection (exhibit 11, pg1)
15  – "The agency representative called me on November 30, 2006,
16  orally objecting to the motion on the grounds he had already
17  traveled from out-of-state to Seattle for the Deposition."
18  During the deposition (exhibit 12) on page 51 the Judge said "I'm
19  allowing it to go on the day off because the deposition was
20  scheduled several weeks ago, and you did object in a timely
21  fashion."   So he and the Attorney "several weeks ago" had ex
22  parte communications to schedule the deposition.   I did send in
23  my Motion within the 10 day limit and was not late in a un-
24  "timely fashion" as the Administrative Judge claims.

25

1          Discovery

2  Title 5 section 556 Hearings; presiding employees; powers and
   duties; burden of proof; evidence; record as basis of decision.
3  I(3)  rule on offers of proof and receive relevant evidence; (4)
   take depositions… (5) regulate the source of the hearing;  (8) …
4  of at least one representative of each party…"  (d) "… adopt
   procedures for submission of all or part of the evidence in
5  written forms."

6  USPS Publication 133 What You Need to Know About EEO, Official
   Time – "Employee complainants and their designated
7  representatives, if also employed by the Postal Service, may
   expect a reasonable amount of official time to present the
8  complaint and to respond to agency's requests for information, if
   they are in duty status.  The term duty status refers to an
9  employee's normal hours of work."    The Contract EEO
   Investigator and the Contract Attorney both sent requests for
10 information to my home address and not to my "duty status" work
   address.
11
   OIG report LH-AR-02-005 "… Specifically, we found that procedures
12 for screening applications and selecting program candidates were
   adequate.  However, they were not always followed.  In addition,
13 while eligibility requirements were applied to all applicants,
   the requirements used to determine program suitability were not
14 applied to all applicants…  Finally, we found that oversight had
   not been provided to ensure the program was implemented
15 efficiently, effectively, and properly…  Also stated is that a
   significant amount of resources have been expended on this
16 program without a proper and accurate accounting…  committees
   deviated from procedures… review committees did not keep records
17 to support the decisions they made… district coordinators did not
   maintain organized official candidate selection files… district
18 coordinators did not fully understand what their responsibilities
   were."
19

20     The contract EEO Investigator asked 21 affidavit questions

21 including date of birth and asked for 5 specific requests for

22 documents (exhibit 5) for the formal investigation, which I fully

23 complied with.

24     The contract Attorney's statement during disposition of "I'm

25 not trying to discovery anything" (exhibit 12, pg 43) and "I can

1   guarantee you" (exhibit 12, pg 19) would show the disposition was
2   not for discovery and was intimidating.

3       The Judge's Acknowledgement and Order (exhibit 7) – "Request
4   for production of documents must be specific and identify the
5   documents or types of documents requested.  Request for
6   production of documents shall contain no more than thirty (30)
7   request including subparts."   The Attorney asked for "all"
8   documents (exhibit 14) creating a burden that I could not do
9   because of the thousands of pages of documents relating to these
10  complaints that I have read and saved.

11  MD-110 Methods of Discovery – "Interrogatories are written
    questions directed to a party that require written answers by
12  oath or affirmation.  They generally used to obtain basic
    information in advance of, or instead of, depositions."  G.
13  Informal discovery – "The administrative Judge should encourage
    the parties to cooperate and to participate in informal methods
14  of discovery because it provides the parties with an opportunity
    to narrow the scope of the hearing and reduce litigation costs."
15
        I tried to meet with the contract Attorney to define the
16
    claims of the complaints and establish the facts.  He declined to
17
    meet openly to establish the facts (exhibit 8) and stated "I
18
    don't believe there is anything for us to seriously discuss…"  He
19
    then responded with a Notice of Deposition (exhibit 8).
20
        After I requested documents for discovery (exhibit 57) the
21
    Law Department denied the request (exhibit 13) with "The Agency
22
    objects to producing documents for job vacancies that Complainant
23
    never applied for on the ground they are not relevant or
24

25

1  calculated to lead to discoverable evidence."  Again my right was

2  denied by the Attorney.

3      The contract Attorney did not send me interrogatories

4  questions before the deposition notice was issued.

5  MD 110, D.  Discovery Procedures 1.b;  -   "… The parties must
   cooperate with each other in honoring requests for <u>relevant non-</u>
6  <u>repetitive</u> documentary and testimonial evidence.  The parties
   shall not use any form of discovery or discovery scheduling for
7  <u>harassment</u>, unjustified delay, to <u>increase litigation expenses,</u>
   or <u>any improper purposes</u>."
8

9      Seattle District Policy Statement FY 2007, EEO investigations

10 - Request for information - "Additionally, when a responsible

11 management official ignores such requests, an adverse inference

12 is drawn by the judge that the information would have reflected

13 unfavorably.  This forces USPS into settlement of the case at

14 best, OR a finding of discrimination."  (exhibit 49)

15    The Office of the General Counsel Memorandum OM 03-18,

16 subject:  "Procedures for Handling Postal Service Cases Involving

17 Refusal to Supply Information" would show that not giving

18 requested information and hiding information is a big legal

19 problem for the Postal Service.

20    The Attorney sent the "First Set of Interrogatories" (exhibit

21 14) questions that were already answered by the formal

22 investigation or the forced deposition.  The demand was for "all"

23 documents personal and medical.

24
25 The Court found in Coca-Cola Bottling Co, v. Coca-Cola Co., 107
   F.R.D. 288 (D.Del.1989) - "On the other hand, unless defendant is

required to respond to plaintiff's discovery, plaintiffs will be unable to learn whether defendant has done them a wrong.   Except for a few privileged matters, <u>nothing is sacred in civil ligation</u>."

EEO MD-110 chapter XIII – "Stull v. Department of Justice, EEOC Appeal No. 12941582 (1995) (A complainant may be <u>awarded</u> interim attorney's fees as a sanction for failure to produce records requested during discovery even where s/he is unsuccessful on the ultimate issue of discrimination)".

Administrative Judge's Control of the Discovery Process

Title 5 section 556 Hearings; presiding employees; powers and duties; burden of proof; evidence; record as basis of decision. (b)   "…  The functions of presiding employees and of employees participating in decisions in accordance with section 557 of this title shall be conducted in accordance with section 557 of this title shall be conducted in a impartial manner."   (c)(3) rule on offers of proof and receive relevant evidence; (4) take depositions… (5) regulate the source of the hearing;   …   The agency may, to the extent consistent with the interests of justice and the policy of the underlying statutes administered by the agency, consider a violation of section 557(d) <u>of knowingly committed such violation or knowingly caused such violation to occur</u>…   In rulemaking or determining claims for money or benefits or application for initial licenses an agency may, when a party will not be prejudiced thereby, adopt procedures for submission of all or part of the evidence in written forms."

The contract EEO Administrative Judge did not control the development of the record for the hearing.

Title 29 section 1614.109(a) – "Upon appointment, the administrative judge shall assume full responsibility for the adjudication of the complaint, including seeing overseeing the development of the record."

The contract Administrative Judge did not control the discovery process as required by:

29 CFR 1614.109(d) "Unless the parties agree in writing concerning the methods and scope of discovery, the party seeking discovery shall request authorization from the administrative judge prior to commencing discovery."   (f)   "The administrative

1  judge <u>shall serve all orders to produce evidence</u> on both parties."

2      Management Directive 110, chapter 7(D) Administrative Judge's

3  Authority 5 and EL-603.2.1.18 says the same.

4

5                      Forced Deposition/Official Time

6  Title 5 section 556 Hearings; presiding employees; powers and
   duties; burden of proof; evidence; record as basis of decision. ©
7  "(4) take depositions… (5) regulate the source of the hearing;…"

8

9  MD 110 chapter 3 II.A. – "Agencies must build fairness into their
   programs.  Fairness requires voluntariness, neutrality,
   confidentially, and enforceability…  3. … it is important that
10 any agency dispute resolution procedure provide all parties the
   opportunity to bring a representative to the ADR forum if they
11 desire to do so."   VII ADR Core Principles, A. Fairness, 1.
   Voluntariness; – "Parties must knowingly and voluntarily enter
12 into an ADR proceeding.  An ADR resolution can never be viewed as
   valid if it is <u>involuntary</u>.  Nor can a dispute be actually and
13 permanently resolved if the resolution is involuntary.  Unless
   the parties have reached a resolution <u>willingly and voluntarily</u>,
14 some dissatisfaction may survive after the ADR proceeding.  Such
   dissatisfaction could lead to dissatisfaction with other aspects
15 of the workplace, or even to charges that the resolution was
   coerced or reached under duress." VIII. C. Official Time –
16 "Section 1614.605 provides that complainants are entitled to a
   representative of their choice during the pre-complaint
17 counseling and at all stages of the complaint process.  1. …  The
   complainant and the agency should arrive at a mutual
18 understanding as to the amount of official time to be used prior
   to the complainant's use of such time.  D. For purposes of these
19 regulations, "duty status" means the complainant's or
   representative's <u>normal hours of work</u>.  It is expected that the
20 agency will, to the extent practical, schedule meetings during
   the complainant's normal working hours… XIII.  … and Comer V.
21 FDIC, EEOC Request No. 05940649 (May 31, 1996)(Administrative
   Judge has the authority to order the agency to reimburse
22 appellant for costs resulting from the <u>agency's bad faith conduct</u>
   in failing to appear for properly scheduled depositions."

23

24 USPS Publication 133 What You Need to Know About EEO, Official
   Time – "Employee complainants and their designated
25 representatives, if also employed by the Postal Service, may
   expect a reasonable amount of official time to present the

1  complaint and to respond to agency's requests for information, if
   they are in duty status.  The term duty status refers to an
2  employee's normal hours of work."

3  Seattle District Policy Statement FY 2007 Resolving informal and
   Formal EEO Complaints. - "In almost all instances, informal
   resolution freely arrived at by all parties involved in the
4  dispute provides the best outcome."  (exhibit 47)

5
        The contract Postal Service Attorney forced under duress a
6
   disposition during my normal day-off 29 CFR 1614.605(b),
7
   Publication 133 What you need to know about EEO, Official Time
8
   and EL-603.2.1.27.1 Legal Provisions.
9

10      I received a Notice of Deposition dated 17 Nov 06, received

11  on 18 Nov 08 from the contract Attorney for 4 Dec 06 deposition

12  (16 days notice).  I filed a Motion for protection with the

13  Administrative Judge 24 Nov 06 (5 days) that he denied saying

14  that I did not get it to him in time.  The Judge's statement on

15  the order Denying Complainant's Motion for a Protection Order of

16  "I'm allowing it to go on the day-off because the deposition was

17  scheduled several weeks ago and you didn't object in a timely

18  fashion".  A.  Scheduled by whom several weeks ago?

19  EEOC Order Number 690.001, 30 Jan 02, "An ex parte communication
    is an oral or written communication between decision making
20  personnel of the Equal Employment Opportunity Commission and an
    interested party to the proceeding which does not provide for the
21  participation of the other interested parties."

22      I was not there for this "scheduling" decision.  B.  14 Days

23  is not several weeks.  C.  I was not given "several weeks" notice

24  or the required 20 days notice.  D.  I gave my Motion for

25

1  Protection to the Judge before the 10 day limit.  He and the

2  Attorney said that I was "late".

3       Deposition (exhibit 12, pg 7) - "Well, for example before you

4  bring a discovery dispute to a judge, you required under the

5  rules to contact the opposing party, which you did not do in this

6  case.  A.  Did you contact me before you sent me the deposition?

7  Q.  I'm not required to do that.  A.  Then why am I required?

8  You should have to show me the rule.  Q.  I don't have to show

9  you the rules.  The judge will be happy to explain the rule to

10  you and order you to contact me in the future.  A.  Was that

11  after you gave arguments without me being present?  Q.  Okay,

12  That's fine. Mr. McDermott.  You can make this as hard or as easy

13  as you want to.  Okay?  A. Are you threatening me again?  Q. No,

14  I'm just telling you …"

15       Deposition (exhibit 12) page 5 "I'm entitled to ask

16  preliminary questions…"  Page 13 - "I'm entitled to explain to

17  the judge how your answers are changing."  Page 14 "I'm entitled

18  to ask you questions over again… Would you like me to get Judge

19  Gaffin on the phone to explain this to you…  I'm entitled to ask

20  questions even though they're in the affidavit and even though

21  they're in the investigation file"  Page 15 "… I'd just as soon

22  have Judge Gaffin tell what you I'm entitled to ask."  Page 19 "…

23  I can guarantee you that I'm going to be making a motion for you

24  to pay the cost of me returning here, including airfare, lodging,

25  and whatever other reasonable and necessary costs for you

1  improperly trying to terminate the deposition… I don't have to
2  give you 20 days notice…" Page 20 "Q.  I haven't threatened you
3  with anything other than to call the judge… A.  You coerced me to
4  be here.  You threatened me to be here.  Q.  I sent you a notice.
5  I didn't threaten you.  I didn't even talk to you before today…
6  Did you receive the letter?"

7      Telephone answering machine message 30 November 2006 (exhibit
8  10) "Oh, Hello, This call is for Lance McDermott.  This is Dick
9  Mosher, please call me at… I'm already in Seattle, so unless
10  you'd like to pay my airfare back and forth the deposition will
11  go on as scheduled."

12      Deposition (exhibit 12) Page 24 "I'm entitled to ask you
13  again."  Page 28 "I have an independent right to day… when the
14  judge reads my motion to dismiss and for sanctions."  (Page 29-
15  30)  "Let me ask further questions just to see what you're going
16  to talk about and not talk about."  Page 33 "I'm entitled to any
17  document…"  Page 43 "I'm not trying to discover anything."  Page
18  48 "All I can do is tell you – it's not a threat…"  Page 56 "…
19  I've got a right to ask him questions … We're entitled to ask the
20  same questions…"  Page 70 "Yes, you do have to answer
21  hypothetical questions."

22      Deposition (exhibit 12) Page 62 COURT "You might consider
23  still looking for legal help in your case, Mr. McDermott…"  Page
24  63 "I'm willing to stay on the line a little bit."  Page 96 "And
25  I didn't hear any of his responses."  Why would the

1   Administrative Judge counsel me to get legal help for an

2   administrative process?  Would that offer more protection from

3   the Administrative Judge or the Attorney flown in from Salt Lake?

4   EEOC Handbook for Administrative Judges chapter 10(V) "Statements
    in opposition to discovery motions must be filed within ten (10)
5   calendar days of receipt of the motion.  Rulings will be made
    based upon the written submissions."
6
        The Judge ruled on a phone call from the Attorney and not a
7
    written submission.
8

9
            Administrative Judge's participation in Deposition
10
        The Contract Administrative Judge listened in on the one-
11
    sided questioning (page 48 – 96) during the disposition on a
12
    speaker phone for about 45 minutes of the 3 hour disposition.
13
    OIG report HM-AR-04-004 "We also found, however, the
14  organizational structure at the area level was not consistent
    with guidance.  As a result, there was an appearance of a
15  conflict of position or interest in the placement of some Postal
    Service Equal Employment Opportunity officials.  This appearance
16  of could compromise the integrity of the Postal Service's Equal
    Employment Opportunity program.  We also recommend that if the
17  Equal Employment Opportunity Commission determines the Postal
    Service's Equal Employment Opportunity structure is not
18  consistent with its regulations and guidance, the vice president,
    Labor Relations:…".
19

20      The Administrative Judge failed to establish the factual

21  merits of the EEO Complaint, failed to control discovery and

22  added *prima facie* standard that is not part of the EEOC

23  Administrative process or rules.  The Administrative Judge

24  listened in on the deposition taken.  The Administrative Judge

25  did not give me full and fair opportunity to address the reasons

1  given by the Postal Service for their discriminatory actions,

2  thus denying my Due Process Rights.

3

4                    Denied Representative of choice

5  Title 29 section 458.77 Rights of parties.  "Any party shall have
   the right to appear at such hearing in person, by counsel, or by
6  other representative … except that the participation of any party
   shall be limited to the extent prescribed by the Administrative
7  Law Judge."

8  Title 5 section 556 Hearings; presiding employees; powers and
   duties; burden of proof; evidence; record as basis of decision. I
9  (8) … of at least one representative of each party…"

10
   MD 110, VII ADR Core Principles, A. Fairness, … VIII. C. Official
11 Time – "Section 1614.605 provides that complainants are entitled
   to a representative of their choice during the pre-complaint
12 counseling and at all stages of the complaint process.

13     USPS Publication 133 What You Need to Know About EEO,
   Representation – "You may designate a representative at any stage
14 of the complaint process, including the precomplaint counseling
   stage."
15
       The contract Attorney denied my representative of choice (29
16
   CFR 1614.605(a), and Handbook for Administrative Judges chapter
17
   4, Pub 133, EL-603,) before the start of the discovery
18
   disposition.
19
       Agency's Brief in Opposition to Complainant's Appeal (exhibit
20
   36, pg 2) "(b) Pursuant to MD-110, Chapter 7, choice of
21
   representative, his wife, who was not his representative, was not
22
   allowed to attend his deposition;" RESPONSE:  "Complainant's
23
   wife was never his representative and as such, had no right to
24
   attend the deposition."
25

1    I had the right for "any representative" to attend the
2  deposition.   It was the Attorney not the Judge that told my wife
3  she could not attend.   My wife was my representative for a
4  deposition taken by a US Department of Justice Attorney for a
5  Federal Civil Action I filed against the Postal Service.   30 May
6  2006 I gave a deposition with the Assistant District Attorney
7  Kristin B. Johnson, Postal Service Attorney Richard C. Mosher,
8  and my wife Darlene as my representative for the Civil complaint
9  CV-860-RSL.   The Federal Attorney asked if Postal Service
10  Attorney Richard C. Mosher could attend and I said "ok" for him
11  to stay in the deposition also attended by my wife ("ok'd" by the
12  DA).

13    This was a protected act (Civil Complaint) that the Postal
14  Attorney was aware of and this denial of a right I believe was in
15  retaliation for my protected activity.   Deposition (exhibit 12)
16  Page 106 "Mosher Q.   What's the short version?   A.   Short version
17  is it's a lot of corruption around there that I tried to point
18  out over the years."

19    Pursuant to the letter I received from the EEO Dispute
20  Resolution (exhibit 81) says "The mediation process is non-legal,
21  non-adversarial and non-threatening.   If you participate in
22  mediation, you do NOT waive any of your rights under EEO process.
23  In fact, during all phases of the administrative EEO process,
24  including mediation under the REDRESS program, you are entitled

25

1 to have a <u>representative</u> of your choice…"  I did have the right

2 for my wife to attend as my representative.

3 Handbook for Administrative Judges C. Depositions – "Parties are
entitled to conduct a reasonable number of depositions.  What is

4 reasonable will depend on the extent of the report of
investigation and the scope and complexity of the complaint."

5

6     The contract Postal Service Attorney did not conduct a

7 reasonable disposition that in reality was an interrogation and

8 asked irrelevant, overburdensome, repetition and privileged

9 questions.  As his statement of "I have an independent right

10 today to ask you the same questions the EEO investigator asked

11 you…" (exhibit 12, pg 28) would show this and starting the

12 questions with when and were I was born and proceeding with

13 asking what medication (Protected 29 CFR 1611.6 and EL-

14 603.2.1.10.4) I was taking or if I was on drugs or alcohol.  The

15 contract Attorney had access to my Official Personnel File that

16 already contained this personal information and my drug test when

17 hired.  MD-110, discovery request "which is relevant to the

18 subject matter".  The contract Attorney spent 3 hours and 123

19 pages asking non-relevant questions like "what did you do for

20 Desert Storm?".  The EEO Investigator asked 21 questions and

21 request 5 documents (exhibit 5).

22

23                 Denial of the right to Cross-Exam

24 Title 29 section 458.77 Rights of parties – "Any party shall have
the right to appear in person, by counsel, or by other

25 representative, to examine and cross-examine witnesses…"

1   Title 5 section 556(d) – "… A party is entitled to present his
2   case … and to conduct cross-examination as may be required for a
    full and true disclosure of the facts."

3       EEOC Handbook for Administrative Judges; c. Dispositions –
4   "The opportunity for cross examination must be provided."

5       RESPONSE: "The Complainant has no right to cross-examine the
6   Agency representative during the course of the Complainant's
7   deposition." (exhibit 36, pg 3) The Attorney stated that I did
8   not have the right to ask questions or cross-examine myself
9   during the deposition which I dispute.

10

11                              Threats

12      The Court found in NLRB v. USPS No. 07-14951, 2 May 2008, "We
13  need not address the extent of First Amendment protection
14  available to such threats, because we determined that Power's
15  threat to sue, coupled with the unspecified reprisal, was
16  retaliatory in nature, and thus illegal under the NLRA."

17      The contract Attorney's statement during disposition; "There
18  is a difference between a threat and a promise. I'm just warning
19  you on the record" (deposition, exhibit 12, pg 20) could be taken
20  as a threat. "That not harassment, and that's something for the
21  record. We'll let the judge decide when the judge reads my
22  motion to dismiss and for sanctions" (page 28). What
23  "sanctions"? Already decided to file a Motion for Dismissal with
24  sanctions only 28 pages into a 123 page deposition?

25

1   The contract Attorney threaten me nine times during the

2   disposition (exhibit 12) that he would call the Judge and "have

3   Judge Gaffin tell you what I'm entitled to ask." · Page 8 - "If

4   you're going to continue to ask questions, I will call Judge

5   Gaffin and get an order…"

6   The Attorney threatened me three times that I would have to

7   pay his air fare from Salt Lake (and back) if I left the

8   disposition.

9   FRCP 11(2) - "… reasonable attorneys' fees and other expenses

10  incurred as a direct result of the violation." · Is this

11  reasonable?

12  Title 5 section 504 (b)(1)(A)(ii) - "attorney or agent fees

13  shall not be awarded in excess of $125 per hour…"   The Attorney

14  flew in on Thursday for a deposition on Monday.  How many $125

15  hours would I have really owed?

16  York, Bauman & Rrandleman Remedies 4th Ed. ACB, C. Undue
    Influence - "…  The kind of influence or supremacy of one mind
17  over another by which that other is prevented from as
    acting according to his own wish or judgment… Undue influence
18  involves a type of mismatch which our statue calls unfair
    advantage.  (Civ. Code section 1575)."
19
    Federal Register/Vol. 66, No. 213/Friday, November 2, 2001/Rules
20  and Regulations - Postal Service, 39 CFR Part 960 - "… increased
    the maximum amount of attorney fees under the Equal Access to
21  Justice Act from $75 per hour to $125 per hour."

22
    So the truth is I was only on the "hook" for maximum of $125 for
23  the first hour and recorded costs.

24

25

1  The US 4th Circuit Court of Appeals US v. American Target, No.
   00-1384, the Court Opinioned that "… the Postal Service would
2  ordinarily posses the authority to investigate potential
   violations of the Cooperative Mail Rule, it has no authority to
3  exercise its investigative prerogative as a tool of intimidation
   and harassment.  This premise finds support in the law… Such an
4  abuse would take place if the summons had been issued for an
   improper purpose, such as to harass the taxpayer or to put
5  pressure on him to settle a collateral dispute, or for any other
   purpose reflecting on the good faith of the particular
6  investigation…  The burden of demonstrating an abuse of process
   is on the party challenging the investigation.  Powell, 379 US at
7  58… must show that the party actually responsible for initiating
   the investigation, i.e., the Postal Service, has done so in bad
8  faith.  See SEC v. Wheeling-Pittsburgh Steel Corp. 648 F.2d 118
   (3d Cir. 1981)… where the district court had made specific
9  findings that 'the SEC has permitted and at times encouraged, the
   abuse of its investigation function…"

10

11        (first) Notice of Intent to Sue and Allegations of Process
                Discrimination, 7 January 2007 (exhibit 15)

12     Agency's Response to Complainant's Appeal 4 August 2008

13  (exhibit 68) – "(1) Pursuant to 29 CFR 1601.28, the

14  administrative process should have ceased upon Complainant's

15  request for a notice to sue letter;".

16     EEO MD-110, IV B.  Aggrieved May Bypass Administrative

17  Process – "An aggrieved person may bypass the administrative

18  complaint process and file a civil action directly in U.S.

19  District Court provided that the aggrieved person first provides

20  the Commission with written notice of intent to sue…  D. It is

21  the responsibility of the aggrieved person to provide the

22  Commission with a written notice of intent to sue…"

23     "The Postal Service filed its Agency's Motion for a Decision

24  Without a Hearing on March 2, 2007.  McDermott did not file a

25  response."  (exhibit 16)  I did file a response to the Agency's

1   first Motion to Dismiss without the required Statement of Genuine
2   Facts - the Notice of Intent to Sue 8 January 2007 (exhibit 15)
3   to the EEOC office in Washington D.C. as required by Title 29
4   663.a(d).   663a(d) "Upon receiving a notice of intent to sue, the
5   Commission shall promptly notify all persons named therein as
6   prospective defendants in the action and take any appropriate
7   action to assure the elimination of any unlawful practice."   The
8   EEOC Washington office sent back a notice to me that they
9   received the Notice of Intent to Sue and were stopping the
10  Administrative process (notifying everyone).

11      A year and a half later the Administrative Judge's Decision 1
12  July 2008 (exhibit 52)  the "there are not genuine issues of
13  material fact requiring a hearing in this case and issuance of a
14  decision by the administrative judge without a hearing is
15  appropriate under 29 CFR 1614.109(g)" is not true.   I have
16  disputed every "fact" the Postal Service threw at my claims.   The
17  Judge Decision was not appropriate without the Statement of
18  Undisputed Facts and a Decision without a hearing pursuant to 29
19  CFR 1614.703(e) was wrong.

20
21  29 CFR 1614.109(g):   "(3) If the administrative judge determines
    upon his or her own initiative that some or all facts are not in
22  genuine dispute, he or she may, after giving notice to the
    parties and providing them an opportunity to respond in writing
23  within 15 calendar days, issue an order limiting the scope of the
    hearing or issue a decision without holding a hearing."

24

25

Statement of Genuine Facts

Pursuant to 29 CFR 1614.109(g) "… file a statement with the administrative judge  prior to the hearing setting forth the fact or facts and referring to  the parts of the record relied on to support the statement. The statement must demonstrate that there is no genuine issue as to any such material fact. The party shall serve the statement on the opposing party."

Title 5 section 556 Hearings; presiding employees; powers and duties; burden of proof; evidence; record as basis of decision. ©(3)  "rule on offers of proof and receive relevant evidence;". (e) "… When an agency decision rests on official notice of a material fact not appearing in the evidence in the record, a party is entitled, on timely request, to an opportunity to show the contrary."

EL-603.2.1.17.1 "If the advocate who will handle the case believes that some of all of the material facts in the case are not in genuine dispute, the advocate should file a statement with the administrative judge at least 15 days before the scheduled hearing.  The statement should request findings and conclusions without a hearing and should set forth the facts and cite parts of the record that support the statement.  A copy of the statement must be also served on the complainant…"

EEOC MD-110 chapter 7, 4. Legal Standard for the Use of Summary Judgment – "Summary judgment is proper when "material facts are not in genuine dispute." Section 1614.109(g).  Only a dispute over facts that are truly material to the outcome of the case should preclude summary judgment…  Moreover, a mere recitation that there is a factual dispute is insufficient.  The party opposing summary judgment must identify the disputed facts in the record with specificity or demonstrate that there is a dispute by producing affidavits or records that tend to disprove the facts asserted by the moving party."

    The Court in Adickes v. S.H. Kress & Co., 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970), establish that "the party opposing the motion for summary judgment bears the burden of responding *only after* the moving party has met its burden of

1  coming forward with proof of the absence of any genuine issues of

2  material facts."

3      The Court in Celotex Corp. v. Catrett, 477 U.S. 317, 106

4  S.Ct. 2548, "Celotex makes clear that before the non-moving party

5  is required to produce evidence in opposition to the motion, the

6  moving party must first satisfy its obligation of demonstrating

7  that there are no factual issues warranting trial."

8      The Motion for a Decision, 11 Jun 08, (exhibit 16) does not

9  contain the required Statement of Material Facts.  When I appeal

10 (exhibit 56) to the EEOC I complained that there was no Statement

11 of Material Facts.  The Agency belatedly submitted an UNDISPUTED

12 STATEMENT OF MATERIAL FACTS in the Agency's Response 4 Aug 08

13 (exhibit 68) which I disputed most of their "facts" in My

14 Supporting Statement (exhibit 64).  The Attorney even submitted

15 portions of the disputed Deposition as "facts" that have not been

16 submitted to the Administrative Judge as evidence or used in the

17 Decision Without a Hearing (exhibit 52).  Later, Motioning to

18 Strike my Supporting Statements, 2 Sep 08, (exhibit 62).

19     All my facts were made mere speculations and ramblings by

20 the Postal Service or Administrative Judge.  I was also denied

21 discovery documents to prove my claims.  The Investigation file

22 did not have the complete Job Vacancy Announcement (exhibit 70

23 #25) or the form to show that the employee was placed in

24 temporary higher-level position according to Postal Service

25 Policy.  The dates on the reviewing, approval, and concurring

1  forms do not match the dates inputted in the VMARS computer

2  (exhibits 73, 75, 76).  The decline and acceptance letters sent

3  to employees have different dates and signatures.  Some of the

4  signature blocks have two signatures of Supervisors who were not

5  on the Review Committee or the selecting/approving/concurring

6  Official.

7      The non-creditable and incomplete investigation information

8  was used as factual findings by the Administrative Judge to issue

9  his Decision without a hearing.  The Administrative Judge's

10  factual determinations are not supported by the substantial

11  evidence and material analysis of the facts regarding the Judge's

12  decision would prove this.  When the Court reviews the documents,

13  statements and testimony of the investigation, I ask that they

14  review my relevant submissions, in my appeals that, were excluded

15  in the investigation and contradicts the information in the

16  investigation.

17      The Court found in Roger Jeseritz v. PM John E. Potter No.

18  01-1490, 4 March 2002 "… we will affirm if 'there is no genuine

19  issue as to any material fact and the moving party is entitled to

20  a judgment as a matter of law'.  Fed. R. Civ P. 56©.  In order to

21  establish a genuine issue of material fact, Jeseritz, as the non-

22  moving party, could not 'simply rest upon the pleadings.'

23  Mathews v. Trilogy Communications, Inc., 143 F.3d. 1160, 1164

24  (8th Cir. 1998).  Nor could he rely on conclusory statements in

25

1  his affidavit. See Miller v. Citizens Sec. Group, Inc., 116 F.3d.
2  343, 347 (8th Cir.1997)."

3  Agency's Response to Complainant's Appeal of Decision by an
4  Administrative Judge without a Hearing, #1E-981-0018-06, dated 4
5  Aug 08, (exhibit 68) page 2 – Undisputed Statement of Material
6  Facts –

7  1.  "At all material times, Complainant was a Maintenance
8      Mechanic (MPE) with the Agency working at the Seattle
9      Processing and Distribution (P&DC), Seattle, WA."  Not
10     True – I was working at the Priority Mail Annex (PMA),
11     Kent, WA., during the time of the second EEO complaint.
12 2.  "On December 23, 2005, Complainant received a "Grinch
13     Award" and $.18 cents from co-worker not serving in a
14     supervisory position."  True, but during a management held
15     meeting.

16 3.  "Complainant has no evidence management had any advance
17     knowledge that co-workers were going to present him with a
18     "Grinch Award" (Complainant's deposition p. 78, lines 14-
19     16)."  (Deposition is exhibit 12.) Not True – Management
20     did have advance notice. Notice of Right to File
21     individual Complaint, 1E-981-0018-06, (exhibit 22) – "Mr.
22     Eger clarified that management was neither consulted nor
23     involved in any way with this award… felt they were
24     presenting this award around the holiday season for a bit
25     of levity…  Mr. Eger related he did not know this award

1   was going to be presented at the stand-up and that your
2   coworkers just asked for a moment to talk, which he
3   allowed."   The Supervisor in charge of the meeting
4   "allowed" the award to be given.
5   4.   "… The opening was posted on the Agency's Seattle
6   District webpage and also included in the vacancy posting
7   book at the facility control center."   True, but the
8   agency offered no proof of this and where is was posted
9   was not known at the time by me or most other employees.
10  5.   "Manager of Maintenance (MMO) Wayne Witzel, verbally
11  informed Complainant and other employees about the open
12  position during morning meetings with employees."   Not
13  True - Maintenance Supervisor Henry Eger, not Manager
14  Witzel, informed me of the vacancy on February 2 that
15  closed February 3.   Investigative Summary 1E-981-0018-06
16  (exhibit 45) page 5 "Complainant states that he is a
17  Maintenance Mechanic, MPE, at the Seattle Processing and
18  Distribution Center in Seattle, Washington, and that
19  during a morning meeting on February 2, 2006, Supervisor
20  Henry Eger stated that a Tour 2 Supervisor, Maintenance
21  Operations (SMO) position was posted."
22  6.   "Complainant says he couldn't locate the vacancy
23  announcement and therefore, he never applied for it."
24  True -   Investigative Summary (exhibit 45) page 5 -
25  "Complainant states that he looked at the Western Area

1  Vacancy Announcements using his account and could not find
2  it anywhere."  Page 6 - "Mr. Witzel states that jobs are
3  posted as follows:  on the Seattle District web site..."
4  page 18 - "Mr. Witzel testifies that the vacancies for all
5  of these positions were posted on the Seattle District web
6  page, available at the Control Center and announced at
7  stand up talks."  If true to post on the Seattle District
8  Web site, than required to post on the eCareer site is
9  "untrue".

10  7.  "Tour 3 SMO, Jim Barry, was appointed to a Tour 2 SMO
11      position and Linda Mainor was appointed to fill the Tour 3
12      SMO position."  Not True - Investigative Summary exhibit
13      2, Vacancy Announcement (exhibit 23) shows the position
14      was for tour I position 2300-0750 (7:30am), but Linda was
15      promoted to a tour II day shift position 0600-1530.

16  EEOC Decision 2 Oct 08 (exhibit 19) - "Complainant has not
17  presented any material facts in dispute..."

18  EEOC Decision 10 Nov 08 (exhibit 20) - The Commission finds
19  that the agency has mischaracterized complainant's claim."

20  Wayne Witzel's affidavit statement (exhibit 46, #16) "Michael
21  J. Brunswick, Electronic Technician----- Male Mr. Brunswick is
22  very competent person and has many skills.  He needed more
23  training on the administrative functions of the position."
24  However, looking at the Vacancy Announcement (exhibit 23)
25  "administrative functions" are not in the Job Requirements 1-9.

1  So an Electronic Technician level 12 who had better skills listed

2  in the Vacancy Requirements was passed over for the Tool and

3  Parts Clerk level 5 because he lacked the Administrative skills

4  requirement not listed in the Vacancy Announcement.  How could

5  she have better knowledge of the maintenance of the equipment if

6  she has not worked on the equipment?

7

8        My right to dispute the facts was violated.

9        Decision by AJ (exhibit 52) - "In response to a motion for

10  summary judgment, the fact-finder's function is not to weigh the

11  evidence and render a determination as to the truth of the

12  matter, but only to determine whether there exists a genuine

13  factual dispute."   The VI.  ANALYSIS on page 7 of the Decision

14  shows the Judge made his decision base on "the evidence in it's

15  entirely" and not on any genuine fact.  How can a Judge make a

16  decision on evidence without the facts?

17       AJ - "… a plaintiff's mere speculations are insufficient to

18  create a genuine issue of fact regarding an employer's

19  articulated reasons for its decisions."   Why is all the evidence

20  I presented taken as "mere speculations" and the Postal Service's

21  'articulated reasons' are taken as "genuine issue of fact" by the

22  Administrative Judge?

23       I also filed Allegations of Process Discrimination violations

24  of Title 29 section 2938 with the EEOC (exhibit 15) with the

25  relevant facts and specific allegations of more discrimination by

1 the Administrative Judge and the Postal Service Attorney assigned

2 to the case.

3     AJ - ANALYSIS - A.  "Here, McDermott has not established a

4 prima facie case of discrimination on the basis of gender because

5 he failed to apply for the open position.  McDermott alleges

6 there were irregularities because the Postal Service failed to

7 physically post the opening on the bulletin boards as per the

8 prior local practice."  A.  Management did not properly inform me

9 of the job opening.  B.  The "irregularities" are that Management

10 did not follow Postal Service Policies and Federal Regulations.

11 C.  Management did not have a "prior local practice" to post on

12 the bulletin boards, but it does now at the P&DC but not at the

13 PMA where I now work.

14     The Prima Facie - I presented Title 29 section 215 Prima

15 Facie evidence that prohibited acts occurred that has been

16 ignored by the EEOC Investigator, Attorney, and the

17 Administrative Judge.  I have shown that Agency's "articulate

18 legitimate, nondiscriminatory reasons" are lies that cover up the

19 facts.  The Judge wrote "To prevail in a 'failure to promote'

20 case, the complainant must... (2) a vacancy existed for which the

21 complainant applied for..."  This case is about "failure to notify"

22 and "failure to promote".

23 Federal Express Corp. V. Holowecki, No. 06-1322, 1(b) "Just as
this Court defers to reasonable statutory interpretations, an
24 agency is entitled to deference when it adopts a reasonable
interpretation of its regulations, unless its position is
25 'plainly erroneous or inconsistent with the regulations' Auer v.

Robbins, 519 US 452…   "   2(b) "… However, the ultimate responsibility for establishing a clearer, more consistent process lies with the EEOC, which should determine, in the first instance, what revisions to its forms and processes are necessary or appropriate to reduce the risk of future misunderstandings by those who seek its assistance."

District of Columbia Circuit Court, AAL v. USPS, 14 March 2003, No. 01-5449; "The District Court granted judgment for appellees, finding that the regulations "constitute an impermissible reading of the statute." Aid Ass'n for Lutherans v. USPS, No. 96-2694, Mem. Op. at 13 (D.D.C. Sept. 13, 2001) ("AAL Mem. Op."), reprinted in Joint Appendix ("JA") 157, 169; Am. Bar. Endowment v. USPS, No. 97-660, Mem. Op. at 6 (D.D.C. Sept. 17, 2001) ("ABE Mem. Op.") (finding the "identical analysis" to apply), reprinted in JA 384, 389… appellees may challenge actions by the Postal Service that are outside of the scope of its statutory authority… On the merits, we hold that the Postal Service's regulations exceed the agency's delegated authority under the statute… In AAL, the District Court first held that 39 U.S.C. § 410(a) did not preclude judicial review in this case… Id. at 12-13, JA 168-69.

Appellant contends that this is so because the appropriate scope of review is something akin to "that appropriate in mandamus actions," Nat'l Ass'n of Postal Supervisors v. USPS, 602 F.2d 420, 432 (D.C. Cir. 1979) ("National Association"). Appellant's Br. 2-26….

National Association, 602 F.2d at 432. With respect to the matter at issue in this case – the scope of review of Postal Service constructions of PRA – we held that "[t]he judicial role is to determine the extent of the agency's delegated authority and then determine whether the agency has acted within that authority." The agency must still stay within the bounds of the delegation in promulgating regulations under the statute. In this case, the Postal Service has transgressed the bounds of any delegation to fill alleged gaps in the statute, because the statute simply cannot bear the meaning that the Postal Service seeks to give it. See MCI Telecomms. Corp. v. Am. Tel. & Tel. Co., 512 U.S. 218, 229 (1994) ("[A]n agency's interpretation of a statute is not entitled to deference when it goes beyond the meaning that the statute can bear….").

## Prima Facie

Merriam-Webster's Collegiate Dictionary, eleventh edition,

Prima Facie – "1: True, valid, or sufficient at first impression

1  2. Self-Evident.  3. Legally sufficient to establish a fact or a
2  case unless disproved."

3  AJ Decision, 1 July 2008 (exhibit 52, pg 7) "While McDermott
4  did not establish a prima facie case of discrimination, the
5  Postal Service nonetheless came forward both during the
6  investigation of this case and in its pleadings to bring its
7  evidence on these allegations into the record.  This decision is
8  based on the evidence in its entirely and not just on the
9  evidence going to the questions of whether complainant
10 established a prima facie case."  A.  I did establish that I was
11 treated differently.   B.  The Postal Service was allowed to
12 bring evidence/genuine facts to dispute the allegations and my
13 evidence was made "mere speculation" by the Judge.  "*Prima facie*
14 case" does not exist in 29 CFR 1614 EEOC administrative
15 procedures and would be a higher legal standard than I was not
16 asked to or able present.

17 I do not see "minimum threshold of the second and third
18 elements required to establish a *prima facie* case" in 29 CFR
19 1614.106 individual complaints or the "second prong of the
20 McDonnell Douglas test".  MD 110, V.  "… the agency and the
21 aggrieved person have the same understanding of the terms…"
22 Again the agency Attorney and the Administrative Judge were using
23 a higher level legal standards and terms than the administrative
24 process.

25

1    FRCP 83 (b) "… No sanction of other disadvantage may be

2    imposed for noncompliance with any requirement not in federal

3    law, federal rules, of the local district rules unless the

4    alleged violator has been furnished in the particular case with

5    actual notice of the requirement."   I was not ask for prima

6    facie evidence and was not given a copy of the "prima facie"

7    rule.   Any evidence, prima facie or not, I gave was made into

8    "did not establish" by the Administrative Judge.

9

10    DISMISSAL OF (second) FORMAL EEO COMPLAINT 1E981004408

11   My original allegations 3 May 2007 (exhibit 3) were changed in

12   the EEO Dispute Resolution Specialist's Inquiry Report 18 June

13   2008 (exhibit 55)   "In the incident described by the Complaint,

14   he indicated that Management delayed posting a vacancy

15   announcement on the official bulleting board, resulting in

16   Complainant submitting his 991 past the deadline, and thus not

17   being eligible for consideration."

18    1. Management did not post the job vacancy announcement on

19   the bulletin board.

20    2.   I submitted my application on time.

21    "HR Generalist Dianne Savas responded on 06/26/08 that the HR

22   Policy Manual does not state Management must post EAS positions

23   on bulletin boards,…"   (exhibit 55) The Agency has not and cannot

24   produce a copy of this "does not" HR policy.   I submitted dozens

25   of exhibits Postal Service polices and documents that require

1  posting on the bulletin boards (exhibits 44) and to show this

2  statement to be untrue.  Other than the Formal Investigative

3  Report the Postal Service has submitted zero documents with their

4  Motions compared to the 84 I submitted.

5      Further, the EEO Services Analyst (exhibit 55) found "Since

6  VAMS was implemented, local management officials were no longer

7  obligated to post EAS vacancies on the bulletin board."  EL-

8  350.321 "However, offices must provide appropriate application

9  information to applicants when automated system is used for

10 posting Initial Level Supervisor positions filled…"  Manager's

11 overview EAS Selection Process (exhibit 70) shows #6 Complete

12 Notice of Intent (NOI) on-line in the Vacancy Announcement

13 Management System (VAMS).  "#7 VAMS approving official #8 Post

14 vacancies every weeks – PostalPEOPLE website – email all ACE

15 users #9 Make copies and distribute #10 make vacancy

16 announcements available to employees."  Making this "genuine

17 fact" presented by the EEO investigator to be untrue.

18     Agency's Brief (exhibit 36, pg 1) "… the Agency shows that

19 the Complainant's petition demonstrates complete ignorance of

20 EEOC regulations pertaining to formal complaints.  Complainant's

21 patchwork of allegations contain not a single legitimate example

22 of unlawful discrimination during the processing of his

23 complaint."  I have shown the ignorance or pretext of Postal

24 Service Management.  I have shown the ignorance or pretext of the

25 contract EEO investigator, FAD Writer, Attorney, and

1  Administrative Judge. I have tried to show how the knowledge

2  gained by Human Resource employees was turned against Postal

3  Employees when these former HR employees became contract EEO

4  investigators and FAD Writers who a paid bonus of up to $172,000

5  a year (more then a Postal Executive makes). I had to spar with

6  an ignorant high-priced contract Postal Attorney flown in from

7  Salt Lake four days early for my deposition who said that he had

8  independent rights and I had no rights. Now the Law Department

9  thinks that I am ignorant and therefore wrong which I also

10  dispute. I submitted plenty of evidence that there was

11  "legitimate example" of unlawful discrimination and retaliation.

12  All the allegations I made meet the "threshold" level of

13  discrimination and together they reach the "legal" definition of

14  Discrimination.

15      FRCP provide for a "motion for more definite statement" as a

16  formal method of challenging a pleading that is "so vague or

17  ambiguous that a party cannot reasonably be required to frame a

18  responsive pleading." Fed.R.Civ.P 12(e). The Postal Attorney

19  did not make a Motion for More Definite Statement to give me an

20  opportunity to clarify my "incoherent ramblings" (English) that

21  the better educated Attorney and Administrative Judge could not

22  understand. Nor did the contract EEO Investigator is responsible

23  for clarifying the complaint ask me.

24

25                          EEOC Appeal Decision

1   Pursuant to MD 110, chapter 7, V. C. – "Section 1614.109(e)
2  provides that the Administrative Judge or the Commission may
3  refer to the disciplinary committee of the appropriate bar
4  association any attorney … or who otherwise engages in improper
5  conduct."  I pleaded with the EEOC to investigate the
6  discrimination during the processing of my administrative
7  complaint (exhibit 18).  I appealed to the Commission (exhibit
8  56) to refer to the appropriate Bar Association the contract
9  Attorney and the Administrative Judge if the Commission finds
10 improper conduct.

11   Pursuant to 29 CFR 1601.35 Petitions – "Any interested
12 person may petition the Commission, in writing, for the issuance,
13 amendment, or repeal of a rule or regulation."  I petition the
14 Commission to issue a rule that no disinterested contract EEO
15 Investigator, FAD Writer, or Attorney (unless the complainant has
16 a Attorney or files civil action), who have no vested interest in
17 fixing the EEO problems, may be used in the EEOC administrative
18 processing of EEO Complaints for the United States Postal
19 Service.

20

21                              Burden

22 Title 5 section 556 Hearings; presiding employees; powers and
   duties; burden of proof; evidence; record as basis of decision.
23 (d) "Except as otherwise provided by statute, the proponent of a
   rule of order has the burden of proof…  The agency may, to the
24 extent consistent with the interests of justice and the policy of
   the underlying statutes administered by the agency, consider a
25

1  violation of section 557(d) of knowingly committed such violation
   or knowingly caused such violation to occur…"

2

3     The Court found in Adickes v. S.H. Kress Co. (45 U.Chi.L.Rev.

4  72, 76-79 (1977), "Yet summary judgment was held improper

5  because, in contrast to the situation at trial, the <u>burden was on</u>

6  the defendant to show the absence of a genuine issue of fact."

7     The "burden" is on the Postal Service to properly inform me

8  of the job opportunities.  <u>PERMANENT POSTING EMPLOYEE BULLETIN</u>

9  <u>BOARDS</u> (exhibit 48) "… by personal commitment assure that equal

10 opportunity is a way of life in the Postal Service.  Equal

11 employment opportunity and affirmative action requirements will

12 be enforced by us and our top management staff."

13    "Based on the entire evidentiary record, the facts show the

14 complainant did not meet his <u>burden</u> to show by a preponderance of

15 the evidence…"   (exhibit 52, pg 9)   The Judge's Decision is

16 required by 29 CFR 1614.109 to be based on the preponderance of

17 the genuine facts not in dispute, not whatever the Judge can get

18 his hands on.   The Judge threw out my evidence and based his

19 decision on the Postal Service's false statements in the one

20 sided EEO investigation and what ever the Attorney gave to him

21 written and oral.

22    MD 110, chapter 9, IV. C. "On appeal, the <u>burden</u> is squarely
   on the party challenging the Administrative judge's decision to
23 demonstrate that the Administrative Judge's factual
   determinations are not supported be substantial evidence.   This
24 burden does not exist in a de novo review."

25

1  I do not have the burden to prove that the genuine facts
2  developed by the contract EEO Investigator and through the
3  discovery process by the contract Attorney were one sided and
4  bias.  But I believe that I have done so to show that the
5  Decision from the Judge is based on false "genuine" facts.  The
6  other party did not even issue the required statement of
7  Undisputed/Genuine Facts when they requested a Decision without a
8  Hearing (twice).  I clearly have shown genuine facts with
9  documents and other objective informational evidence that
10  contradicts the testimony and findings in the contracted EEO
11  Formal investigation.

12

13  ELM 673.1 General EEO and Affirmative Action Goals – "The Postal
   Service seeks to:  a. Ensure fair employment practices at every
14  level of the organization, making equal employment opportunity a
   way of life in the Postal Service.  b. Provide programs and
15  opportunities that assist all employees in gaining the skills and
   experience necessary for advancement consistent with their
16  abilities and personal goals."

17  U.S. Court of Appeals for the Seventh Circuit in Rodney Harrell
   vs. USPS, No. 03-4202, found that; A. Standard of Review – "…
18  Summary judgment is proper if 'the pleadings, depositions,
   answers to interrogatories, and admissions file, together with
19  affidavits, if any, show that there is no genuine issue as to any
   material fact…"

20  U.S. Court of Appeals for the Sixth Circuit - Mary Christine
   Smith, v. USPS, No. 02-6073; found that: "Because the district
21  court erred in granting summary judgment for the United States
   Postal Service on Smith's claims for sex, age and disability
22  discrimination,…"

23

24  The Administrative Judge used the higher level legal Federal

25  Court standard and not the Title 29 section 1614 Administrative

1 standard of review of the "genuine facts not in dispute".

2 Showing how my original pleadings were changed and twisted by EEO

3 contract Investigator and the contract Attorney and that all my

4 admissions were held as "mere speculations" by the Administrative

5 Judge what "conclusions of law" did the Judge use for this non-

6 legal administrative decision?

7 EEO Services Analyst Marissa Haley wrote a response that

8 "local management officials were no longer <u>obligated</u> to post EAS

9 vacancies on the Bulletin boards" (exhibit 20).

10 EEO Policy Statement signed by the Postmaster General states

11 "All executives, managers, and supervisors share in the

12 responsibility…" (exhibit 50)

13

14                                        Pretext

15

16 Merriam-Webster's Collegiate Dictionary, eleventh edition,
Pretext – ": a purpose or motive alleged or an appearance assumed
in order to cloak the real intention of state of affairs."

17

18 EEOC Office of Federal Operations Decision, 10 Nov 08

19 (exhibit 80, pg 2) – "… The Commission finds that the agency has

20 mischaracterized complaint's claim."

21 Administrative Judge Decision, 1 Jul 08 (exhibit 52, pg 9) –

22 "Additionally, the complainant did not show any bias.

23 Accordingly, the agency's reasons were not pretextual." If the

24 agency reasons are false then they are bias and pretext to cover

25 up the unlawful actions. "The complaint must show that his

1  discriminatory reason 'more likely than not' motivated the
2  agency, by showing that the agency's proffered explanation is not
3  worthy of belief." I showed that Maintenance Manager Wayne
4  Witzel affidavit (exhibit 46 #7) that "… vacancy announcement
5  does not say it must be posted on the official bulletin boards"
6  (exhibit 3). "#8 The Review Board for this position consisted of
7  Don Schemacher, … Donna Sifuentes… Ida Hutton…" The 13 Feb 06,
8  Supervisor, Maintenance Operations, EAS-17 Seattle P&DC,
9  Memorandum for: Selecting Official shows Mark Hemphill and
10 Jeffery Carter as Selecting Officials and Wayne Witzel as
11 Reviewing Official (exhibits 73, 75). The dates on the form for
12 selection do not match the dates inputted in the computer
13 database (exhibits 73, 75, 76)). The official notification that
14 Linda Mainor had been selected for the supervisor job is signed
15 by Wayne Witzel as Selecting Official (exhibit 73). EL-312.735
16 "Selecting official is normally the supervisor or manager with
17 the vacancy". Wayne should have been the Selecting Official
18 selecting the employee recommended by the Review Committee. Jeff
19 Carter and Mark Hemphill were not part of the Reviewing
20 Committee. The Selecting Manager has the legal 39 CFR 1001
21 authority and responsibility to follow the Postal Service's
22 promotion policies and regulations. Wayne Witzel's affidavit
23 contains statements that are not true and with violations of
24 Title 18 section 1018 Official certificates or writings, and a
25 possible Title 18 False Statement crime.

1  ELM 672.2 "Executive Order No. 11478 requires federal agencies to
   establish and maintain affirmative programs of equal employment
2  opportunity for all employees and applicants."

3
   29 CFR 1600.101 – "Employees of the Equal Employment Opportunity
4  Commission (EEOC) are subject to the executive branch-wide
   Standards of Ethical conduct at 5 CFR part 2635…"
5
   MD 110 chapter 7, V.A. - "… Administrative Judges may look to
6  rules of ethics,…".

7
   "In support of his burden to show pretext, McDermott
8
   complains only of the agency's (and the EEOC's) treatment of him
9
   during the discovery process, specifically his deposition."  (AJ
10
   Decision, exhibit 52, pg 8)  I complained about everything I
11
   could that was not right.  The complaints of the treatment during
12
   the discovery process (discrimination), specifically my
13
   disposition were contain in my Notice of Intent to Sue and
14
   Allegations of Process Discrimination dated, 8 January 2007, were
15
   not in the ROI, Affidavit A, the Judge referred to on page 2 of
16
   his Decision.  On page 4 the Judge states that "The Seattle Field
17
   Office of the EEOC has no record showing that McDermott filed his
18
   January 2, 2008 Notice of Intent to Sue before June 24, 2008.
19
   McDermott does not certify that the Notice of Intent to Sue was
20
   filed prior to June 24, 2008.  There is not record the McDermott
21
   filed a lawsuit in the U.S. District Court."  (AJ decision,
22
   exhibit 52, pg 4) 1.  The first Notice of Intent to Sue is dated
23
   8 January 2007 (exhibit 15).  2. There is no "rule" that I must
24
   "certify" the Notice sent.  I thought I had the right to file in
25

1  Federal Court within 2 years.  So why is the Administrative Judge
2  looking for evidence outside the (federal courts) administrative
3  process?  The Judge used zero of the disposition to make his
4  decision, so why was it necessary?  I paid/lost $566 for a copy
5  of the 123 page disposition did the Judge receive a free one and
6  not use it?  The "treatment" I have complained about during the
7  processing of my EEO Complaint is the same underlying violations
8  of my Constitutional Right of Due Process.  Denying my
9  representative of choice violated Title 29 section 458.77 Rights
10 of Parties.  The Postal Service in violating the process for
11 promotions (39 CFR 1001) and the EEO Investigator's, FAD
12 Writer's, Administrative Judge's and Postal Attorney's violations
13 of the (Title 29 section 1614) EEOC Hearing's fair and un-bias
14 process.

15      Without a Statement of the Undisputed Facts the
16 Administrative Judge improperly issued a Decision.  The Judge's
17 Acknowledgement and Order (SS exhibit 1-1) says – **"A motion for**
18 **summary judgment must include a statement of the undisputed**
19 **material facts."**  The Attorney did not include that statement of
20 "undisputed material facts" with his Motion for summary Judgment.

21

22                              Due Process

23 BURGER, J., Opinion of the Court, Supreme Court of the United
   States, 397 U.S. 728, Rowan v. United States Post Office
   Department "…  Appellants initiated an action in the United
24 States District Court for the Central District of California upon
   [p731] a complaint and petition for declaratory relief on the
25 ground that 39 U.S.C. § 4009 (1964 ed., Supp. IV) is

1  unconstitutional… The statutory scheme at issue accords to the
   sender an "opportunity to be heard upon such notice and
2  proceedings as are adequate to safeguard the right for which the
   constitutional protection is invoked." Anderson Nat. Bank v.
3  Luckett, 321 U.S. 233, 246 (1944). It thus comports with the Due
   Process Clause of the Fifth Amendment.

4

5  MD 110, Agency dismissal Process, D.  Allegations of
   Dissatisfaction Regarding Processing of Pending Complaints – "If
6  a complainant is dissatisfied with the processing of his/her
   pending complaint, whether or not it alleges prohibited
7  discrimination as a basis for dissatisfaction, s/he should … A
   complainant must raise any dissatisfaction with the processing of
8  his/her complaint before the administrative Judge issues a
   decision on that complaint… may suggest that the complainant
9  submit a letter to the following EEOC office for consideration
   regarding the agency's conduct:".

10    Carey v. Piphus, 435 US 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 –
   "The Court holds that plaintiffs can recover nominal damages of a
11 dollar for the deprivation of procedural due process."

12    I did raise the issues before the Administrative Judge in

13 filing a Motion for Protection.  When I realized that the

14 Attorney and Administrative Judge were conspiring to deny me my

15 rights I sent the Process Discrimination complaint to the EEOC

16 before the Administrative Judge issued his Decision.

17    I file another complaint with allegations (exhibit 4): 1.

18 Karen Black was given preferential treatment for a higher level

19 assignment.  2.  The job vacancy announcement was not posted on

20 the bulletin board.  3.  On short notice I mailed in my

21 application on time (post mark) and it was rejected.  4.  Karen

22 Black was improperly selected for promotion.  5.  Retaliation.

23 The same allegations against Linda Mainor's promotion except that

24 I sent in my application and it was rejected.

25

1   The Notice of Right to File EEO Case No. 1E-981-0044-08
2   (exhibit 54) shows the Investigator noted that the job
3   announcement was not posted and I sent my application in before
4   the posting closed.  "Management related that national vacancy
5   announcements are handled by Shared Services and postings are
6   done on-line through Lite Blue."  1.  The Job vacancy
7   announcement was local, not "national".  2.  On-line posting is
8   required at PostalPEOPLE, not Lite Blue.  EEO Investigator could
9   have easily provided the envelope with the Postmark to show if
10  the application was sent on time or not.  The Investigator should
11  have accepted and investigated my EEO allegations using the same
12  standards as the other allegations that were accepted and
13  investigated.
14     The Agency's position is that the evidence I gave in the
15  Supporting Statement (exhibits 64) only says "may" post on the
16  bulletin board is again twisting the facts.
17     PS Form 1716 - "Post this notice on the bulletin board in
18  your station or unit…"
19     Web site PostalPEOPLE - "Watch your bulletin board for local
20  announcements inviting applicants."
21     Publication 12 - "… posting on official bulletin boards."
22     Handbook EL-312 - "… in the lobbies and on employee bulletin
23  boards…"  Other (exhibits 44) - "… must be posted on all employee
24  bulletin boards…"  Federal Regulations and Postal Service
25  policies state "post" on the Bulletin Board.  The Postal Service

1  has not shown any evidence that the Job Vacancy Announcement may,

2  should, or required to be posted hidden in a book behind the

3  counter in the City Desk office.

4

5                              RETALIATION

6  CONSIDERATION:

7  Federal Employee Antidiscrimination and Retaliation Act of 2002,
   Public Law 107-174, An Act – "To require that Federal agencies be
8  accountable for violations of antidiscrimination and
   whistleblower protection laws…" Note: 5 U.S.C. 2301.  Section
9  102 – "Sense of Congress (2)  the mission of the Federal agency
   and the employment security of employees who are blameless in a
10 whistleblower incident should not be compromised."  Section 103 –
   "United States Postal Service".
11
   Whistleblower Protection Act of 1989 – Wikipedia – "A Federal
12 agency violates the Whistleblower Protection Act if it takes or
   fails to take (or threatens to take or fail to take) a personnel
13 action with respect to any employee or applicant because of any
   disclosure of information by the employee or applicant that he or
14 she reasonably believes evidences a violation of a law, rule or
   regulation; gross mismanagement; gross waste of funds, an abuse
15 of authority; or a substantial and specific danger to the public
   health or safety."
16
   Title 5 section 2635 (11) – "Employees shall disclose waste,
17 fraud, abuse and corruption to appropriate authorities."  Section
   7301 (k)  – "Employees shall disclose waste, fraud, abuse and
18 corruption to appropriate authorities."  Executive Order 12674
   (11) – "Employees shall disclose waste, fraud, abuse and
19 corruption to appropriate authorities."

20 Title 5 section 2302 (8) – "take or fail to take, or threaten to
   take or fail to take, a personnel action with respect to any
21 employee or applicant for employment because of – (A) any
   disclosure of information by an employee or applicant which the
22 employee or applicant reasonably believes evidences – (i) a
   violation of any law, rule, or regulation, or (ii) gross
23 mismanagement, a gross waste for funds, an abuse of authority, or
   a substantial and specific danger to public health or safety."
24
   Notice of final Interview case #1E-981-0037-07 (exhibit 38)- "Be
25 advised that the EEOC has held that in order to establish a case

of harassment that creates a hostile working environment, the harassment which complainant alleges generally, must be ongoing and <u>continuous</u> in order to constitute unlawful discrimination. When assessing whether the alleged harassment effect a term, condition or privilege of the complainant's employment, the conduct must be viewed in the context of the totality of the circumstances… The question as to whether a term, condition, or privilege of employment is affected generally revolves around the complainant's ability to <u>show a direct</u>, personal deprivation at the hands of the employer (e.g. promotion, demotion, discipline, reasonable accommodation, appraisals, awards, training, benefits, etc.)."

Gomez-Perez vs. USPS the U.S. Supreme Court in the Opinion of the Court held that "For these reasons, we hold that section 663a(a) <u>prohibits</u> retaliation against a federal employee who complains of age discrimination…"

US Court of Appeals for the sixth Circuit Jamie L. McFarland v. USPS "in an opinion filed after the district court decided the present case, the Supreme Court recognized that the 'very nature' of a hostile work environment 'involves <u>repeated conduct</u>.' Nat'l R.R.; Passenger Corp v. Morgan, 122 S.Ct.2061, 2073 (2002). The unlawful employment practice in a hostile work environment 'occurs over a series of days or perhaps years and, in direct contrast to (claims based upon) discrete acts, a single act of harassment may not be actionable on its own.' Id. 'Given therefore, that the incidents comprising a hostile work environment are part of one unlawful employment practice, the employer may be <u>liable for all acts</u> that are part of this single claim." ANALYSIS – "We must construe all of the facts at the summary judgment stage of the case in McFarland's favor, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986),…" "she pled from the very beginning that the Postal Service's acts of discrimination had created a hostile work environment. In an opinion filed after the district court decided the present case, the Supreme Court recognized that the "very nature" of a hostile work environment "<u>involves repeated conduct</u>." "But it is the task of the court to apply the law as it is, not just as the parties describe it. The facts as set forth in the complaint and McFarland's affidavit, all of which must be construed in her favor when evaluating the Postal Service's motion for summary judgment,..."

The Court found in NLRB v. USPS No. 07–14951, 2 May 2008, "See Gissel Packing Co., 395 U.S. at 618, 89 S. Ct. at 1942 (an employer's 'threat of retaliation based on misrepresentation and coercion… (is) without the protection of the First Amendment')."

1  My version of relevant Protected Activity and Retaliation events:

2

3  BACKGROUND:

4      I started with the Postal Service as Christmas help in 1996.
5  I had turned in my DD 214 discharge form from the Army when
6  hired.  Because of this Human Resource called me and hired me
7  full time after Christmas.  Because of my maintenance background
8  in the Military I was given a choice of work at the Vehicle
9  Maintenance Facility (VMF) or the Processing and Distribution
10 Center (P&DC).  After seeing the new automated letter Tray
11 Management System (TMS) in the P&DC I choose to work there.  I
12 worked various job in the facility but mostly on the TMS system.
13 The TMS system is 33 train tugs pulling 30 trolleys on 2.5 miles
14 of track that receives sorts and than discharges letter trays in
15 the million square foot building.  I started training under the
16 204B Supervisor program under my supervisor at the time Taylor
17 Welsh.  Around that time a new maintenance employee came to the
18 P&DC Steve Poulin.  He was being trained in different areas of
19 the facility and I asked about him.  I found out that he was a
20 friend of the Maintenance Manager Patty Francisco and was
21 destined to be a supervisor.  When Steve was assigned to my area
22 on the TMS maintenance platform he caused problems that I had to
23 fix.  I told my supervisor Taylor that I did not want to work
24 with or train Steve.  A couple of months later when Steve was
25 made my supervisor I was taken off the 204B Supervisor program.

1  I was in the Army National Guard (retired 2001) and went on a two
2  week annual summer training in 1999.  When I returned the TMS
3  system had destroyed 60 trolleys for a total of 100 out of 990
4  (10%) train trolleys.  My supervisor Steve Poulin asked me, since
5  I was the only employee rebuilding trolleys and if I would
6  rebuild the broken trolleys.  I said that I would if I can be the
7  only one to rebuild them so if there is a problem I could correct
8  it.  With the TMS system breaking an average of 2 trolleys a day
9  it took me a year to get caught up and rebuild the 100 broken
10 trolleys.  I also rebuilt a train tug that had been off the train
11 rail for years and 50% cannibalized.  Placing the train with 30
12 rebuilt trolleys brought the TMS system up to full carrying
13 capacity of 33 trains with (30 each) 990 trolleys for the first
14 time since it was new.  (Note the TMS system cost $25 million and
15 10% is $2.5 million in rebuild work.)  I was the only one to
16 rebuild TMS trolleys and with overtime worked 6 days a week for
17 several years doing so.  I researched and found most of the parts
18 used to rebuild the trolleys because of the poor documentation
19 from the contractor.  The net result of my efforts showed in the
20 reduced fault reports.  And Then:

21

22 My version of relevant events:

23     Protected Activity - On 22 September 2000, I submitted an
24 Idea Proposal for using the network computer to track maintenance
25 calls instead of the paper based log books at each piece of

1  equipment.  Engineer Technician Dave Hoff (dh) worked with me on
2  it (exhibits 89).

3     From 13 November 2000 to 8 December 2001 I wrote several
4  Reports of Hazards or Idea Proposals mostly for the Tray
5  Management System (TMS) (exhibits 107 a-k).  Some like the unsafe
6  front entry and parking lot were denied and than later fixed
7  (exhibits 107 l-n).

8     In October 2001 I wrote a memo for the Plant Manager about
9  the Tray Management System (TMS) problems and recommendations to
10 help (exhibit 90).

11    In November 2001 I was asked to rebuild some used TMS
12 trolleys from JC Penny to see if they would work on our TMS track
13 and write a report on what was needed to make they work (exhibit
14 91).

15    10 January 2002 I wrote a memo on the TMS train rail wear and
16 the use of the wider wheels to reduce wear (exhibit 92).

17    11 January 2002 I wrote an Idea Proposal with drawing for 2
18 steps to get over the TMS train rail on the maintenance platform.
19 4 May 2002 I wrote a Report of Hazard about crossing over the TMS
20 train rail with unsafe pallets being used.  Management rejected
21 the Idea Proposal and built a platform with eleven steps up 8
22 feet and down to get over a 3 foot high rail (exhibits 108).
23 Employees were than force to use the steps to move heavy (110
24 pound drive units) over these steps to the work bench.

25

1    After not receiving any management help to fix the safety
2  problems I wrote OHSA about the safety problems of the TMS system
3  that management was not fixing. This resulted in a $1,300 fine
4  for failure to fix exposed electrical wiring maintenance
5  employees were walking on.

6

7    Retaliation - Shortly after filing the OSHA complaint
8  Maintenance Supervisors Jeff Carter and Dave Hoff were looking at
9  the exposed wiring in the TMS Maintenance area with a copy of my
10  OSHA complaint in hand. Jeff noticed that I was working on a
11  train tug without applying a lockout on the electrical power box.
12  I received a Letter of Warning for failure to work in a safe
13  manner 23 January 2002.  The first discipline I had in 5 years
14  working for the Postal Service.  TMS Tech Note - TN10 MPE route
15  for Daily Tug Maintenance (exhibit 162) does not require that the
16  Tug be electrically locked-out.   I was given another bogus
17  Letter of Warning 2 February 2002 for failure to follow
18  instruction.

19

20    Retaliation - Starting in January 2002 management placed me
21  on a special watch list and traded information on my work
22  activities until August 2003 when I quit being a Union Steward
23  and writing Idea Proposals, Reports of Hazards, etc. (exhibits
24  111).

25

1    Protected Activity - 24 April 2002 I wrote OSHA about unsafe
2  TMS procedures and hazards (exhibit 109).

3    In 24 April 2002 I wrote OSHA about the unsafe Parking lot
4  and front entry issues that were not being addressed by
5  management (exhibit 94).

6    OSHA in 30 August 2002 about a hazard at the front entry
7  (loose floor mats a trip hazard) of the P&DC and OSHA issued of
8  Alleged Safety & Health Hazard (exhibit 97).

9

10   Retaliation - In September 2002 I was told that I could no
11  longer use pneumatic air wrench to rebuild the TMS train
12  trolleys.  My Supervisor also removed my personnel cooling fans
13  from the TMS train trolley rebuild area for "my safety".

14

15   Protected Activity - I filed a Grievance 11 September 2002
16  about management not allowing me to use air tools to rebuild TMS
17  trolleys (exhibit 95).  A maintenance employee hurt his hand
18  using a T-handle hex wrench as required by TMS Tech Notes
19  (exhibit 96b) and management determined it was his fault for not
20  using a ratchet wrench (exhibit 96a).  A Request for Information
21  shows the Policy is the Air tools can be used (exhibits 110).

22   I filed a grievance about management removing personnel
23  cooling fans (mine) from the TMS rebuild area (exhibit 98).

24   24 December 2002 I wrote OSHA about the harassment I was
25  suffering with a supporting letter from the Maintenance Craft

1   Director.  OSHA acknowledged the retaliation complaint 22 January
2   2003 (exhibits 112).

3       26 December 2002 I wrote General Counsel of USPS (exhibit 99)
4   about violation of Federal Regulations.

5

6       Retaliation – For the first time in years I was not assigned
7   TMS Trolley rebuilding and assigned to maintenance routes that I
8   had not done in years or was never trained for.

9

10      Retaliation – 15 January 2003 I received a Seven Day
11  Suspension for "needlessly exposing yourself to danger…" (exhibit
12  100) performing TMS Area Assurance routes that I have not done in
13  years.  (I never severed the discipline).  A look at the
14  instruction for removing small amounts of loose mail (exhibit
15  100d) shows that I was following instruction.

16

17      Protected Activity – 23 January 2003 I filled out an Idea
18  Proposal three-part form 1767 (exhibit 111e) on my manual
19  typewriter to rebuild the TMS trolleys (exhibit 102).

20

21      Retaliation – 24 January 2003 I was told by management that
22  for my own safety I could not use my personnel manual (Underwood)
23  typewriter in the facility and to remove the typewriter from the
24  facility (exhibit 103).  Note – I was a Clerk Typist in the Army
25  for 3 years and never hurt myself using a manual typewriter.

1

2    Protected Activity - I filed a National Labor Relations Board

3    (NLRB) discrimination complaint January 2003 that I was being

4    harassed because of my Union Steward activities and denial of

5    Union Time.  NLRB 29 January 2003 deferred the complaint and

6    required me (under protest) to file a grievance (exhibit 104).

7    11 February 2003 I filed a Grievance about management issuing

8    instruction during the Safety Talk and not in training Management

9    Step 2 Grievance Decision 11 May 2003 settled that Safety Talk

10   were for "safety awareness" and not for "instruction" which is

11   training by definition (exhibits 151).

12   I filed an Occupational Safety and Health Administration

13   (OSHA) discrimination complaint 27 February 2003 (exhibit 105).

14   OSHA required me (under protest) to file a grievance.

15   The APWU filed a grievance February 2003 on my behalf for

16   harassment (exhibit 101).

17   17 March 2003 I received my typed interview statement from

18   OSHA (exhibit 113).

19   29 April 2003 I received the grievance settlement for the

20   cooling fan grievance from the Union (exhibits 114):  Resolved -

21   Case Closed.

22

23   Retaliation - In April 2003 I was talking to Engineering

24   Technician Dave Hoff and asked him when the new parts were coming

25   in for me to upgrade the TMS train trolleys and he said that it

1  was decided to contract out the work.  I put in a Request for

2  Information through my other Supervisor Taylor Welsh about the

3  overhaul of the TMS trolleys and answered "Item does not exist as

4  the trolley's are not being overhauled, but replaced as part of

5  the TMS upgrade." by MMO Jeff Carter, 1 May 2003 (exhibits 115b).

6  Request for the Decision Analysis Report (DAR) were meet with DAR

7  "there is no DAR that I an aware of that recommends the purchase

8  of new TMS trolleys." by MMO Jeff Carter, 8 May 2003 (exhibit

9  115d).  "These documents do not exist since no capital funds were

10  employed." by Facility Engineer Don Hamel, 3 November 2003

11  (exhibit 115p).   "Decision Analysis Reports are not required …"

12  by SMO Henry Eger, 14 July 2004 (exhibit 115h).  Other deceptions

13  by Engineering Tech Dave Hoff's Article 32 Review, 24 February

14  2004, (exhibit 115k) a year after the fact of the DAR (did exist)

15  dated 7 January 2003 (exhibit 116c).  Email to Jeff Carter, 5

16  September 2002 (exhibit 115o) – "Attached is the revised TMS

17  DAR…"   "…Western Area to assist with the development/revision of

18  the DAR… Contracting the TMS upgrade would have no significant

19  impact on bargaining unit work as the work does not fall within

20  the scope of normal daily required tasks" by Dave Hoff, 5

21  September 2002 (exhibit 115o).  Of course the "does not fall …

22  daily task" is a lie because I did on a daily rebuild the TMS

23  trolleys (exhibit 120e).

24      Handbook MS-77 Preventive Maintenance Procedures states "The

25  goal of the Preventive Maintenance Program is to insure that the

1  equipment reaches its life expectancy." The TMS system had a

2  life expectancy of 10 years (exhibit 169) starting in 2000 (build

3  in 1997) and ending in 2011. The January 2003 DAR (exhibit 116f)

4  - "In respect to safety, service, and budget, the situation has

5  become so critical that without immediate resolution to the

6  Novasort deficiencies, abandonment of the Tray Management System

7  in Seattle is likely in the near future." Management failed to

8  establish a MS-77.620 Preventive Maintenance Program (exhibit

9  120g) to ensure that the TMS system reached its life expectancy

10  of 10 years. In only 3 years the $25 million TMS system was

11  "critical".

12      Email from Jeff Carter, 28 November 2003 (exhibit 115n) - "We

13  should have taken over the work on the new Symorex trolleys."

14      Email from Dave Hoff, 23 December 2003 (exhibit 115n) - "We

15  need some hard evidence it we are seeing trouble with these

16  trolleys. Of course if it gets destroyed like we have seen then

17  yes pull it off."

18

19  Handbook MS 63 Maintenance Support 233.1 - "…staffing and
    training requirements, planning, scheduling, and conducting

20  performance evaluations for the following MPE maintenance
    activities:  c. Overhaul.  D. Modification and alteration."  (My

21  work exhibit 120c)

22  MS-63.534.22 Repair and Rebuild of Assemblies (exhibit 120h) - a.
    "If a local office has trained technicians, required replacement

23  parts, tools and test equipment available and the item is judged
    to be technically and economically repairable, repair the item

24  locally and return to stock."

25

1    The Seattle P&DC Standing Work Order register #0077 TMS –
2  "Trolley Repair/Overhaul Only" (exhibit 120e) shows that trolley
3  overhaul work was being done by employees on a daily basis.  The
4  Work Hour Estimate Program for maintenance activities 4.
5  Allowances and Adjustments a. "For mail Processing Equipment,
6  there is an 8% allowance for modifications, and a 6% allowance
7  for alterations or training. … e. Modification hours are
8  allotted 20% to level 7 and 80% to level 9." This shows that
9  management is responsible planning any modification within the
10  normal work schedule.  MS-77 Overhaul, Mechanized Mail Processing
11  Equipment – "This handbook provides a basis for determining the
12  feasibility of overhauling or upgrading existing equipment…" was
13  not followed.

14    Other RFI's in May 2003 requesting the DAR were filled by my
15  Supervisor Taylor Welsh with no problems (exhibit 116).  Mr.
16  Welsh was able to give me a copy of the Decision Analysis Report
17  (DAR) that said – "When originally installed in Seattle, the
18  Siemens TMS was essentially a prototype system." (exhibit 116b).
19  A 4 February 1999 letter from USPS to the APWU Union (exhibit
20  163) shows that the Seattle TMS system (Novasort) was a fully
21  operational system and not a "prototype". - "As the frequency of
22  Novasort failures increase, we are also exposing our maintenance
23  employees to significantly more safety risk." (exhibit 116i)
24  The DAR is signed by Harold J. Matz, Senior Plant Manager who is
25  now the Seattle District Manager.

39 CFR 273.1 – "This part establishes procedures for imposing civil penalties and assessments un the Program Fraud Civil Remedies Act of 1986 (codified at 31 USC 3801-3812) against any person who makes, submits, or presents, or causes to be made, submitted, or  presented, a false fictitious, or fraudulent claim or written statement to the Postal Service."  273.2 (a)  "Claim means any request, demand or submission."  273.3 (i) "is false, fictitious, or fraudulent or (ii) Includes or is supported by any written statement asserting a material fact which is false…" Title 31 section 3802 (a)(1)  "Any person who makes, presents, or submits, or causes to be made, presented, or submitted, a claim that the person knows or has reason to know – (A) is false, fictitious, or fraudulent…"

ASM 327 – "Certain completed forms become official Postal Service records having legal and contractual implications."

Title 18 section 372 Conspiracy to impede or injure officer.  – "If two or more persons in any State, Territory, Possession, of District conspire to prevent, by force, intimidation, or threat, any person from … discharging any duties thereof… or injure him in his person or property on account of his lawful discharge of the duties of his office…"

ELM 661.21 Congressional Code of Ethics for Government Service, Any person in government service should:  9. – "Expose corruption whenever discovered."  665.14  Reporting Violations – "All allegations of violations of Postal Service laws or misconduct by Postal Service employees, including mail theft, must be reported…"  I have suffered from the conspiracy in retaliation for exposing the corruption in the Postal Service.


Protected Activity – 12 May 2003 OSHA postponed its investigation until the grievance was settled.  As I was told by the Investigator OSHA would investigate the harassment complaints if the grievance was settled in my favor or not.

1     Grievance filed 23 May 2003 as required by OSHA for the air

2 tools, cooling fans and TMS contracting (exhibit 166).

3

4     Retaliation - 28 May 2003 I was denied the request to talk to

5 new employees during Orientation for the Union. Maintenance

6 Craft Director Dennis Ingham asked me to talk to new employees

7 because all other Stewards would be attending a Conference in

8 Spokane. I request the Union Time 1 week in advance and it was

9 approved and then denied and day before (exhibit 118).

10

11     Protected Activity - 19 June 2003 I attended an EEO Mediation

12 with a Blind Mail handler employee Tim Tsuhahara to get his $15

13 and 15 minutes of leave time back that was improperly take by

14 management for the Security Badge (exhibit 119).

15     24 June 2003 I filed a Grievance on the Contracting out of

16 the TMS work (exhibit 120).

17     30 June 2003 I filed a Grievance on maintenance routes being

18 given to un-trained employees (exhibit 121).

19     1 July 2003 I received a Charge Form from NLRB for

20 retaliation complaint (exhibit 122).

21

22     Retaliation - 7 August 2003 I received a Notice of Seven Day

23 Suspension - "When asked what you were doing you replied that you

24 were reading the ELM (Employee and Labor Relations Manual)…"

25 (Exhibit 123). (I never served the suspension.)

1

2  Protected Activity - 24 August 2003 I received a letter from

3  NLRB for status of the case and I replied with a statement 27

4  August 2003 (exhibit 153).

5  27 August 2003 Pre-Arbitration Settlement - "Parties agree

6  that management... and will not retaliate against employees for

7  union activities."  (exhibit 124).

8  Grievance filed for the denial of Union Time 5 September 2003

9  (exhibit 125).

10  Grievance filed because non-handicapped accessible

11  administrative (Supervisor) area were built and the P&DC facility

12  was not ABA handicapped accessible 14 November 2003 (exhibit

13  152).

14  22 March 2004 received grievance decision for TMS contacting

15  - "Technical maintenance skills' training is required ..." from the

16  Union and Step 3 decision: -"Close case" 12 April 2004 (exhibits

17  126).

18  April 2004 I notice that the Postal Service was giving money

19  to the American Postal Workers Union (APWU) to run the annual

20  employee picnic in violation of Title 29 section 186,

21  Restrictions on Financial Transactions.  That year the Union

22  decided to spend the money ($10,000) on a boat cruse on the

23  Spirit of Puget Sound for 300 Union employees and not run a

24  picnic for the 12,000 Seattle District employees.  Only Union

25  Officer and their "buddies" went on the cruse.  I call around the

1  Department of Labor and found Chad Markum.  Chad said that his
2  office had authority to investigate violation of Section 186.  I
3  sent him a letter detail the violations (exhibit 127) and went in
4  for a formal interview. Chad said that he would investigate.  I
5  sent him another letter 10 June 2005 and 20 August 2005 after the
6  meeting with Chad and I heard nothing back.

7

8      Retaliation - 14 May 2004 I received a step 2 grievance
9  decision about the subcontracting of the TMS trolleys (exhibit
10 128). - "… Seattle was a prototype site.  … complete overhaul of
11 the trolleys…  upgrade of the TMS system … outside the scope of
12 the local maintenance staffing… local employee do not have
13 knowledge… Further, the union did not offer … with the exception
14 of the upgrade of the trolleys…  It is also noted that the
15 steward was removed from overhaul assignment due to some safety
16 concerns management had and due to some unauthorized changes he
17 made to the TMS system.  Management believes that some of the
18 problems experienced by the TMS system are directly related to
19 these changes the steward implemented… resulting in a delay of
20 that mail…  As discussed above, some of the authorized changes
21 the steward made to the system are believed to have worsened the
22 system performance…  The employee that was removed from the TMS
23 system was removed because of repeated safety infractions … The
24 reassignment was to continue until Management was able to get him
25

1  scheduled for TMS training…" signed by Susan Houser, Labor

2  Relations Specialist for the Seattle District.

3      I wrote a rebuttal in opposition to every position management

4  gave to contract out my work 20 May 2004 (exhibit 155) for the

5  Union, including on page 5, 11c MPE8 that was "removed from

6  overhaul/repair work".  I had only one Letter of Warning for a

7  "safety infraction" before being removed from TMS trolley

8  rebuilding.  The other "safety infractions" were given to me

9  after being removed from the TMS Trolley rebuilding and told not

10  to "touch" the TMS system.

11  Title 5 section 4303 Actions based on unacceptable performance
12  (1) An employee whose reduction in grade or removal is proposed
   under this section is entitled to – (A) 30 days advance written
13  notice of the proposed action which identifies – (i)  specific
   instances of unacceptable performance by the employee… (ii) the
14  critical elements of the employee's position involved in each
   instance of unacceptable performance."

15      No written notice was given to me before being "removed" from

16  working on the TMS equipment.

17  OIG Report DA-MA-99-001, Tray Management System Deliverables –
   "USPS did not receive an acceptable parts provisioning document
18  nor life cycle support plan…  USPS data disclosed that the
   contractor did not meet the re-supply requirements… Over 80
19  percent of the Seattle emergency part orders were delinquent.
   Over 60 percent of these orders were delinquent by more than 4
20  days… USPS management also stated delays in receiving replacement
   parts had disrupted its operations…"
21
22  OIG report DA-AR-00-002 – "The deployment of the TMS equipment
   did not meet the expected return on investment and had a negative
23  return…"
24      OIG Report DA-AR-01-007 – "Tray Management System post

25  acceptance work-hour savings fell short of expected goals…"  Why

I am being blamed for the TMS equipment failure using the parts given to me?

The whole contract was based on Decision Analysis Report's "Seattle is a prototype" (exhibit 116b-j), which was a lie (exhibit 163).  The Decision Analysis Report (DAR) that said – "As the frequency of Novasort failures increase, we are also exposing our maintenance employees to significantly more safety risk." (exhibit 116i)  The 7 January 2003 Decision Analysis Report (exhibit 116c – j) and Statement of Work (exhibit 116m) does not say "employees were using the wrong parts".  Management exposed me to "significantly more safety risk" and then blamed me for it.

Another lie is that "New innovations in the system were being installed which were outside the scope of the local Maintenance staffing…" (exhibit 128 page 2).  Maintenance Questions & Answers 18 May 2004, #41 Answer – "Most of the TMS system uses simple control circuitry that is well within the MM-5's duties." (exhibit 167b).  Letter dated 24 June 1998 from USPS to the APWU Union states the maintenance of the TMS system would be done be maintenance employees given two – three weeks of training (exhibit 129b) If most of the system can be maintained by the lowest level 5 general mechanic than level 7 Mail Processing Equipment (MPE) mechanics (me) and level 9 Electronic Technicians (ET) can do the rest.

1    Step 1 Grievance Summary, 15 June 2004, - "… Mr. McDermott

2  would receive TMS training when it becomes available."   In fact

3  no maintenance employee has received the required 40 hour TMS

4  Entry Level Class develop as part of the installation contract

5  requirements (paid for by contract) (exhibits 129b).   Memorandum

6  of Understanding between USPS and the APWU, Re: Career

7  Development – "The Employer recognizes the desirability of

8  advancing in career development of employees assigned to centers…

9  3. … employees will be given the opportunity to attend training…"

10  (exhibit 83a).   2 May 2003 – "Dear Mr. McDermott, The information

11  given maintenance employees about the upgraded equipment from the

12  TMS contractor, was not training.   You will be given the

13  opportunity to sign up for the next available TMS training."

14  (exhibit 83b).

15    The Letter I sent to the Ethical Conduct Officer (exhibit

16  130b) was answered by "However your letter does not identify any

17  conflict…" (exhibit 130c).   The Letter I sent to the Chief Postal

18  Inspector about me causing the "delay of Mail" went un-answered

19  (exhibit 130a).   However, the Chief Inspector sent a copy of my

20  letter to the OIG.   A OIG investigator came to the P&DC and told

21  my Supervisor Henry Eger that he wanted to talk to me (did not

22  protect me).   I talked to the Inspector at length about the

23  fraudulent contracts, inappropriate sexual behavior and the

24  improper promotions in the facility.   The Investigator said he

25  would investigate.   I never heard back from him.

Protected Activity – NLRB sent me a letter for update of the case 20 April 2004 and I answered with a statement 26 April 2004 (exhibits 154).

A Request for Information 9 September 2004 pursuant to Article 12 for the reason I was not selected for a higher level assignment was meet with RIF " … is not the proper forum…" (exhibit 131).

Again in February 2005 I sent update letter (exhibit 132) to NLRB.

I sent a letter to NLRB asking them to step in because the Union grievances were basically lost (exhibit 156).

NLRB sent a letter dated 21 October 2004 to me requesting update of the case and grievances filed.  I responded (exhibit 132) to keep the case open.

Retaliation – In January 2005 I was scheduled for a Flat Sort Machine FSM 100 maintenance course in Norman, OK. (exhibit 168a), was canceled for me when Taylor Welsh told me there were enough trained employees for the machine.  Fellow junior maintenance employee Thaddeus Pulaski was then sent to the March 2005 FSM 100 course (exhibit 168b).

Protected Activity - In February 2005 I signed a petition sent to Western Area VP of Operations, Sylvester Black (exhibit 133a).

1  It was about why the VP is not addressing any of the problems
2  (exhibit 133b) in the Seattle District that several employees
3  over time have complained about.   In March 2005 VP Black sent
4  Brenda Hill from Western Area Denver's office to look into the
5  problems.   I meet with her and with dozens of other employees.
6  Brenda started the meeting asking if anyone felt that they had
7  been retaliated by the Acting Plant Manager Don Jacobus or the
8  Human Resource Manager Linda Smith who were present.   I said yes
9  first and Brenda had Mr. Jacobus and Mrs. Smith leave the meeting
10 both crying foul.   Brenda then ask each of us why we were at the
11 meeting and I clearly stated that I was there to talk about the
12 inappropriate sexual behavior of management.   Employees talked to
13 Brenda about nepotism of executive officer's family such as the
14 Former Seattle District Manager's sons Brian Zinser and Carlo
15 Salazar promoted to manager positions in violation of the
16 promotion policies and Title 5 section 2302 (7).   Senior Manager
17 Don Jacobus without authority as acting Plant Manager promoted
18 Carlo Salazar to Manager of Distribution (exhibit 133e).   Many
19 more problem promotions were discussed.   It was talked about how
20 the Human Resource Manager Linda Smith had gotten many of her
21 church going friends a job with the Postal Service. (note:  After
22 Linda retire she became a minister in the church, i.e. possible
23 stipend)  After several hours, Brenda said that everything had
24 been covered except the inappropriate sexual behavior and asked
25 me about it directly.   The room erupted as everyone discussing

1 | how Manager of Distribution (MDO) Don Jacobus was found in a
2 | half-dress position with a married supervisor Tiffany Yoon
3 | (exhibit 133d) in his dark (no lights on) office.  When Mr.
4 | Jacobus was new to the Seattle P&DC he would follow good looking
5 | female employees to their home to the consternation of their
6 | husbands.  Later Mr. Jacobus got a married mail clerk in Central
7 | Forwarding that was a 204B (supervisor in training) under his
8 | mentoring - pregnant.  Brenda asked me directly about the
9 | inappropriate sexual behavior I wanted to talk about and I said
10 | "Ray Ubis".  Again, the room erupted in discussion about Ray's
11 | inappropriate sexual behavior that lead to his death at the hands
12 | of the Mail Clerk whom had let him stay rent free at her home,
13 | paid for a Hawaii vacation and bought a new car for him.  When He
14 | told her that he was leaving her for another mail clerk she put a
15 | bullet in him.  She got 17 years and Ray's daughter got Julia's
16 | home and bank account from the civil suit.  Any information given
17 | to Julia's attorney (I gave it to him) about Ray's inappropriate
18 | sexual behavior leading to his death was kept from the Criminal
19 | and Civil Courts.  The lawyer John Henry Brown said he "did not
20 | want to make Ray look bad."  Shortly after Ray's funeral MDO
21 | Jacobus was found half-dressed in his darkened office with
22 | Supervisor Tiffany Yoon.  It was even bought up that Tiffany was
23 | married to another mail clerk and he was so upset that he was
24 | given two weeks of administrative leave ($2,000) and later two
25 | employee bonuses ($2,000).  Brenda said that she would speak to

1   VP Black about all the problems.  VP Black a few weeks later

2   questionably promoted acting Plant Manager Don Jacobus to Plant

3   Manager (exhibit 133f).  The selection letter (exhibit 133f) is

4   not signed by the selecting official (Mr. Black) as required

5   leading to confusion by employees as to who (legal authority) the

6   Installation Head is (exhibit 133g).  Don Jacobus later promoted

7   Tiffany Yoon to Acting Manager of Distribution (MDO).

8

9       Protected activity - Grievance Settlement, 8 April 2005

10  (exhibit 134) - "Mr. McDermott will be allowed to attend on of

11  the TMS Standard Operating Procedures, Safety and Information

12  classes to be scheduled within three months."

13      11 April 2005, and 3 May 2005 I wrote NLRB (exhibits 135).

14

15      Protected Activity - Starting in October 2001 I filed

16  grievances about the security of Postal Employees and Facility.

17  3 October 2001 I filed a grievance to remove the "Safety"

18  instructions issue under a "security" Policy.  A Request for

19  Information (RFI) 23 January 2002 "Question: what is the legal

20  definition of the Badge?  Answer:  I don't know.  I suppose that

21  you can look it up in a dictionary."  14 May 2002 I filed a

22  grievance about Card Access Security system.  27 September 2002

23  RFI - No documentation exists.  4 October 2002 RFI - "No

24  Documentation Exists."  5 December 2002 I filed a grievance about

25  the Security Access Card $15 replacement fee being charged

1   employees.   16 January 2003 I filed a grievance about Inspection

2   Service not issuing the Security Card Policy and Security Card as

3   required by policy.   Administrative Support Manual (ASM) 271.1 —

4   "The chief postal inspector is designated as the security officer

5   for the Postal Service.   This official issues instructions and

6   regulations on security requirements."   (39 CFR 233)   30 June

7   2003 I filed a grievance that the employee parking lot and

8   facility front entry did not meet the Security requirements

9   contained in Handbook RE-5 Security Requirements (no swing arm

10  gate for the employee parking lot and no security entry/lobby).

11  31 August 2003 I filed a grievance on the "security upgrade"

12  contract for the facility front entry (exhibits 164).

13          12 June 2003 official notification (exhibit 165a) — "… the

14  Postal Service intends to close the following security force

15  facilities, and all security force assignments in these

16  facilities will be abolished…" signed Doug A. Tulino, Manager

17  Labor Relations.   Undated letter (exhibit 165b) — "The Seattle

18  Division Security Force is closing and employees are being

19  reassigned to other critical locations." signed W.G. Morris,

20  Inspector In Charge.   ASM 273.14 — "The Postal Inspection Service

21  may authorize a security force to provide security at selected

22  postal installations."   The Chief Inspector says "reassigned"

23  and Labor Relations says "abolished".   The Postal Police were

24  fired!   Now when employee cars a broken into in the "secure"

25  employee parking lot they are told "go tell it to the local

1    police".   9 September 2000 RE:   Security Task Force - "It is the
2    intention of the Chief Inspector to maintain a Security Task
3    force for the purpose of continuing with the ongoing review of
4    the security requirements for the Postal Service."   (exhibit
5    165f)

6        Transformation Plan April 2002 Security Strategy 3: - "The
7    Inspection Service must enhance its service, both in number and
8    rigor, in order to protect postal employees and customers."   OIG
9    report SA-AR-04-001, 21 April 2004, "… the Security Force
10   Assessment Survey is over 18 years old and no documentation was
11   available to assess the validity of its methodology."   RFI 3
12   February 2005 (165c) shows no security assessment, no supporting
13   documentation, no risk profile, no inspection Service
14   determination, no Facility Planning Concept, and no Decision
15   Analysis Report for a facility security project.

16       Federal Court Civil Complaint- Having exhausted the
17   administrative process and the worsening security conditions
18   placing employees at risk 15 August 2005 I filed a Civil
19   Complaint with the Western District Court, No.   C05-860-RSL,
20   pursuant to 39 CFR 233, (p)(1) - "Alleged violations of these
21   rules and regulations are heard and penalties prescribed herein
22   are imposed, either in Federal district court…"   The complaint
23   alleged that Postal Service officials violated the Security Rules
24   and Regulations of the Postal service.

25

1   I gave deposition 30 May 2006 on this case with the Assistant

2   District Attorney Kristin B. Johnson, Postal Service Attorney

3   Richard C. Mosher (EEO Deposition 4 December 2007), and my wife

4   Darlene as my representative.

5

6   20 August 2005 I wrote NLRB and OSHA to keep my case alive

7   and sent them both a 9 page Statement with 35 exhibits (exhibits

8   136).

9

10   Retaliation - 27 August 2005 Maintenance Craft Director

11   Dennis W. Ingham assigned me as Steward to investigate the

12   temporary higher level staffing assignments for the TMS system.

13   28 August 2005 I gave a RFI to my Supervisor Henry Eger.  1

14   September 2005 I received a response from Henry Eger - "I have

15   consulted with the Craft Director and confirmed that you are not

16   a Union Officer…"  (exhibits 157).

17

18   Protected Activity - June, August and September 2005 I wrote

19   to the Regional Counsel, Executive Assistant to the Postmaster,

20   Inspector General, Senior VP Government Relations, Ethical

21   Conduct Officer, Chief Postal Inspector, and the Postal Rate

22   Commission (exhibits 137).  Only the Postal Rate Commission wrote

23   me back 15 November 2005 (exhibit 139) - "Accordingly, the

24   Commission will forward your letter to the OIG for its review."

25   I did not hear anything from the OIG.

I received a letter from OSHA 30 August 2005 (exhibit 138a) "Please be advised that this complaint was closed in May 2003…" When I pointed out (exhibit 138b) that the retaliation case was "postponed" (exhibit 117).  After a letter from my Attorney at the time (exhibit 138e) the case was re-opened and than closed. This was followed by NLRB "deferred" complaint (exhibit 104) dismissal of my other complaint retaliation (exhibit 138d).

I wrote my Congressman Jim McDermott about some of the problems in the Postal Service and received an appreciation letter back 20 September 2005(exhibit 158).

9 December 2005 I received a letter from NLRB that my case was stilled deferred and they needed an update.  I wrote they back that the grievances still have not been resolved (exhibits 140).

17 February 2006 received a letter from Human Resources that the Notice of Suspension was removed from my Official Personnel File (exhibit 141).  (It should have never been there because I did not serve the suspension).

27 February 2006 I received a letter from OSHA dismissing my retaliation complaint (exhibit 142).

13 March 2006 I sent an Appeal of the OSHA dismissal to the Directorate of Enforcement Programs (exhibit 143).

30 May 2006 I gave a deposition with the Assistant District Attorney Kristin B. Johnson, Postal Service Attorney Richard C.

1  Mosher (EEO Deposition 4 December 2006, exhibit 12), and my wife

2  Darlene as my representative for the Civil complaint CV-860-RSL.

3      3 April 2006 OSHA responded to my Appeal and 24 May 2005

4  denied my Appeal (exhibits 144).

5      24 June 2006 I sent a letter detailing the Nepotism and

6  inappropriate Behavior to the VP of Labor Relations (exhibit

7  145).

8      14 July 2006 I received a Withdraw of my charges from NLRB

9  (exhibit 146).

10      13 August 2006 I sent a letter to Senator Patty Murray about

11  the Nepotism, Cronyism, and Misconduct of Postal Service

12  Officials.  15 August 2006 I received a response from the

13  Senator's Office.  18 August 2006, I received a response from

14  Contract Manager, John W. Dockins, disagreeing with my letter.

15  Also received a response from manager Government Relations, Mary

16  Ann Simpson, 5 September 2006, (exhibits 147).

17      24 August 2006 I sent a letter to the Office of Government

18  Ethics requesting an Opinion (exhibit 148).

19      28 August 2006 I received a letter that the Office of

20  Inspector General (OIG) was going to be responsible for

21  investigating "all employee misconduct issues…"  (exhibit 149).

22      15 September 2006 I filed an Appeal in Western District Court

23  for the Review of the Nepotism and Inappropriate Sexual Behavior

24  (exhibit 150).  I thought that I had met all of the

25  administrative burdens required by the Administrative Procedures

1  Act before going to the Federal Court for help.  Understanding

2  the Federal Courts 2003, The Appeals Process – "Similarly, a

3  litigant who is not satisfied with a decision made by a federal

4  administrative agency usually may file a petition for review of

5  the agency decision by a court of appeals."  I was wrong and the

6  appeal was quickly quashed by the Postal Service.

7

8      Retaliation – 4 December 2006 I was forced to give a

9  deposition for my first EEO Complaint taken by contract Attorney

10 Richard C. Mosher (also attended Civil complaint deposition 30

11 May 2006):

12

13 Deposition 4 December 2006 (exhibit 12) Page 114, Richard C.

14 Mosher "Q.  I'm asking you what difficulties you had because I'll

15 explain why I'm asking the question.  I understood you had some

16 technical, mechanical, work-related problems – not management

17 problems – working with the trollies and that you were taken off

18 that work and you asked to be retrained and you were retrained

19 and you went back and you still have problems?  A.  No, I was

20 taken off working on the TMS system, told I was unsafe to work on

21 it and cannot work on it until I received training.  I've never

22 gone and I asked for the training several times.  I have not

23 received the training and I've never worked on the TMS system

24 since then."  Page 116 "A.  What are you saying?  You're saying

25 because I messed up the equipment, I wasn't going to get

1  promoted?  Q.  I'm saying wouldn't that have been a factor, not

2  that you weren't going to get promoted?  A.  It's not a factor

3  when it's not proven.  Q.  Wasn't there, in fact, mail flying all

4  over the place as a result of the work you did on the TMS system?

5  A. That's not true."  Note:  The 2.5 miles of TMS train track is

6  lined on both sides with nets to cache most of the mail that

7  constantly falls from the trains.

8

9      Retaliation – 2 April 2007 I was signed up for (senior bid) a

10  Inferred Thermography maintenance course being taught at Norman,

11  OK., that was canceled and my new supervisor Tom French who had

12  no repair maintenance experience or training was sent in my

13  place.

14

15      Protected Activity - 10 April 2007 at an American Postal

16  Workers Union (APWU) Collective Bargaining Agreement (CBA)

17  meeting at the Red Lion by the SeaTac airport I asked the Union

18  President William Burris on the speaker phone – "what is the

19  union was doing about the inappropriate sexual behavior of

20  Management?"  The President said that he was aware of the

21  problems and gave some examples of "sexual" problems the Union

22  was aware of.  Like the Manager who put a dog caller on an

23  employee and made them crawl round and bark.  When I ask – "What

24  is the Union doing about the Manager who was caught in his office

25  with another supervisor at the P&DC".  Regional Coordinator Omar

1   M. Gonzalez, who was there, stood up and said that "I am aware of
2   the problem". The Monday after the weekend meeting Mr. Gonzalez
3   contacted me and asked for a copy of the letter being circulated
4   about the sex and nepotism going on in the Seattle District. I
5   faxed a copy of the letter to him in Washington DC and received
6   back the response "… It appears the matter is beyond the scope of
7   a labor-management forum at this time. I therefore request your
8   review and recommendation on how the National should if necessary
9   proceed." (exhibit 159).

10  In March 2008 I wrote Senator Patty Murray about the
11  destruction of the Stamp Vending machines and the loss of the
12  $109 million in Capital Equipment and $468 million a year in
13  revenue for the Postal Service. I received a letter back from her
14  office 29 March 2008 and a response from the Postal Service 11
15  April 2008. The response from the Postal Service containing
16  down-right-lies about the Stamp Vending machines and I wrote a
17  rebuttal to them 4 May 2008 (exhibits 160).

18  24 June 2008 I Petitioned for Remedy EEO Commission to stop
19  the unlawful discrimination by Administrative Judges and Postal
20  Service Attorneys during the processing of U.S. Postal Service
21  EEO discrimination complaints in accordance with 29 CFR section
22  1614.501 (exhibit 18)

23  In October 2008 there was a part broken on the Small Parcel
24  and Bundle Sorter (SPBS) machine that required ordering a large
25  expensive $652, 3 Phase 100 amp electrical switch (NSN 5925-01-

1   000-8524), for the small metal connector part that broke

2   (cracked).  The part goes in between the switch and the outside

3   of the control box handle.  I was able to make a part out of mild

4   steel (old was pot metal) to replace it.  Our Parts Clerk Dan

5   Donnell said that it was a National problem for the SPBS and Flat

6   Sorters (same power cabinets).  I said that if the National

7   Purchasing and Supply was interested in it and I would make a

8   drawing.  I made a drawing and Dan emailed the drawing 15 October

9   2008 (I do not have an USPS email account) to Bart McIntosh at

10  Maintenance Support Center (MSC) (exhibit 161a).  Bart email back

11  - "since he did this on his own, what do you think about sending

12  the drawing and a circuit breaker to someone like Micro Metals,

13  have them make one and test it?"  (exhibit 161b) I wanted to make

14  the part and save the Postal Service a lot of money.  I had Dan

15  email back that I am the one to fabricate the part.  29-31

16  October 2008 emails were traded about how to make the part.

17  (exhibit 161c, d)  I became worried about being left out and had

18  my Supervisor Bob Hoffman 19 November 2008 (exhibit 161f) email

19  John Merrifield (I didn't know he was the contractor) that the

20  part would save a lot of money for the Postal Service if I made

21  it.  (What is a contractor doing in the Postal Service email

22  system?  I am a Federal Employee and do not have email access!)

23  John email back that he - "got as far as drawing up" the part and

24  ordering the broach set to make the square hole when he decided

25  to make it out of plastic (exhibits 161).  Basically he had done

1   some of what I have already done with the drawing but not

2   ordering the broach set.  A plastic part will not work when metal

3   (pot) has failed.  The part goes around a 1/4inch hard metal

4   shaft and is connected to a 6 inch plastic handle.  It does not

5   take a mechanical engineer or a physics force diagram (I had

6   college courses in both) to figure out the torque a 6 inch handle

7   puts on a 1/4inch shaft.

8       I showed Bart McIntosh how to save $600 per machine.  The

9   Postal Service has 2,000 SPBS machines and 4,000 FSM-1000

10  machines that will break the plastic part at some point in their

11  life time (PMA SPBS are ten years old).  6,000 total machines

12  times $600 for a Economic Value Added Savings of $3,600,000 over

13  the years that the part would have to be replaced.

14

15  ELM 691 Policy – "It is a policy of the Postal Service to
    encourage and stimulate the inventive talents of employees and to
16  determine equitably the respective rights of the inventor and the
    Postal Service."   693 b.   Invention – "any art, machine,
17  manufacture, design, or composition of matter, or any new and
    useful improvement of these, that is or may be patentable under
18  the patent laws of the United States."  H. Information –
    "knowledge used in making an invention that is available only by
19  reason of the inventor's official duties…"

20  Setting the Record Straight 2002 – "… The funds in the Economic
    Value Added (EVA) reserve account were earned by eligible
21  employees.  It would be a breach of trust to not give them what
    they've earned.  Honoring commitments to our employees is called
22  integrity."  (exhibit 171)

23      That "commitment" (money) only applies to Management who

24  steal the ideas from employees to save money for the Postal

25  Service and justify their bonuses.  Several Supervisors and

1  Engineers received bonuses based on the TMS contract false

2  "savings".   The contractor John Merrifield received money for my

3  idea and Bart McIntosh will receive his pay-for-performance bonus

4  for taking my idea.

5  York, Bauman & Rrandleman Remedies 4th Ed. ACB B. Invasion of
   Privacy – "The general rule of law appears to be well
6  established, and is stated in 51 L.R.A. 360 (1901):   'There is a
   dual right of property in all letters:  A qualified one in the
7  writer to publish when and as he chooses, or withhold from
   publication altogether and to prevent publication without his
8  consent; and the recipient's right of physical possession, use,
   and enjoyment and transfer, without power to publish except by
9  consent of the author or self vindication or justification.   All
   the cases are in accord on these propositions."   210 Mass. 599,
10 97 N.E. 109(1912).

11

12     Bart McIntosh did not have the right to send my idea and

13 drawing to a contractor.

14

15     Retaliation – Contracting out my ideas and work without

16 giving me any credit for the money saved.

17

18     Protected Activity – I sent a Disagreement and Notice of

19 Intent to Sue to the EEOC and contract EEO Investigation Office

20 22 November 2008 (exhibit 87).

21     I received a letter from EEO Investigative Office 1 December

22 2008 (exhibit 170) – "Your statement and this response will be

23 made part of the record and included in the investigative

24 files(s)."

25

1   I received a letter from the EEO Investigative Office 5

2   December 2008 (exhibit 172) - "The investigator will contract you

3   regarding the investigation of the referenced complaint."

4   I received a letter at home from the EEO Investigative Office

5   9 December 2008 (exhibit 173) - "The enclosed affidavit questions

6   must be answered so that I may continue with your EEO

7   investigation."   13 questions that I already gave in affidavit

8   May 2006, with 22 questions (exhibit 5).   Questions I answered in

9   a forced Deposition 4 December 2006 (exhibit 12).   This time

10   around the contract EEO Investigator included PS Form 2569-C EEO

11   Investigative Affidavit for Compensatory Damages (I was slammed

12   for not qualifying for compensatory damages by the Administrative

13   Judge and contract Attorney).   Note:   The contract EEO

14   Investigation Office and the Law Department send their

15   correspondence to me via Priority Mail to my home address.   1.

16   This boosted the cost of processing thousands of EEO complaints

17   and the Priority Mail volume numbers.   2.   This benefits the

18   Postal Service by a.   Inflating the costs of EEO processing the

19   Postal Service complains about to Congress and b.   Inflates

20   Priority Mail revenue also reported to Congress.   3. Its

21   intimidation to send it to my home when I'm suppose to complete

22   all investigation questions on-the-clock during normal working

23   hours (Pub 133), i.e. it should be sent to my work address

24   instead.

25   USPS Publication 133 What You Need to Know About EEO, Official

Time – "… may expect a reasonable amount of official time to present the complaint and to respond to agency's requests for information, if they are in duty status.  The term duty status refers to an employee's <u>normal hours of work</u>."

Title 29 section 1614.702 Definitions – © "The term investigation refers to the step of the federal sector EEO process described in 29 CFR 1614.108…  it commences when the complaint is filed and ceases when the complainant is given notice under section 1614.108(f) of the right to request a hearing…"

Title 29 section 1601.28(3) "Issuance of a notice of right to sue shall terminate further proceeding of any charge…"

Notice of Intent to Sue, 8 January 2007 (exhibit 15), EEOC Decision, Right to File Civil Action, 2 October 2008 (exhibit 19), EEOC Decision, Right to File Civil Action, 10 November 2008 (exhibit 80) and Notice of Intent to Sue, 22 November 2008 (exhibit 87).

Retaliation – The administrative processing of my EEO Complaint has not stopped after receiving a Notice of Right to Sue and sending (certifying) Notice of Intent to Sue.

York, Bauman & Rrandleman Remedies 4th Ed. ACB, Measure of Damages A.  Elements Generally – "… The plaintiffs in these cases suffered none of the tangible indicia of harm for which a dollar value may easily be assigned…  The Restatement (second) of Torts, section 652H, summarizes the rule in privacy cases:  One who has established a cause of actions for unreasonable invasion of his privacy is entitled to recover damages for: … © special damage of which the invasion is a legal cause."  (Birnbaum v. United States, 436 F.Supp. 967)

STANDARD OF REVIEW – De Nova

The US Court of Appeals for the Ninth Circuit in Flamingo Industries v. USPS No. 01-15963 in The Procurement Manual Claim the court stated "In 1996, Congress amended 28 USC section 1491, part of the codification of the Tucker Act, by enacting the

Administrative Dispute Resolution Act of 1996 (ADRA), Pub. L.
104-320, 110 Stat. 3870 (1996)." Footnote 5 – "… 28 USC section
1491(b)(4) imports Administrative Procedures Act (APA) standards
of review… 28 USC 1491(b)(4) incorporates by reference the APA
review standards into cases…"

Title 5 section 2638 Executive Agency Ethics Program
Responsibilities, 2638.503 Agency Investigations; (2) - "Where
there is reason to believe that an employee has given
preferential treatment or failed to act impartially…"

Title 5 section 557 (d)(1)(A)(12) – "… violated shall be
determined from the perspective of a reasonable person with
knowledge of the relevant facts."

Title 5 section 504 Congressional Findings: Section 202 of title
II of Public Law 96-481 provided that: – "(a) The Congress finds
that certain individuals, partnerships, corporations, and labor
and other organizations may be deterred from seeking review of,
or defending against, unreasonable governmental action because of
the expense involved in securing the vindication of their rights
in civil actions and in administrative proceedings."

MD 110, chapter 9 VI Standard of Review on Appeal – "Generally,
standards of review delineate the nature of the inquiry on appeal
be establishing the extent to which the reviewing body will
substitute its own judgment for that of the prior decision maker…
The decision on an appeal from an agency's dismissal or final
action shall be based on a de novo review, except that the review
of the factual findings in a decision by an Administrative Judge
issued pursuant to section 1614.109(1) shall be based on
substantial evidence standard of review."

29 CFR 1614.501 (3)"An unconditional offer to each identified
victim of discrimination of placement in the position the person
would have occupied but for the discrimination suffered by that
person…" (4) "Payment to each identified victim of
discrimination on make whole basis for any loss of earnings…"
(5) "Commitment that the agency shall cease from engaging in the
specific unlawful employment practice found in the case."

EEOC Notice number 915.002 "Thus, every charge filed with the
EEOC carries two potential claims for relief: the charging
party's claim for individual relief, and the EEOC's claim 'to
vindicate the public interest in preventing employment
discrimination."

Richard Jackson vs. USPS, EEOC No. 01923399, 12 Nov 92, in the
Analysis and Findings "It is the cardinal principle of statutory
interpretation the courts are required to give effect to every
clause and word of a statute if possible... permit a complaining
party under Title VII or the Rehabilitation Act to obtain
compensatory damages in either an action or proceeding..."
Implementation of the Commission's Decision 3 - "Congress
extended Title VII's protection to federal employees in 1972.

MD 110, Chapter 9, VI. Standard of Review on Appeal shows

that the Commission employs a *de novo* standard in reviewing

appeals. Pursuant to B. Review of Decisions Issued by

Administrative Judges, 4.b. - "An Administrative Judge's decision

to issue a decision without a hearing pursuant to section

1614.109(g) will be reviewed *de novo.*" Merriam-Webster's

Collegiate Dictionary defines *de novo* as "over again".

I believe that a *de novo* review of my EEO Age/Sex and

retaliation Complaints will show that these unlawful actions have

accrued. The reasons that the Postal Service gave for their

discriminatory and retaliatory actions are false. My Complaint

that the Grinch Award was given to me in a management meeting and

management said that they were not involved. I was cussed at by

a fellow employee in a management meeting who was sent the next

week to training that I was denied. I was scheduled for training

twice down at the National Training Center in Oklahoma, a year in

advance, that was canceled on short notice and without Management

showing how the national training "requirements" changed.

Management did not post for the 15 days on the Official Bulletin

Board (twice) marked "Job Opportunities" or the PostalPEOPLE

website (once) the Maintenance Supervisor Job Vacancy

1  Announcement in the Seattle P&DC as required by Postal Service

2  Policy.  The Affidavit from Maintenance Manager Wayne Witzel in

3  the investigation file stated that it was posted on the Seattle

4  District website and in a book behind the counter in the City

5  Desk office.  Wayne stated that all employees were informed in

6  meetings when I was informed the day before the Job Vacancy

7  Announcement closed.

8

9  CONSIDERATION:

10  United States Constitution Amendment XIV Section 1. - "All
    persons born or naturalized in the United States, and subject to
11  the jurisdiction thereof, are citizens of the United States and
    of the state wherein they reside. No state shall make or enforce
12  any law which shall abridge the privileges or immunities of
    citizens of the United States; nor shall any state deprive any
13  person of life, liberty, or property, without due process of law;
    nor deny to any person within its jurisdiction the equal
14  protection of the laws."

15  Title 42 section 2000(e) "Nothing contained in this Act shall
    relieve any government agency or official of its or his primary
16  responsibility to assure nondiscrimination in employment as
    required by the Constitution and statutes or of its or his
17  responsibilities under Federal Order 11478 relating to equal
    employment opportunity in the Federal Government."
18

19  Title 39 section 1001 – (b) "… Such appointments and promotions
    shall be in accordance with the procedures established by the
20  Postal Service.  The Postal Service shall establish procedures,
    in accordance with this title, to assure its officers and
21  employees meaningful opportunities for promotion and career
    development and to assure its officers and employees full
22  protection of their employment rights…"

23  Title 39 section 409 – (a)(B)"shall not be immune under any other
    doctrine of sovereign immunity from suit in Federal court by any
24  person for any violation of any of those provisions of law by an
    officer of employee of the Postal Service

25

Title 29 section 401 Congressional declaration of findings, purposes and policy – "… (b) protection of rights of employees and the public; "The Congress further finds, from recent investigations in the labor and management fields, that there have been a number of instances of breach of trust, corruption, disregard of the rights of individual employees, and other failures of observe high standards of responsibility and ethical conduct which require further and supplementary legislation that will afford necessary protection of the rights and interests of employees and the public…"

Title 5 section 702 – "A person suffering wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

The Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002 5 U.S.C. 2301 – "An Act – To require that Federal agencies be accountable for violations of antidiscrimination and whistleblower protection laws; … Section 101 … that point to chronic problems of discrimination and retaliation against Federal employees… Section 205 Consistent with Federal law, nothing in this title shall prevent any Federal employee … from exercising any right otherwise available under the laws of the United States."

Civil Procedures, A Modern Approach,  2nd Addition, Chapter I Choosing a System of Procedure, - "Nevertheless, there is reason to believe that litigants tend to judge the justness of dispute proceedings without reference to the outcome is they deem the process itself to have been fair (65 Va.L.Rev. 1401, 14112-1414, 1979).  Thus, procedure services to validate the integrity of the legal system as a whole by providing a remedial process that replaces much more destructive motivations like self-help and personal retribution…  The function of a trial judge is to serve litigants by determining their disputes and the issues implicated therein in accordance with applicable rules and law.  Established procedures lie at the heart of due process and as important to the attainment of ultimate justice as the factual merits of a case.  A judge may not initiate or inspire litigation and, by the same token, he may not expand a case before him be adding new issues which come to mind during the trial, without giving the parties affected a full and fair opportunity to meet those issues."

York, Bauman & Rrandleman Remedies 4th Ed. ACB, Chapter 13 Remedies for Mistakes – Mistake (unilateral):  - "Basic fact +

1 Relative hardship or unjust enrichment of defendant approaching
the unconscionable".

2 MD 110, IV Agency Dismissal Process, 4. - "Abuse of Process
section 1614.107(a)(9) (a)  Abuse of process is defined as a
3 clear pattern of misuse of the process for ends other than that
which it was designed to accomplish… The Commission has a strong
4 policy in favor of preserving a complainant's EEO rights whenever
possible.   The occasions in which application of the standards
5 were appropriate must be rare."

6 The Court found in Flamingo Industries v. USPS, D.C. No. CV-00-
02484-MMC, page 12504 B (6) "Having determined that Congress has
7 waived the Postal Service's immunity, we turn to the second
inquiry, 'whether the source of substantive law upon which the
8 claimant relies provides an avenue for relief'.  Meyer, 510 U.S.
at 484."  Page 12506 (7) "The Postal Service's sue-and-be-sued
9 waiver of immunity has created a presumption that the cloak of
sovereignty has been withdrawn and the Postal Service should be
10 treated as a private corporation.  See Franchise Tax Board, 467
U.S. at 520."  Page 12508 (8)  "We hold that the Postal Service
11 can be sued under federal antitrust laws because Congress has
striped the Postal Service of its sovereign status by launching
12 it into the commercial world as a sue-and-be-sued entity akin to
a private corporation… 'conduct-based' immunity can apply…
13 Accordingly, our holding that the Postal Service does not enjoy
status-based immunity …"
14

15 EEOC Decision (exhibit 80) 10 November 2008 states; "The
Commission's federal sector case precedent has long defined an
16 "aggrieved employee" as one who suffers a present harm of loss
with respect to a term, condition, or privilege of employment for
17 which there is a remedy.  Diaz v. Department of the Air Force,
EEOC Request No. 05931049 (April 21, 1994)."
18

19 DISCUSSION:

20     The Office of Personnel Management (OPM) Suitability

21 Guidelines for Public Trust Positions defines Public Trust

22 Positions (PTP) as High (Investigative, Law enforcement) and

23 Moderate (positions that demand public confidence or trust).  Low

24 (limited) is not a PTP.  Both of these Public Trust Positions

25 require Fiduciary Responsibilities that the Public requires "high

1  standards of integrity and trust to promote the interest of the

2  public".  OPM established a suitability program in the Federal

3  competitive service to reduce the potential for abuse of the

4  public trust, to ensure government-wide uniformity and fairness

5  for applicants, appointees, and employees, and to determine

6  suitability for employment.  (5 CFR 731.106, 5 USC 1104, 3301).

7

8  Federal Sentencing Guidelines, chapter 3 section 3B1.3 Abuse of
   Position of Trust - "If the defendant abused a position of public
9  or private trust, or used a special skill, in a manner that
   significantly facilitated the commission or concealment of the
   offense, increase by 2 levels... For this adjustment to apply, the
10 position of public or private trust must have contributed in some
   significant way to facilitating the commission or concealment of
11 the offense (e.g. by making the detection of the offense or the
   defendant's responsibility for the offense more difficult)."

12

13     I believe that in the commission of the unlawful

14 Discrimination and Retaliation against me Postal Service

15 Management, contract EEO Investigator, contract Attorney and the

16 contract EEO Administrative Judge did significantly concealed the

17 offenses and shifted the responsibility for the offenses away

18 from the individuals who committed the unlawful acts on to me.

19

20                              DAMAGES

21 CONSIDERATION:

22 Title 28 section 1361 - "The district courts shall have original
   jurisdiction of any action in nature of mandamus to compel an
23 officer or employee of the United States or any agency thereof to
   perform a duty owed to the plaintiff."

24

25 United States Court of Appeals Tenth Circuit, 20 August 2004, No.
   02-5196, "... Any employer who violates [the FMLA] shall be liable

to any eligible employee affected— "(A) for <u>damages</u> equal to--
(i) the amount of--(I) any wages, salary, employment benefits, or
other compensation denied or lost to such employee by reason of
the violation; or(II) in a case in which wages, salary,
employment benefits, or other compensation have not been denied
or lost to the employee, any actual monetary losses sustained by
the employee as a direct result of the violation … except that if
an employer who has violated section 2615 of this title …(B) for
such equitable relief as may be appropriate, including
employment, reinstatement, and promotion.   29 U.S.C. . 2617
(1999).   …  Thus, as relevant here, Appellee "shall be liable" to
Appellant for wages "denied or lost," plus interest, "and an
additional amount as liquidated damages equal to the sum of [the
lost or denied wages and interest]."   … But the non-discretionary
calculation of damages under the FMLA should not be considered a
"windfall," but rather a congressional judgment, enforced by the
courts, designed to compensate employees for the obscure damages
that occur when one wrongfully looses wages, even if only
temporarily."

Federal Equal Opportunity Reporter, Richard Jackson v. USPS, EEOC
no. 01923399, 12 November 1992 -  XII - 186, 933062, 24 December
1992 (exhibit 79) "When a federal agency or the EEOC finds that a
federal employee has been discriminated against, the agency must
provide full relief.   See 29 CFR 1614.501(a); 29 CFR part 1613,
Appx A.   Under the CFR, this would include a payment of
<u>compensatory damages</u> to an identified victim of discrimination on
a make-whole basis for any losses suffered as a result of the
discrimination…. It is a cardinal principle of statutory
interpretation that courts are required to give effect to every
clause and word of a statute, if possible.  See US v. Menasche,
348 US 528 (1955) R.E. Dietz Corp v. US, 939 F.2d 1, 5 (2d Cir.
1991)."

EEO MD-110 chapter 7, 11. – "Before holding a hearing, the
Administrative Judge may require the complainant, after receipt
of an agency motion or otherwise, to declare whether or not s/he
is seeking compensatory damages as relief for the discrimination
or retaliation alleged in the complaint, and to proffer or
produce evidence demonstrating entitlement to compensatory
damages… 12.   The Commission has held that evidence from a
health care professional is not a mandatory prerequisite to
establishing entitlement to compensatory damages.  Sinnott V.
Department of Defense, EEOC Appeal No. 01952872 (1996); Lawrence
V. USPS, EEOC Appeal No. 01952288 (1996); Carpenter v. Department
of Agriculture, EEOC Appeal No. 1945652 (1995). 4) whether the
complainant has sufficiently asserted a connection between the
asserted harm and the alleged discrimination sufficient to

1  establish a causal relationship between the harm and the alleged
   discrimination.:"

2  MD 110, chapter 5 3.  Failure to State a Claim - 1614.107(a)(1) -
3  "In determining whether a complaint states a claim, the proper
   inquiry is whether the conduct, if true, would constitute an
   unlawful employment practice under the EEO statutes… the tier of
4  fact must consider all of the alleged harassing incidents and
   remarks, and considering them together in the light of most
5  favorable to the complainant, determine whether they are
   sufficient to state a claim."

6
   Compensation Letter CL04-052, 24 January 2006, SUBJECT:
7  Inclusions and Deduction in Back Pay Calculations, Background -
   "Postal Service employees, or individuals denied employment, may
8  become eligible for an award of compensatory damages if the
   removal or refusal to hire is later determined to be erroneous
9  through the Article 15 grievance process or through court or
   administrative agency decision or settlement."
10
       Deposition (exhibit 12) Page 75 "Okay, You also requesting
11
   compensatory damages in the amount of $300,000."
12
   Handbook for AJ chapter 9, II Compensatory Damages, B. Procedures
13 for Process - "The AJ should provide an explanation regarding the
   nature and availability for damages and ask the complainant
14 whether he/she is seeking damages.  Prior to the hearing, the AJ
   may also explain what evidence needs to be proffered in order to
15 establish entitlement and may require a proffer of evidence
   pertaining to the entitlement.  The AJ should also give the
16 agency the opportunity to proffer any evidence that it believes
   mitigates the complainant's entitlement to requested damages.
17 Failure to timely assert claim for damages after appropriate
   notice may be deemed a waiver of entitlement to damages."
18
   42 USC section 1983 - "This statute, enacted to aid in 'the
19 preservation of human liberty and human right,' reflects a
   congressional judgment that a 'damages remedy against the
20 offending party is a vital component of any scheme for
   vindicating cherished constitutional guarantees'."  Civil
21 Procedure, A Modern Approach, 2d, 1995, page 186.

22
       I did not receive notice from the Administrative Judge and
23
   was not given the opportunity to present evidence pertaining to
24
   entitlement.
25

EEOC, Directives Transmittal, 915.003, section 2:  Threshold
issues, Covered Issues:  - Job decisions, employment practices -
harassment based on a protected basis - advertising and
recruitment - Retaliation:  Actions likely to deter protected
activity."

All of my EEO Complaints met the threshold Covered Issues

requirements.

Dismissal of Formal EEO Complaint, 1E-981-0044-08, 18 Jun 08
(exhibit 55) page 2 - "There is no evidence complainant was
subjected to any adverse action or that complainant was denied
any entitlement in relation to a term, condition or privilege of
employment…"  I was embarrassed and denied Union Time,
information, training, tools, typewriter, cooling fans, email,
and promotions all violations of conditions and terms of
employment.

                        Scope of Review

Pursuant to Title 5 section 706 I ask the reviewing court to

compel the agency action unlawfully withheld.  I ask the court to

hold unlawful and set aside the agency actions, findings and

conclusions with due account taken of the rule of prejudicial

error.

I plead with the Court for a De Nova review of my original
EEO complaints of:

1. Age - (exhibit 1)  Was being given a 2005 Maintenance
   Grinch Award during a staff meeting and 18 cents 23
   December 2004 two days before Christmas discrimination?
2. Sex - (exhibit 2) Was Management's failure to post on the
   official bulletin board in the P&DC facility the Supervisor
   Job Vacancy Announcement the required 15 days and denied me

1  the opportunity to apply for a vacant maintenance

2  supervisor position discrimination for my first EEO

3  complaint?

4  3. Age – (exhibit 3) When a fellow employee directed foul,

5  abusive and threatening language and gestures at me.  The

6  Supervisor did nothing and the other employee was allowed

7  to go to a training class the next week that was cancel for

8  me.  Was this discrimination?

9  4. Sex – (exhibit 4) Did management discriminate against me

10  by not posting on the employee bulletin boards in the PMA

11  and all facilities in the recruitment area as required by

12  39 CFR 243.2(a), handbook EL 312.223 & 321.2, Handbook EL-

13  350.3, and ELM 612.231 & 334.33 the job vacancy

14  announcement for my second EEO complaint?

15  5. Sex – (exhibit 4) I mailed my 991 before the closing of

16  the Job Vacancy position.  The undated letter I received

17  stated that the 991 was not received before the posting was

18  closed.  Did the Postal Service discrimination against me?

19  6. Sex – (exhibit 4) Did discrimination occur Karen Black was

20  given assistance and preferential treatment by management

21  before being selected for the Supervisor position in Tool &

22  Parts?

23  7. Retaliation – (exhibits 3, 4) Was there retaliation for

24  EEO activities, 1E-981-0018, Aug 06, and 1E-981-0037, Apr

25  08?

8. Retaliation - Was there retaliation for other protected
   activities?

9. Process Discrimination/Retaliation - Was there process
   discrimination and retaliation during the administrative
   processing of my EEO Complaints?

REMEDIES

1.   I plead with the Court for the embarrassment and
discrimination of the Grinch Award given to me during a
Management meeting to award me under the Age Discrimination in
Employment Act of 1967, 29 U.S.C. section 621, 633a, the monitory
remedy of $5,000 (exhibit 1).

2.   I plead with the Court for the discrimination for not
posting on the Official Bulletin Board a Supervisor Job Vacancy
Announcement and the lost opportunity to apply for a Supervisor's
position because I was told 1 day before the vacancy closed to
award me under the Civil Rights Act of 1964, 42 U.S.C. section
1983 and section 2000e the monitory remedy of $300,000 (exhibit
2).

3.   I plead with the Court for the foul and abusive language
leveled at me during a Management meeting and the denial of
training to award me under the Age Discrimination in Employment
Act of 1967, 29 U.S.C. section 621, 633a, the monitory remedy of
$5,000 (exhibit 3).

1    4.   I plead with the Court for the discrimination of not
2    posting on the Official Bulletin Board a Supervisor Job Vacancy
3    Announcement and for saying that I did not apply (in time) for a
4    Supervisor Position when I did, to award me under the Civil
5    Rights Act of 1964, 42 U.S.C. section 1983 and section 2000e the
6    monitory remedy of $300,000 (exhibit 4).
7    5.   I plead with the Court for the discrimination and
8    retaliation suffered during the processing of my Administrative
9    Complaints denying me the Right to Due Process pursuant to Title
10   42 section 1983 and Title 29 section 1614.102 to award me the
11   maximum EEOC monitory remedy of $300,000.
12   6.   I plead with the Court pursuant to Title 29 section
13   1614.501 to be awarded a Maintenance Supervisor day shift
14   position at the Seattle Processing and Distribution Center that I
15   was unlawfully denied.
16   7.   I plead with the Court pursuant to Program Fraud Civil
17   Remedies Act of 1986 for the Postal Service's fraudulently
18   contracting out my idea to upgrade the TMS equipment, giving me
19   discipline, removing me from TMS work, denying me tools, awards,
20   training, cooling fans, typewriter, Union time and unlawfully
21   blaming me in retaliation for need to contract out the TMS
22   equipment upgrades under the Whistleblower Retaliation Act to
23   award me the monitory remedy $4,265,798 (exhibit 116) contract
24   price.
25

8.   I plead with the Court pursuant to Title 18 section 372 for the Postal Service's unlawful contracting out my idea in retaliation to make the Power Panel part to award me the monitory remedy of $3,600,000 (exhibit 161) for the Economic Savings the Postal Service will have.

9.   I plead with the Court for a writ of mandamus pursuant to Title 28 section 1361 to compel the Equal Employment Opportunity Commission pursuant to 29 CFR 1614.501 and Title 3 section 454 to stop the United States Postal Service's practice of using non-independent out-of-state contract EEO Investigators and require the use of local non-Attorneys during the non-legal Administrative process (if the employee does not have one) to save millions of dollars on the administrative costs of the non-legal EEOC Administrative Complaint Process (exhibit 18).

10.   I plead with the Court for a writ of mandamus pursuant to Title 28 section 1361 to compel the Inspector General, David C. Williams, of the United States Postal Service pursuant to ELM 664, 666.32 and the lawful duty owed under Title 39 Part 230 (exhibit 149) to investigate "all employee misconduct issues" of any employee named in this Complaint and including the "delay of mail" accusations leveled against me.  I ask the Court to compel the Inspector General to provide me a copy of the completed non-criminal investigation (exhibits 130, 137).

11.   I plead with the Court for a writ of mandamus pursuant to Title 28 section 1361 to compel the Chief Postal Inspector,

1   William Gilligan, of the United States Postal Service pursuant to
2   ELM 661.2 and the lawful duty owed under Title 18 section 3061 to
3   conduct criminal investigations of all employees named in this
4   Complaint for violations of Criminal Statutes and other postal
5   offenses detailed in this Complaint.  I ask the Court to compel
6   the Chief Inspector to provide me a copy of the completed
7   Criminal Investigation (Exhibit 137).

8      12.   I plead with the Court based on the Inspector General's
9   civil investigation findings for a writ of mandamus pursuant to
10  Title 28 section 1361 to compel the Postmaster General, John P.
11  Potter, of the United States Postal Service pursuant to Title 5
12  section 2302 to discipline any employee named in this Complaint
13  found to have violated the Ethical Conduct Rules pursuant to ELM
14  665.6 "Postal officials may take appropriate disciplinary
15  measures to correct violations of the regulations referred to in
16  665."  ELM 665 Postal Service Standards of Conduct.  I ask the
17  Court to compel the Postmaster General to provide me a copy of
18  the Final Agency Decision for discipline (or not) of any employee
19  named in this Complaint.

20     13.   I plead with the Court for a writ of mandamus pursuant
21  to Title 28 section 1361 based on the Chief Inspector's criminal
22  investigation findings to compel the Postmaster General, John P.
23  Potter, to remove Employees in Public Trust Positions who have
24  violated the Public's Trust so they can do no more harm.  I ask
25  for the Court to compel the Postmaster General, John P. Potter,

1 | to provide me a copy of the Final Agency Decision for removal (or
2 | not) of any employee who is named in this Complaint.

3 |     14.  I plead with the Court pursuant to Title 28 section 1296
4 | for the right to file a Civil Complaint in Federal District Court
5 | for the action or inaction of the Investigations or any of the
6 | Final Agency's Decisions for the Court's review of any
7 | dissatisfaction in regards to the violation of any Federal
8 | Regulation or Law by United States Postal Service employee(s)
9 | named in this Complaint.

10

11 | Dated this 28th day of December, 2008

12

13

Lance McDermott
14 | 1819 So 104 ST
Seattle, WA   98168
15 | 206 763-6268

-Exhibits:

Binder 1:

1- EEO complaint – Grinch Award 4 Jan 06
2- EEO complaint,  - Linda Mainor promotion1E-981-0018-0631, Mar 06
3- EEO pre-complaint – Ted Limmer foul language,  11 Mar 06
4- EEO complaint, Karen Black promotion, 9 Apr 08
5- Formal Investigation questions, 25 May 06
6- EEO investigation report, Linda, 1 Apr 06
7- Administrative judge's Acknowledgement and Order, 13 Nov 06
8- Attorney's letter, nothing to discuss/notice of Deposition – 17 Nov 06
9- Motion for protection, 24 Nov 06
10- Telephone answer messages Attorney/AJ, 30 Nov 06
11- AL order Denying Motion for Protection, 1 Dec 06
12- Deposition, 4 Dec 06
13- Attorney response to Discovery request, 22 Dec 06
14- Attorney's First Set of interrogatories, 28 Dec 06
15- Notice of intent to Sue and Allegations of Process Discrimination, w/13 ex, 8 Jan 07
16- Attorney Motion for Decision, 11 Jun 08
17- Motion for Decision, 24 Jun 08
18- Petition for Remedy, 24 Jun 08
19- EEOC Decision on Appeal, 2 Oct 08
20- EEO Service letter in response to Decision, 29 Sep 08
21- Statement in Opposition, 13 Aug 08
22- EEO notice of Right to file, 1E-981-0018-06,16 Mar 06
23- Job Vacancy Announcement and form 991 Application, 27 Feb 08
24- Shared Service Center application rejection letter, undated
25- EEO notice of Right to file, Karen, 1E-981-0022-08, 10 Apr 08
26- Mediation 1E-981-0022-08, 4 Apr 08
27- Mediation 1E-981-0037-07, 24 May 07
28- Mediation 1E-981-0018-06, 15 Mar 06
29- EEOC Acknowledgement of Complaint, Karen, 1E-981-0044-08, 18 Jun 08
30- EEO Partial Acceptance, Linda, 1E-981-0018-06, 9 May 06
31- EEO Revised Partial Acceptance, Linda,  1E-981-0018-06, 10 May 06
32- Letter to EEO investigator sex/age, 22 May 06
33- Request for Hearing 1E-981-0018-06, 3 Aug 06
34- AJ order for complaint file, 25 Sep 06
35- EEO response to order for complaint file, 28 Sep 08
36- Attorney Opposition to Appeal/Motion to dismiss, 1E-981-0018-06, 14 Jul 07
37- EEO letter – Rights/Pub 133, 23 Nov 07
38- EEO notice of final interview,  Grinch Award/training, 1E-981-0037-07, 27 Jul 07
39- 2006 bid plan – posting
40- 2006 Job Bid Management
41- Bid Cluster information – Posting
42- In the Loop – Posting, May 2007

43- EEO Policy, 13 Dec 01
44- Posting and Employee Bulletin Boards – exhibits
45- Investigative Summary 1E-981-0018-06, 13 Jul 06
46- EEO investigative Affidavit, Wayne Witzel, MMO, 20 Jun 06
47- EEO district Policy, 1 Oct 06
48- EEO district Policy – informal/formal complaints, FY 2007
49- EEO investigations district policy FY 2007
50- Policy – postmaster
51- Policy(s) – threats, 1 Oct 07
52- AJ Decision without hearing 1E-981-0018-06, 1 Jul 08
53- Appeal decision with 31 exhibits 1E-981-0018-06, 23 Jul 08
54- Notice of right to file, 1E-981-0044-08, 2 Jun 08
55- Dismissal of Formal EEO complaint 1E-981-0044-08, 18 Jun 08
56- Appeal for review with 8 exhibits #1E-981-0044-08, 23 Jul 08
57- Letter sent to Attorney request for documents, 24 Nov 06
58- Letter from EEO investigator regarding age/sex affidavit, 25 Jun 06
59- GAO report GGD-98-200R – posting
60- Letter from EEOC acknowledge Petition 1E-981-0018-06, 7 Jul 08
61- Letter from EEOC acknowledge Appeal 1E-981-0044-08, 19 Aug 08
62- Attorney's Motion to Strike Supporting Statement, 1E-981-0018-06, 2 Sep 08
63- Motion to combine #1E981004408 and #1E981001806, 11 Sep 08
64- Supporting Statement, w/15 exhibits, #1E-981-0018-06, 23 Jul 08
65- Statement in Opposition to Agency's  Response, w/ 2 exhibits, 13 Aug 08
Binder 2:
66- Motion in Opposition of Motion to Dismiss, 23 Jul 08
67- Support Statement 1E981004408/1E981001806, 2 Sept 08
68- Agency's Response to Appeal and Supporting Statement, 4 Aug 08
69- EL 312.4 Registers – promotion
70- Manager's Overview of EAS Selection process, Feb 2007
71- 204B program
72-  Joint Statement on Violence and Behavior in the Workplace, 14 Feb 92
73- EAS Promotion Report, Linda Mainor, Mar 06
74- Trans investigative File/Acknowledge letter, 1E9810018-06, 4 Apr 06
75- EAS Promotion Report, Tom French, Jul 05
76- EAS Promotion Report, higher level RFI, Al Berube,  Jul 05
77- POSTER - eCareer, 1 April 2008
78- EL 312.736.1 Vacancy File
79- EEO reporter, compensatory damages, Dec 92
80- EEOC Decision, Karen, 1E-981-0044-08, 10 Nov 08
81- EEO Dispute Resolution confirmation letter, 27 Dec 05
82- ACE user information – no email
83- CBA, training, promotions
84- How to Apply, Oct 07
85- Seattle Policy – EAS Vacancy, Sep 07
86- EEO Investigative Services, Acceptance of Remanded Claim, received  21 Nov 08

87- Notice of Intent to Sue sent to EEOC & Investigative Service, 22 Nov 08
88- 204B posting, 23 Nov 07
89- Idea Proposal, TMS, 22 Sep 00
90- Memo, TMS problems Oct 01
91- JC Penny, TMS trolleys Nov 01
92- Memo TMS rail wear, Jan 02
93- Letter to OSHA, unsafe TMS procedures, May 02
94- OSHA unsafe parking lot, Mar 01 – Sep 02
95- Grievance, Air tool use, Sep 02
96- Accident Report, hand injury, Sep 02
97- OSHA Notice of Alleged Safety Hazard, Aug 02
98- Grievance, personnel fans, Sep 02
99- Letter sent to General Counsel USPS, Dec 02
100- Seven Day suspension, Mail removal, 15 Jan 03
101- Grievance filed, harassment, Feb 03
102- Idea Proposal, TMS Trolley rebuild, Jan 03
103- Typewriter removal, Jan 03
104- NLRB Discrimination Complaint, 29 Jan 03
105- OSHA Discrimination complaint 27 Feb 03
106- EEOC's letter to USPS accept complaint, 13 Nov 08
107- Reports of hazards/Idea Proposal 00-01
108- TMS Rail  crossings, 11 Jan 02
109- OSHA, TMS procedures, 24 Apr 02
110- Air tool use Policy
111- Management Email messages, Jan 02 – Aug 03
112- OSHA complaint for harassment, 24 December 2002
113- OSHA interview statement, 17 Mar 03
114- Cooling fan grievance settlement, 29 Apr 03
115- TMS Request for Information denial, Jeff Carter, Apr – May 03
Binder 3:
116- TMS RFI, Taylor Welsh, TMS DAR, May 03
117- OSHA letter postponing investigation, 12 May 03
118- Grievance, denial of Union time, 28 May 03
119- EEO Mediation,  Tim, 19 Jun 03
120- Grievance TMS contracting, standing WO Trolley rebuild, 24 Jun 03
121- Grievance lack of TMS training, 30 Jun 03
122- NLRB charge form, 1 Jul 03
123- Notice of Suspension, reading ELM, 7 Aug 03
124- Pre Arbitration Settlement, 27 Aug 08
125- NLRB status of case, 27 Aug 04
126- Grievance decision TMS contracting, 12 Apr 04
127- Department of Labor, Title 29, 186 violations, 30 Apr 04
128- Step 2 Grievance Decision, TMS Trolleys, 14 May 04
129- Step 1 Grievance Summary, TMS training, 15 Jun 04
130- Letter sent to Ethical Conduct Officer Jan 04 and CPI Jul 04

131- RFI higher level assignments, 9 Sep 04
132- NLRB case status, 21 Oct 04
133- Petition to VP Black, 2 Feb 05
134- Grievance Settlement, TMS Training, 8 Apr 05
135- Letter to NLRB, Apr – May 05
136- NLRB and OSHA letters 20 Aug 05
137- Letters sent Jun/Aug 05
138- OSHA complaint closed, 30 Aug 05
139- Postal Rate Commission, 15 Nov 05
140- NLRB letter and my response, 9 Dec 05
141- Suspension removed from OPF, 17 Feb 06
142- OSHA letter dismissing complaint, 27 Feb 06
143- Appeal sent to OSHA, 13 Mar 06
144- OSHA denial, 24 May 2006
145- Letter to VP Labor Relations, 24 Jun 06
146- NLRB withdrawn, 14 Jul 06
147- Letter to Senator Patty Murray/USPS response, 13 Aug 06
148- Letter to Office of Government Ethics, 24 Aug 06
149- OIG letter – employee misconduct, 28 Aug 06
150- Appeal to District Court, 15 Sep 06
151- Grievance Safety Talk instruction, 11 Feb 03
152- Grievance Handicapped accessible, 14 Nov 03
153- NLRB status update w/statement, 24 Aug 03
154- NLRB status w/statement, 20 Apr 04
155- TMS contracting rebuttal, 20 May 03
156- Letter to NLRB, step in, 16 Sep 04
157- RFI TMS denial, 24 Aug 05
158- Letter from Congressman McDermott, 20 Sept 05
159- Letter from APWU sex/nepotism, 24 Apr 07
160- Letter to Senator Murray, Stamp Vending machines, 20 Mar 08
161- SPBS part, Oct – Nov 08
162- TMS Tech Note, lockout, May 05
163- USPS TMS letter to APWU, Feb 99
164- Grievances, Security, 01-03
165- Letter Postal Police removal, Jun 2003
166- Grievance, air tool, fan, contracting, 23 May 03
167- Maintenance Q&A, TMS duties/training, May 04
168- FSM training, Mar 05
169- TMS life expectancy, RFI – 2011
170- EEO Investigation Services, 1 Dec 08
171- Setting the Record Straight, EVA, 02
172- EEO Investigation Office, assign investigator, 5 Dec 08
173- EEO IO, affidavit, 9 Dec 08